## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| QUILL INK BOOKS LIMITED, a foreign corporation ,<br>　　　　　　Plaintiff,<br><br>v.<br>(1) ABCD GRAPHICS AND DESIGN, INC., D/B/A BLUSHING BOOKS PUBLISHING, a foreign corporation<br>(2) RACHELLE SOTO a/k/a ADDISON CAIN, an individual, and<br>(3) JOHN and JANE DOE, unknown individuals and online participants ,<br>　　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No.  5:18-cv-00920-G

## DEFENDANT RACHELLE SOTO'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE, OR, IN THE ALTERNATIVE, TRANSFER

Pursuant to Federal Rules of Civil Procedure 12(b)(2) and (3), Defendant Rachelle Soto appears specially to move the Court for an order dismissing Plaintiff Quill Ink Books Limited's ("Quill") First Amended Complaint (Dkt. # 6) for lack of personal jurisdiction and improper venue, or, alternatively, transfer pursuant to 28 U.S.C. § 1404(a). In support of this Motion, Mrs. Soto states as follows:

## INTRODUCTION

In this lawsuit, Plaintiff bears the burden of affirmatively proving personal jurisdiction over Mrs. Soto, and it simply has not met that burden. As established by her Declaration submitted herewith, Mrs. Soto is a Virginia resident and has no relevant jurisdictional contacts with the State of Oklahoma. One of her publishers and co-defendant, ABCD Graphics and Design Inc., d/b/a Blushing Books ("Blushing Books"), is incorporated and has its principal

place of business in Virginia.   The First Amended Complaint alleges generally that "Upon information and belief, Defendants, and each of them, have sufficient contacts with this judicial district generally and, in particular, with the events herein alleged, that each such Defendant is subject to the exercise of jurisdiction of this court over the person of such Defendant" (Dkt. # 6, ¶ 6).   No such contacts, however, are attributable to Mrs. Soto individually. Indeed, Plaintiff Quill does not even allege it has actual knowledge of any such activities and relies on mere "information and belief" to assert these general allegations.

This case arises, in part, out of Digital Millennium Copyright Act ("DMCA") takedown notices sent by Blushing Books to various third-party online publishers and retailers. The First Amended Complaint alleges that jurisdiction arose from a single DMCA takedown notice Blushing Books sent to Draft2Digital, a third-party distributor in Oklahoma.   As alleged in the Amended Complaint, this is the only Oklahoma contact in the entire litigation.   It fails to allege any activity purposefully directed by Mrs. Soto into the State of Oklahoma relating in any way to the present cause of action.

Accordingly, because this Court lacks personal jurisdiction and venue is improper, Mrs. Soto should be dismissed from this lawsuit, or, alternatively, this lawsuit should be transferred to the Eastern District of Virginia.

## RELEVANT BACKGROUND

Defendant Rachelle Soto is a USA Today and Amazon Top 25 bestselling author who resides in the State of Virginia.   Mrs. Soto writes under the pseudonym of Addison Cain and is best known for her dark romances, including the internationally bestselling *Alpha's Claim* Series. Mrs. Soto's *Alpha's Claim* Series includes the books entitled *Born To Be Bound: Book One,*

*Born To Be Broken: Book Two* and *Reborn: Book Three*. (Declaration of Rachelle Soto, hereinafter "Soto Decl.," ¶¶ 2, 8, attached hereto as Exhibit 1).

On October 17, 2018, Quill filed its First Amended Complaint seeking a declaratory judgment that the publication of the *Myth of Omega* series is lawful, injunctive relief against Defendants from bringing any lawsuit or threat against Plaintiff Quill or Zoey Ellis for copyright infringement for the publication of the *Myth of Omega* series, and damages for alleged copyright misuse, misrepresentation, negligence, tortious interference, defamation, false light, and civil conspiracy. (Dkt. # 6, Prayer for Relief). The Complaint as originally filed named Ms. Zoey Ellis as a co-plaintiff with Quill (Dkt. 1); however, the First Amended Complaint names only Quill as the sole Plaintiff (Dkt. # 6). The First Amended Complaint also names three (3) defendants—(1) Rachelle Soto, an individual who resides in Virginia; (2) Blushing Books, a Virginia corporation; and (3) unnamed John and Joe Doe, individuals with no identified residences (*Id.*). Specifically, Quill's allegations regarding jurisdiction and venue are that:

> 6. Upon information and belief, Defendants, and each of them, have sufficient contacts with this judicial district generally and, in particular, with the events herein alleged, that each such Defendant is subject to the exercise of jurisdiction of this court over the person of such Defendant.
>
> 7. Upon information and belief, based on the national reach of Defendants, and each of them, a substantial part of the events giving rise to the claims herein alleged occurred in this judicial district.

(*Id.* at 3).

Mrs. Soto owns a home in Stafford, Virginia that serves as her primary residence along with her home office (*See* Dkt. # 6, ¶ 11; Soto Decl. ¶¶ 2, 6). Mrs. Soto has a Virginia driver's license, pays Virginia state income tax, and is registered to vote in Virginia. (*Id.* ¶ 3). Mrs. Soto does not personally conduct any business in the State of Oklahoma, does not have an Oklahoma address or phone number, has never paid any Oklahoma state income tax, and has never filed any

lawsuits in Oklahoma. (*Id.* ¶¶ 3-4). Mrs. Soto has never resided in Oklahoma, traveled to Oklahoma, been employed in Oklahoma, or owned any assets in Oklahoma. (*Id.* ¶¶ 3-5).

All publication and sales activities relating to Mrs. Soto's *Alpha's Claim* books have always been conducted by Blushing Books and other third-party publishers and retailers (e.g., Amazon). (*Id.* ¶ 8). Mrs. Soto has not engaged in any such business activity in her personal capacity—in Oklahoma or elsewhere. (*Id.*). The only contact Mrs. Soto has with Oklahoma is that some of her books have been purchased by Oklahoma residents through one of numerous third-party publishers and retailers, including Blushing Books, that sell her books. (*Id.*). Blushing Books is a corporation incorporated in Virginia with its principal place of business in Charlottesville, Virginia. (Dkt. # 6, ¶ 10).

In April 2018, Blushing Books sent DMCA takedown notices to numerous third-party online publishers and retailers, such as Amazon, Barnes & Noble, Google Play, Apple iTunes book store, and Draft2Digital, requesting that they remove *Crave To Conquer* and *Crave To Capture* written by Ms. Ellis—and published by Plaintiff Quill—from their platforms.  In the DMCA notices, Blushing Books alleged that Ms. Ellis's works published by Plaintiff Quill infringed the copyright of Mrs. Soto in her *Born To Be Bound* and *Born To Be Broken* books. (Dkt. # 6-4).  According to the First Amended Complaint, Draft2Digital is a distributor with its principal place of business in Oklahoma City, Oklahoma. (Dkt. # 6, ¶ 8).  As alleged in the First Amended Complaint, Draft2Digital's Oklahoma presence provides the only relevant jurisdictional link to Oklahoma in this lawsuit, as Zoey Ellis resides in London, England, Plaintiff Quill is a company organized under the laws of England with its principal place of business in London, England, and the Defendants are both based in Virginia.

As explained below, on these undisputed facts, Mrs. Soto should be dismissed for lack of personal jurisdiction and improper venue.

## ARGUMENTS AND AUTHORITIES

I.   **THE COURT SHOULD DISMISS THIS LAWSUIT UNDER RULE 12(b)(2) BECAUSE DEFENDANT SOTO IS NOT SUBJECT TO PERSONAL JURISDICTION IN OKLAHOMA**

Pursuant to Fed. R. Civ. P. 12(b)(2), a court can dismiss a suit for "lack of jurisdiction over the person." As the party invoking federal jurisdiction, a plaintiff bears the burden of establishing personal jurisdiction. *Rockwood Select Asset Fund XI (6)-1, LLC v. Devine, Millimet & Branch*, 750 F.3d 1178, 1179 (10th Cir. 2014).  The plaintiff must make a prima facie showing by demonstrating facts that, if true, would support jurisdiction to defeat a motion to dismiss. *Id.* at 1180. In deciding a motion to dismiss for lack of personal jurisdiction, the court must take as true any undisputed jurisdictional allegations in the complaint and may also consider any affidavits submitted by the movant contesting those allegations. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). Plaintiff's mere allegation of jurisdiction within a complaint is not enough. "[O]nly the well pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true." *Id.*

"When, however, a defendant presents credible evidence through affidavits or other materials suggesting the lack of personal jurisdiction, the plaintiff must come forward with sufficient evidence to create a genuine dispute of material fact on the issue." *See Doe v. Nat'l Med. Servs.,* 974 F.2d 143, 145 (10th Cir. 1992). "Only if the plaintiff meets the obligation of contesting the credible evidence that the defendant presents does the court resolve the factual disputes in favor of the plaintiff." *Wenz*, 55 F.3d at 1505; *see also Behagen v. Amateur Basketball Ass'n of U.S.A.*, 744 F.2d 731, 733 (10th Cir. 1984). The Soto Declaration submitted

herein conclusively establishes that Mrs. Soto is not subject to being sued in Oklahoma for Quill's cause of action.

Personal jurisdiction over a non-resident defendant exists only when such jurisdiction is permitted by the forum state's long-arm statute, and only if the exercise of that jurisdiction does not violate federal due process requirements. *See Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1166 (10th Cir. 2011). Oklahoma's long arm statute provides that "[a] court of this state may exercise jurisdiction on any basis consistent with the Constitution of this state or of the United States." Okla. Stat. tit. 12 § 2004(F). In other words, the statute allows the exercise of personal jurisdiction "to the full extent permissible under the U.S. Constitution." *Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014). 'Accordingly, the jurisdictional analysis under state and federal law governing due process is the same. *See Rambo v. American S. Ins. Co.*, 839 F.2d 1415, 1416 (10th Cir. 1988) (applying Oklahoma's long-arm statute); *see also Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000) ("Because Oklahoma's long-arm statue permits the exercise of jurisdiction that is consistent with the United States Constitution, the personal jurisdiction inquiry under Oklahoma law collapses into a single due process inquiry.").

For the exercise of personal jurisdiction to be consistent with constitutional standards of due process, the Court will consider two factors to establish personal jurisdiction. First, it "must consider whether 'the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" *Benton v. Cameco Corp.*, 375 F.3d 1070, 1075–76 (10th Cir. 2004) (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. at 297, 100 S.Ct. 559 (1980)). "Second, if the defendant's actions create sufficient minimum contacts, [the Court] must then consider whether the exercise of personal jurisdiction over the

defendant offends 'traditional notions of fair play and substantial justice." *Id.* (quoting *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086 (10th Cir.1998).

There are two types of personal jurisdiction that may flow from a defendant's "minimum contacts" with the forum. *See Dudnikov v. Chalk & Vermilion Fine Arts, Inc.,* 514 F.3rd 1063, 1078 (10th Cir. 2008). "A court may assert general jurisdiction over [a defendant] to hear any and all claims against them when their affiliations with the State are so 'continuous and systemic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citing *International,* 326 U.S. at 317). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]" *Id.* at 924.  Alternatively, if the defendant's purposeful activities within the forum state give rise to or relate to the plaintiff's cause of action, those activities can justify specific personal jurisdiction over the defendant for the purposes of that case. *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011). Plaintiff Quill cannot establish either type of personal jurisdiction over Mrs. Soto.

### A.    There Is No General Personal Jurisdiction Over Mrs. Soto

Mrs. Soto does not have the requisite "continuous and systematic" contacts with the State of Oklahoma for this Court to exercise general jurisdiction over her. She does not live in Oklahoma, does not have a mailing address in Oklahoma, does not have an Oklahoma phone number, does not own assets in Oklahoma, does not pay Oklahoma income tax, and does not conduct personal business in Oklahoma. (Soto Decl., ¶¶ 2-3, 5). She has also not availed herself of the protections of Oklahoma courts by bringing litigation in the federal or state courts of Oklahoma. (*Id.*, ¶ 4). Simply put, Mrs. Soto does not have "continuous and systematic" contacts with the State of Oklahoma such that she could reasonably anticipate being sued in a court in

Oklahoma. *See Bootenhoff v. Hormel Foods Corp.*, 2012 U.S. Dist. LEXIS 110223, at *11-12 (W.D. Okla. Aug. 7, 2012) (dismissing defendant for lack of personal jurisdiction based on facts set forth in defendant's affidavit that it "does not maintain offices, telephone listings, or mailing addresses in Oklahoma, nor does it own, lease or control any real or personal property or assets here…does not maintain bank accounts or pay taxes here"). The mere fact that some of Mrs. Soto's books, through third-party online publishers and retailers, end up in the hands of some Oklahoma residents does not rise to "continuous and systematic" contacts with Oklahoma.

Because Mrs. Soto does not have the requisite continuous and systematic contacts with Oklahoma to establish general jurisdiction, she should be dismissed from this action for lack of personal jurisdiction.

**B.**     **There Is No Specific Personal Jurisdiction Over Mrs. Soto**

"Specific jurisdiction is very different[]" than general jurisdiction. *Bristol-Myers Squibb Co. v. Super. Ct. of California*, 137 S. Ct. 1773, 1780 (2017). "In order for a state court to exercise specific jurisdiction, 'the suit' must 'aris[e] out of or relat[e] to the defendant's contacts with the forum.'" *Id.* (quoting *Daimler*, 571 U.S. at 127). "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Id.* (quoting *Goodyear*, 564 U.S. at 919). "In determining whether personal jurisdiction is present, a court must consider a variety of interests. These include '"the interests of the forum State and of the plaintiff in proceeding with the cause in the plaintiff's forum of choice."' *Id.* (quoting *Kulko v. Superior Ct. of California*, 436 U.S. 84, 92 (1978)). "But the 'primary concern' is 'the burden on the defendant.'" *Id.* (quoting *World-Wide Volkswagen*, 444 U.S. at 292).

Thus, "[t]he minimum contacts test for specific jurisdiction encompasses two distinct requirements: (i) that the defendant must have 'purposefully directed its activities at residents of the forum state," and (ii) that "the plaintiff's injuries must arise out of [the] defendant's forum-related activities." *Old Republic Ins. Co. v. Cont'l. Motors, Inc.*, 877 F.3d 895, 904 (10th Cir. 2017) (quoting *Shrader v. Biddinger*, 633 F.3d 1235, 1240 (10th Cir. 2011)). Additionally, if a court determines that the minimum contacts standard has been satisfied, it "must then consider whether the exercise of personal jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice.'" *OMI Holdings*, 149 F.3d at 1091 (quoting *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 109 (1987)). Mrs. Soto did not purposefully direct any activities at Oklahoma, and, even if the Court finds that she did, the exercise of personal jurisdiction over her would offend traditional notions of fair play and substantial justice.

### 1.    Mrs. Soto Did Not Purposefully Direct Any Acts Toward Oklahoma

Quill does not allege that Mrs. Soto personally undertook any acts in Oklahoma that relate to its declaratory judgment or other claims. There is good reason for Quill's failure to plead such actions: Mrs. Soto did nothing in Oklahoma, and therefore there can be nothing that gives rise to Quill's claims.

The First Amended Complaint alleges that jurisdiction underlying Quill's claims stem from a single notice sent to Draft2Digital providing notice under the DMCA of the alleged copyright infringement of Mrs. Soto's *Alpha's Claim* Series.  The DMCA notice was emailed by Blushing Books from Virginia to Draft2Digital; since the DMCA notice was emailed to Draft2Digital rather than mailing to an Oklahoma address, it cannot be proven if there is any connection whatsoever between the notice or its subject matter and any residents of Oklahoma.

In any event, Blushing Books' DMCA notice, without more, is insufficient to satisfy the requirements of jurisdictional due process over Mrs. Soto, an out-of-state individual. This is entirely consistent with Tenth Circuit precedent that the "existence of letters or telephone calls to the forum state related to the plaintiff's action will not necessarily meet due process standards." *Rambo v. American Southern Ins. Co.*, 839 F.2d 1415, 1418 (10th Cir. 1988).

Moreover, even if the DMCA notice was sent to Draft2Digital in Oklahoma, that communication would not be attributable to Mrs. Soto. "Each defendant's contacts with the forum State must be assessed individually." *Calder v. Jones*, 465 U.S. 783, 790 (1984) (citing *Rush v. Savchuk*, 444 U.S. 320, 322 (1980)). Here, Mrs. Soto did not purposefully direct any activities at Oklahoma, including drafting or sending the DMCA takedown notice to Draft2Digital or other third-parties. As Exhibit 3 attached to Plaintiff's First Amended Complaint shows, Blushing Books sent the DMCA takedown notice to all of the third-party publishers and retailers, including Draft2Digital. Thus, even if the Court finds that it can exercise personal jurisdiction over Blushing Books, which Mrs. Soto argues that it cannot, it should dismiss all of Plaintiff's claims against Mrs. Soto because she did not personally direct any acts or activities into the state of Oklahoma. The Tenth Circuit discussed this doctrine, labeled the no-imputed-contacts rule, in *Newsome v. Gallacher*, 722 F.3d 1257, 1275-76 (10th Cir. 2013). There, the court mentioned that this rule was actually part of the due process calculation and stated that the contacts of a corporate entity with Oklahoma cannot be automatically imputed to its employees, officers, directors, or agents for purposes of assessing whether the individual is subject to personal jurisdiction in Oklahoma. *Id*. Thus, under the no-imputed-contacts rule, Blushing Books' act of sending the DMCA notice to an Oklahoma corporation cannot be

imputed onto Mrs. Soto, and therefore, is insufficient to establish personal jurisdiction over her as a matter of law.

Quill has not identified, nor could it ever establish, any activities by Mrs. Soto purportedly directed toward Oklahoma residents and relating to Quill's cause of action. Plaintiff's allegations on "information and belief" are proven untrue by the Soto Declaration. (Soto Decl., ¶ 10).

**2.    Exercise Of Personal Jurisdiction Over Mrs. Soto Would Offend Traditional Notions Of Fair Play And Substantial Justice**

In determining whether exercise of jurisdiction is so unreasonable as to violate "fair play and substantial justice," Tenth Circuit courts will consider five factors: (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. *OMI Holdings*, 149 F.3d at 1095 (citing *Asahi Metal Indus. Co., Ltd. v. Superior Court of California, Solano Cty.,* 480 U.S. 102, 113 (1987).

Here, the burden on Mrs. Soto is great as she is an author who has been forced to hire Oklahoma counsel so that she can litigate over 1,200 miles away from her home in Virginia. Mrs. Soto would experience significant financial costs, outside of the costs of litigation, for traveling to and from Oklahoma in order to defend against Plaintiff's claims.   Additionally, Oklahoma's interest in resolving this dispute is near zero because no party involved in this suit is a citizen or resident of Oklahoma, and the case is primarily based on federal copyright law. Moreover, the most important witnesses, in fact, maybe the only necessary witnesses, in this suit are Mrs. Soto and representatives of Blushing Books responsible for sending the takedown notice, all of whom are located in Virginia.

In short, Mrs. Soto has no personal business contacts with Oklahoma, and she has not directed any activities towards Oklahoma that relate to Quill's cause of action. It can hardly be considered "reasonable" and "fair" under the circumstances to assert personal jurisdiction over Mrs. Soto given the complete absence of any relevant contacts. Thus, there is no proper exercise of specific personal jurisdiction over Mrs. Soto in this case.

## II.  THIS CASE SHOULD BE DISMISSED UNDER RULE 12(b)(3) FOR IMPROPER VENUE, OR ALTERNATIVELY, THIS CASE SHOULD BE TRANSFERRED PURSUANT TO 28 U.S.C. § 1404(a)

Title 28, section 1400 of the United States Code provides a special venue statute for cases relating to copyrights and patents. Section 1400(a) relates to copyrights and states that "civil actions, suits, or proceedings arising under any Act of Congress relating to copyrights . . . may be instituted in the district in which the defendant or his agent resides or may be found." Some courts that have had occasion to determine the meaning of "may be found" in this provision have held that a defendant is "found" in any district in which personal jurisdiction may be obtained over him. *See, e.g., Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010), *abrogated on other grounds by Axiom Foods, Inc. v. Acerchem Intl., Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017); *Milwaukee Concrete Studios, Ltd. v. Field Mfg. Co., Inc.*, 8 F.3d 441, 445 (7th Cir. 1993) (citing cases).

Here, Plaintiff has failed to satisfy its burden to show that venue properly lies in this District as Mrs. Soto has not conducted any activities, nor has she directed any activities in this district or any other judicial district in Oklahoma. Based on the Plaintiff's failure in this respect, the action should be dismissed under Rule 12(b)(3) as well as under Rule 12(b)(2).

Alternatively, even if the Court opted not to dismiss the action under Rule 12(b)(3), it nevertheless should transfer the action to the Eastern District of Virginia, as permitted under 28

U.S.C. § 1404. Specifically, section 1404(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

The purpose of §1404(a) is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense. *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). The venue statutes are generally intended to protect a defendant from being forced to defend in an unfair or inconvenient forum. *Leroy v. Great Western United Corp.*, 443 U.S. 173, 183-84 (1979). A motion for transfer lies within the broad discretion of the district court. *See Sheriff v. Accelerated Receivables Solutions*, 349 Fed. App'x 351, 355 (10th Cir. 2009).

The determination whether an action should be transferred pursuant to 28 U.S.C. § 1404(a) involves two inquiries. The threshold consideration is whether the transferee forum is one where the action "might have been brought." 28 U.S.C. § 1404(a). Here, there can be no question that venue was improperly laid in this District, as Mrs. Soto lacks even minimal contacts with Oklahoma sufficient to support venue in this Court. (*See* discussion in sec. I above; Soto Decl., ¶¶ 2-8). Plaintiff *could* have instituted this action in the Eastern District of Virginia, where Mrs. Soto resides and where co-Defendant Blushing Books is organized and has its principal place of business. (*Id.*).

Assuming the transferee forum is appropriate, the court must then determine if transfer is justified for the convenience of the parties and witnesses and in the interests of justice. *Chrysler Credit Corp. v. Country Chrysler, Inc.,* 928 F.2d 1509, 1515 (10th Cir. 1991). The Court has broad discretion to decide motions for transfer, which are determined upon the notions of

convenience and fairness on a case-by-case basis. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). The Tenth Circuit has identified several factors that should be considered by a district court in ruling on a motion to transfer:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.,* 618 F.3d 1153, 1167 (10th Cir. 2010). Because this action could have been brought in the Eastern District of Virginia due to Ms. Soto's residence there, and because the above factors overwhelmingly favor transfer in the interests of fairness and convenience, this action should be transferred to the Eastern District of Virginia.

### A.    Quill's Choice of Forum Should Be Given Little, If Any, Weight

Where a plaintiff does not reside in the forum, the Court may afford plaintiff's choice considerably less weight. *See Emp'rs Mut.*, 618 F.3d at 1168. Here, Quill is a foreign corporation with its principal place of business in London, England. (Dkt. # 6, ¶ 8). As discussed, Quill does not have any substantial relationship with Oklahoma as Plaintiff's First Amended Compliant contains to allegations that Quill has facilities in Oklahoma, and it would follow that its relevant employees and business records are located at the London, England headquarters.

Courts also give little weight to a plaintiff's choice of forum "where the facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum." *Id*. (quoting *Cook v. Atchison, Topeka & Santa Fe Ry. Co.*, 816 F. Supp. 667, 669 (D. Kan. 1993)). Here, the facts relevant to this action are primarily centered around the DMCA notices. Apart from the non-party Direct2Digital, none of the operative facts relate to events in Oklahoma

or witnesses located in Oklahoma. It appears that Quill's only real connection to this District is its outside counsel. However, the convenience of its litigation counsel is irrelevant. *Coach v. We Care Trading Chi.*, 1999 U.S. Dist. LEXIS 16489, at *3 (N.D. Ill. Oct. 13, 1999) (granting defendants' motion to transfer and noting that only plaintiff's headquarters and outside counsel were located in the original district).

Both Defendants in this action reside in Virginia, and all of Mrs. Soto's documents and records are maintained in Virginia (Soto Decl., ¶¶ 2, 3). Accordingly, the Eastern District of Virginia is the most convenient forum for all the parties to this action.

### B.    Accessibility And Convenience Of The Witnesses And Other Proof Favors Transfer

Convenience of the witnesses is generally viewed as the most important factor in deciding whether a case should be transferred. *Cook*, 816 F. Supp. at 669; *see also Palace Exploration Co. v. Petroleum Development Co.*, 316 F.3d 1110, 1122 (10th Cir. 2003) (limiting its consideration of the § 1404(a) factors to the location of the witnesses). The convenience of non-party witnesses is given greater weight than party witnesses. *Amini Innovation Corp. v. Bank & Estate Liquidators, Inc.*, 512 F. Supp. 2d 1039, 1043 (S.D. Tex. 2007).

As shown above, the individuals most involved and knowledgeable regarding the books, copyrights, DMCA notices, and otherwise, either live or regularly work in Virginia. Their testimony is highly relevant regarding substantive copyright issues as well as alleged damages that Quill has suffered.

Under Fed. R. Civ. P. 45(b)(2), the subpoena power of the court extends to places outside the district that are within 100 miles of the place of trial. A trial in this District would deprive Mrs. Soto of compulsory process to compel the attendance of third-party witnesses having knowledge of relevant events. Because the Eastern District of Virginia will have greater

ability to compel testimony from third-party witnesses, this factor weighs in favor of the transfer. *See In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (favoring transfer where a substantial number of witnesses were within the subpoena power of the transferee venue but no witnesses could be compelled to appear in the forum in which the suit was filed)*; see also In re Hoffman-La Roche, Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009) (holding that transferee venue's subpoena power over at least four non-party witnesses weighed in favor of transfer); *see* 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3851, at 271-75 n.7 (4th ed.2013) (citing cases) (stating that "the fact that important nonparty witnesses may be within the subpoena power of one court but not the other is a significant issue" for determining a transfer of venue). Mrs. Soto thus faces a real prospect of not being able to exercise the court's compulsory subpoena power. While Mrs. Soto may present deposition testimony of unavailable witnesses, it would be unfair to force her to present a significant portion of her case by deposition. *Farr v. Designer Phosphate and Premix Intern.*, 777 F.Supp. 895, 896 (D. Kan. 1991). This factor weighs heavily in favor of transfer.

### C.     Cost Of Making The Necessary Proof Weighs In Favor Of Transfer

The cost of making the necessary proof in this case also weighs strongly in favor of a transfer. The fact witnesses who live, or work, in and around the Eastern District of Virginia would have to travel a much shorter distance to testify at trial and would not require overnight accommodations. *See Price v. Takata Corp.,* 2008 U.S. Dist. LEXIS 65121, at *11 (D.N.M. Aug. 14, 2008) (granting motion to transfer, noting that fact witnesses would have a shorter distance to travel to the transferee venue and would not have to spend the night there); s*ee also Seamless Interactive, LLC v. LG Electronics*, 2009 U.S. Dist. LEXIS 107562, *8, 2009 WL 3857426, at *3 (N.D. Okla. Nov. 18, 2009) ("Since none of the parties, witnesses or sources of proof are located

in this jurisdiction, the overall cost of litigating the case here is quite likely to be higher than if the case were to be litigated in New Jersey or California. Therefore, this factor favors transfer."). Regardless if the trial is held in the Western District of Oklahoma or in the Eastern District of Virginia, some employees of Quill will have to travel. The cost of litigating in the Western District of Oklahoma is more expensive for all parties, given that no party is a resident of Oklahoma. Accordingly, this factor weighs heavily in favor of transfer.

      **D.**    **Transfer Will Not Result In A Conflict Of Laws**

In the instant litigation, regardless of whether the case proceeds in the Western District of Oklahoma or in the Eastern District of Oklahoma, federal patent law will apply. This factor is therefore neutral in the analysis of transfer, as neither forum has an advantage over the other in this area.

Simply put, there can be no question that venue was improperly laid in this District, as Mrs. Soto lacks even minimal contacts with Oklahoma sufficient to support venue in this Court. (*See* discussion above; Soto Decl., ¶¶ 2-8). On the other hand, Plaintiff *could* have instituted this action in the Eastern District of Virginia, where Mrs. Soto resides and where Blushing Books is organized and has its principal place of business. (Dkt. # 6, ¶ 10; Soto Decl., ¶ 2). As Mrs. Soto has no employees, agents, facilities, assets, accounts, business licenses, or tax liability in Oklahoma, there clearly can be no argument that defense witnesses are concentrated in this District or elsewhere in Oklahoma and that *forum conveniens* principles should weigh in favor of trying the action here. (*See* Soto Decl., ¶¶ 2-7). Therefore, the action should be transferred to Virginia at the very least, even if the Court opts not to dismiss it.

## CONCLUSION

For the foregoing reasons, Defendant Soto respectfully requests that this case be dismissed because jurisdiction and venue are improper. In the alternative, Defendant Soto requests transfer to the Eastern District of Virginia for the convenience of the parties and witnesses and to promote judicial economy.

Respectfully submitted,

Date: November 26, 2018

s/Shawn M. Dellegar
Shawn M. Dellegar, OBA #20973
Deric McClellan, OBA #32827
CROWE & DUNLEVY, P.C.
500 Kennedy Building
321 South Boston Avenue
Tulsa, OK  74103-3313
(918) 592-9800
(918) 592-9801 (Facsimile)
shawn.dellegar@crowedunlevy.com
deric.mcclellan@crowedunlevy.com

And

Tynia Watson, OBA #30765
CROWE & DUNLEVY, P.C.
Braniff Building
324 North Robinson Avenue, Suite 100
Oklahoma City, OK 73102-8273
(405) 235-7700
(405) 239-6651 (Facsimile)
tynia.watson@crowedunlevy.com

**ATTORNEYS FOR DEFENDANT
RACHELLE SOTO, A/K/A ADDISON CAIN**

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of November, 2018, I electronically transmitted the attached document to the Court Clerk using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants (names only are sufficient):

Gideon A. Lincecum     glincecum@holladaychilton.com
Dylan D. Erwin          derwin@holladaychilton.com
Rebecca L. Briggs       beckybriggslaw@gmail.com


*/s/ Shawn M. Dellegar*
Shawn M. Dellegar