**Rebecca Briggs,** #40626 (CO) & #91362 (VCC)
(Also licensed in Federal Western District of Oklahoma)
Attorney for ABCD GRAPHICS AND DESIGN/Blushing Books
The Law Office of Becky Briggs, LLC
315 Colorado Ave, Pueblo, CO 81003
Phone:  (434) 989-0847          Fax:  (970) 826-7050
E-mail:  beckybriggslaw@gmail.com

---

UNITED STATES DISTRICT COURT
For the
Western District of Oklahoma

QUILL INK BOOKS LIMITED, a
foreign corporation,
   *Plaintiff*

 v.

ABCD GRAPHICS AND DESIGN  d/b/a
<u>Blushing Books, et al.</u>
   *Defendant*

)
)
) Civil Action No. CIV-18-920-G
)
)
)
)
)

## <u>DEFENDANT'S RESPONSE TO COMPLAINT</u>

### <u>SUMMARY:</u>

1.  Plaintiff's Complaint filed October 17, 2018 ("Complaint") is nearly two hundred pages of allegations, arguments, and exhibits.  All of these can be reduced to a single question:  Were ABCD Graphics and Design/Blushing and/or Rachelle Soto (publishing as Addison Cain/Soto) justified in filing a Digital Millennium Copyright Act take down notice against a series of books written by Zuri Amarcya (publishing as Quill Ink Books Limited/ Zoey Ellis), or did the two entities deliberately and knowingly misuse the system for unlawful financial enrichment?

2.  The Complaint's paragraphs not specifically addressed in this Response are denied.

### <u>NATURE OF ACTION</u>

3.  Defendant Blushing Books a c k n o w l e d g e s  that  Plaintiff  has  alleged,  inter  alia,  violations  of  copyright  laws  and  other  torts,  but deny that they engaged

in any such violations. Except as expressly admitted, Blushing Books denies the remaining allegations in Paragraphs 1-107 of the Complaint.

## MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE

Blushing Books incorporates by reference their responses to the foregoing paragraphs as if fully set forth herein.

4.  Pursuant to Federal Rules of Civil Procedure, and for the reasons included in the arguments and authorities cited herein, Defendant Blushing Books moves to dismiss the complaint in its entirety on the grounds that the Court lacks personal jurisdiction over Defendant, and that Oklahoma is not the proper venue for adjudication of claims between a British plaintiff and a Virginia defendant over a dispute with no connection to the State of Oklahoma.

5.  Answering Complaint paragraph #5:   The court lacks subject matter jurisdiction, personal jurisdiction, and general jurisdiction in this matter for the reasons outlined below.   Defendant Blushing denies Plaintiff's Paragraph 5.

6.  Answering Complaint paragraph #6:   Defendant Blushing Books does not have sufficient ties to Oklahoma—its ties to this Judicial District are, in fact, non-existent.   Undersigned Counsel provides the following offer of proof:   Blushing Books's owner and CEO has never once been to Oklahoma for business or otherwise.   Since Zoey Ellis' first book came out in January 2018, Blushing has done a microscopic $159.63 in sales in Oklahoma *indirectly* through its publisher branded store. They have no offices in Oklahoma, do not attend

conferences in Oklahoma, do not have employees residing in Oklahoma, and do not purposefully seek out any business or clients in Oklahoma. <u>Powers v. District Court of Tulsa County</u>, 2009 OK 91, ¶7, 227 P.3d 1060. Moreover, they do not have property here, do not direct or conduct activities here, and forcing them to litigate a lawsuit hundreds of miles from their residence and place of business offends due process principles.

7. Answering Complaint paragraph #7:  **The Western District of Oklahoma is not the proper venue for this action.** No events giving rise to these allegations took place in Oklahoma. Further, no parties listed in lawsuit live in Oklahoma, are incorporated or Oklahoma, or have sufficient ties to Oklahoma. The Complaint asserts that venue in the Western District of Oklahoma is proper under 28 U.S.C. § 1391(a)(2), which authorizes venue in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." Quill has the burden of showing that venue is proper in this Court "'with respect to each cause of action.'"  The accompanying sections make plain that Blushing Books does not have sufficient "minimum contacts" with the Western District of Oklahoma to support personal jurisdiction for any of Quill's claims. But even if it were otherwise, it would be incontrovertible that "a substantial part of the events or omissions giving rise to the claim" did not occur in Oklahoma 28 U.S.C. § 1391(a)(2) (2008).   In short, nothing in Quill's complaint suggests that any part, let alone "a substantial part" of any of its baseless, meritless claims arose from events or omissions in the Western District of Oklahoma. The disputed acts giving rise to the claims have no connection with the District. The Court therefore lacks jurisdiction over Blushing Books for Plaintiff's claims. Accordingly, venue is improper, and the suit should be dismissed.

8. Personal jurisdiction is an "essential element" of a court's jurisdiction, "without which the court is powerless to proceed to an adjudication." Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 584 (1999) (internal quotation marks omitted). The burden of establishing personal jurisdiction lies with the plaintiff, who must allege specific acts connecting the defendant with the forum. Gilbert v. Security Financial Corp., 2006 OK 58, ¶2, 152 P.3d 165; Conoco, Inc. v. Agrico Chemical Co., 2004 OK 83, ¶20, 115 P.3d 829. Quill Books does not, and cannot, meet that burden.

9. Recent United States Supreme Court jurisprudence has further narrowed the scope general jurisdiction, developing the "at home" doctrine to determine whether jurisdiction is proper— that the proper inquiry does not focus on "continuous and systematic contacts" but whether a corporation's affiliations with the State "are so continuous and systematic as to render it essentially at home in the forum state." See Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011) and Daimler AG v. Bauman, 134 S. Ct. 746, 754 (2014).  Under the precedent set forth in these cases, Defendant Blushing has even less connection with Oklahoma, where they have no place of business, no license to do business, and no interaction with the community whatsoever.

10. This is a case brought by a foreign company against a Virginia company- Quill 's own allegations place the residence of the parties outside Oklahoma. *see* Compl.  In short, the Western District of Oklahoma has nothing to do with this dispute.

11. Under Oklahoma law, specific jurisdiction over a nonresident defendant is governed by the long-arm statute.  In order for a nonresident defendant to be amenable to suit in Oklahoma under the Oklahoma long-arm statutes, the cause of action must arise out of the

same acts which provide the basis for the Oklahoma court's exercise of in personam jurisdiction. <u>George v. Strick Corp.</u>, 496 F.2d 10 (10th Cir.1974); <u>Roberts v. Jack Richards Aircraft Co</u>., 536 P.2d 353 (Okl.1975); <u>Crescent Corp. v. Martin</u>, 443 P.2d 111 (Okl.1968).

12. In determining the sufficiency of contacts between nonresident defendants and the state of Oklahoma so as to exercise *in personam* jurisdiction under the long-arm statutes, the Court is to consider the totality of contacts between the nonresident defendant and the state. <u>Lyon v. Bonneson</u>, 451 F.Supp. 441 (W.D.Okl.1977); <u>Northwest Animal Hospital, Inc. v. Earnhardt</u>, 444 F.Supp. 10 (W.D.Okl.1977); <u>Gregory v. Grove</u>, 547 P.2d 381 (Okl.1976). If a foreign corporation or an individual voluntarily elects to act within this State, whether directly or indirectly, he should be answerable in Oklahoma courts. <u>See</u> <u>B.K. Sweeney Co. v. Colorado Interstate Gas Co.</u>, 429 P.2d 759 (Okl.1967); <u>Marathon Battery Co. v. Kilpatrick</u>, 418 P.2d 900 (Okl.1965).  Here, however, none of Quill's claims arise from Blushing Books transacting any business in the District or from Blushing Books causing tortious injury in the District.

13. Plaintiff has not made a prima facie showing that this Court has *in personam* jurisdiction over Defendant Blushing Books under 12 Okl.Stat.Supp.1980 § 187 and 12 Okl.Stat.1971 § 1701.03. Blushing Books is not subject to general jurisdiction in Oklahoma for two separate and independent reasons. First, Plaintiff served Blushing Books with the complaint in Virginia - not Oklahoma - which alone negates the possibility of general jurisdiction. Second, the Complaint alleges no facts relevant to general jurisdiction, which may be exercised only where a non-resident corporate defendant has "continuous and systematic" contacts with the forum, <u>Monge v. RG-Petro Machinery</u> (Grp.) Co., 701 F.3d

598 (10th Cir. 2012) (quoting <u>Goodyear Dunlop Tires Operations, S.A. v. Brown</u>, 131 S.Ct. 2846, 2851(2011)).

14. For the reasons above, Plaintiff Quill's claims do not arise out of the transaction of business or tortious injury within the Western District of Oklahoma, and the allegations thus fail to meet the requirements for personal jurisdiction over an out-of-state corporation set forth in the Oklahoma long-arm statute. For the same reasons, it is also clear that the exercise of jurisdiction would not comport with due process. The Western District of Oklahoma has no special interest in adjudicating a dispute between a foreign plaintiff and a Virginia company over allegations that have nothing to do with the venue. <u>See</u> <u>World Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286,292 (1980). The Plaintiff is not a resident of the Western District of Oklahoma, and consequently the District has little or no interest in providing a forum for its claims. Accordingly, the exercise of jurisdiction over Blushing Books would  violate the constitutional minimum of "fair play and substantial justice." <u>International Shoe Co. v. Washington</u>, 326 U.S. 310,316 (1945);

15. This civil action must be dismissed or transferred.  Where a court lacks personal jurisdiction over a defendant, dismissal is proper. <u>Ruhrgas</u>, 526 U.S. at 584 (without personal jurisdiction, "the court is powerless to proceed to an adjudication"). Likewise, a court may dismiss a suit where venue is improper. 28 U.S.C. § 1406(a) (2008) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss ... such case ... "). Here, where there is neither personal jurisdiction over the defendant nor proper venue, this Court has two independent bases for dismissal available. Following dismissal, Plaintiff could re-file its suit in a district where jurisdiction and venue are proper, if and when it sees fit to do so.

16. This court lacks jurisdiction over claims brought by an alien corporation against a Virginia corporation seeking damages for defamation and other torts.  For much the same reasons, venue is also improper here.  If Quill Ink wishes to pursue its baseless and meritless claims against Blushing Books, it must do so in Virginia.

### SUBSTANTIVE RESPONSE

Blushing Books incorporates by reference their responses to the foregoing paragraphs as if fully set forth herein.

17. Answering paragraph #2:   Although the Complaint against ABCD Graphics/Blushing and Cain/Soto cites the Faleena Hopkins "cocky" trademark dispute in Footnote 1 (in a seeming attempt to draw analogies between the two actors), it misrepresents a critical point:  Faleena Hopkins applied for **and was granted** a trademark on the use of the word "cocky" in romance titles.  Whether one agrees with the granting of the trademark or not (and based on subsequent amicus filings by Romance Writers' of America and others, virtually everyone (with the obvious exception of Ms. Hopkins) believes that the trademark should not have been issued) Ms. Hopkins took no legal action against any other authors until after the trademark was granted.  Once the trademark was granted, what she did was legally permissible, no matter how much she was criticized for it.   Plaintiff's Complaint uses the Faleena Hopkins situation as an example of an author harassing other authors, but this is not the case.

18. Responding to Complaint Paragraph #3: Plaintiff Ellis/ Quill Ink's complaint makes the allegation  that both ABCD Graphics/Blushing and Design and Rachelle Soto have engaged in similar acts in the past.  This is in fact, the basis of the whole argument:  that these tactics

are used as known and ongoing business strategies.   Specifically, it is alleged that the two entities engaged in some or all of the following: 1) manipulating and/or providing financial compensation for reviews; 2) harassing authors; 3) posting negative information about competitors to social media; and 4) using the DMCA system to stifle competition and harm competitors.  **Not a single piece of evidence is provided which supports any of these claims, and Defendant strongly disputes them**.

19. Further, Plaintiff alleges that either Defendants ABCD Graphics/Blushing and/or Cain/Soto engaged in these actions against Plaintiff Zoey/Amarcya's books specifically.   Again not a single piece of evidence is provided.

20. Answering paragraphs # 18-24: Defendant Blushing does not dispute that Omegaverse is a popular, well established forum for fan fiction.  Defendant maintains, however, that plagiarism, misappropriation, copyright infringement, and intellectual property theft can exist in this context, and Blushing firmly believes now (and when they filed the Takedown Notices) that Plaintiff Zoey Ellis unlawfully usurped Defendant Cain/Soto's material. Although there are tropes and conventions within Omegaverse, (just as there are conventions within "vampire" literature – e.g., vampires cannot come out during the day, they drink blood, they live forever, etc.), **Plaintiff Ellis went well beyond this point**.  Plaintiff Ellis is writing in the shared literary tradition of Omegaverse, but in addition, she placed her story in a setting **within the Omegaverse** and *then* proceeded to appropriate dozens of plot points. Amarcya/ Quill's argument almost seems to be the polar opposite of copyright:  that because there is a shared literary meme or tradition here that cannot be copyrighted, ANY borrowing from another work is permissible.

21. Answering paragraphs # 25-40:  Defendant Blushing denies the allegations contained in these paragraphs.  Plaintiff argues that because this is an established fan fiction universe with common terminology and concepts, they advance the incorrect argument that they are essentially immune from plagiarism.  To illustrate: An Omega is a character / creature like a vampire or a werewolf.  No one owns vampire or werewolf literature.  For purposes of analogy, both "Harry Potter" and "The Lion, Witch and the Wardrobe" feature English schoolchildren who enter a magical world, but no one could successfully make the claim that J.K. Rowling plagiarized C.S. Lewis.   In contrast, if someone published a book in which a little orphan girl living with mean relatives got picked up by a guy in a fantastical car and taken to a "sorcerer" school where everyone was divided into three houses, wore robes, and played games on flying horses, it is likely that Rowling's material would be infringed.  And if someone published a book in which children entered a magical world through a china cabinet and encountered an evil wizard and a kindly, magical tiger, again this would be too close to C.S. Lewis.

22. Copyright exists and is automatic on publication, and registration is not mandatory… even in DMCA filings.  Registration is, however, required before copyright claims are made in court filings.   Copyrights have been filed on all of Addison Cain/Soto's books as of now.

23. Answering paragraphs #58: The statement  "consistent with their long-standing practice of manipulating commentary … " is made with no proof whatsoever, is completely false, and has now been posted openly to a publicly accessible website and is defamatory to both ABCD Graphics/Blushing and Cain/Soto.   Not one example is provided to show either

ABCD Graphics/Blushing or Cain/Soto taking any public or private action against Zoey

Ellis' titles with the exception of the filing of the DMCA notices (which are not public).


24. Answering paragraphs #58, #59, #60, #61 – all allege that Soto/Cain/Soto and ABCD

Graphics/Blushing manipulate reviews and/or solicited negative reviews and/or did so

specifically against Amarcya/Ellis's books.  Not a single supporting example or proof is

given.  While an Amazon account can only leave one review per product, an account can

leave multiple response comments on other customers' reviews.  **Cain/Soto's request that**

**fans up-vote and/or down vote reviews is targeted to fans / readers who left reviews on**

**Cain/Soto's own books**.  **These requests have nothing to do with Amarcya/Ellis's titles**

**whatsoever.**   This system has been provided as part of the Amazon interface, and one has to

assume that Amazon expects people to utilize it.  Encouraging fans to use it violates no

Amazon guidelines or terms of service, and is not the same as soliciting or paying for

reviews.


25. A vendor has no requirement to remove a book based on a DMCA filing, and while Apple,

Barnes and Noble, and Kobo removed the books from sale, Google Play and Amazon did

not.  Therefore, any loss of income was as a result of the vendor choosing to remove the titles

and not as a result of the DMCA filing per se.


26. Answering paragraph #65.  ABCD Graphics/Blushing continued to harass… through

emails….   The CEO of ABCD Graphics/Blushing contacted Zoey Ellis on one occasion

with a polite attempt to resolve the situation.  (Exhibit 14 in the original complaint.) This was

the first contact between the two parties and was made prior to Ms. Ellis retaining counsel. When no response was received, no further emails were sent by any person employed by ABCD Graphics/Blushing.  Addison Cain/Soto never contacted Zoey Ellis directly.  Her attempts to do so were thwarted by the fact that before she ever attempted to reach out to or contact Zoey Ellis on Facebook, Zoey Ellis had pre-emptively blocked Addison from seeing her Facebook page.   The example included (Exhibit 14) contains ONE email.   The statement that ABCD Graphics/Blushing "continued to harass Plaintiff and its author through emails to intimidate, embarrass, and to cause harm" is false, and has now been posted openly to a publicly accessible website and is defamatory to both ABCD Graphics/Blushing and Cain/Soto.

### COUNT I – MISUSE OF COPYRIGHT RESPONSE TO PARAGRAPHS 66-69:

Defendant incorporates and cross references each and every response and argument provided throughout this document as if repeated herein.

27. Answering paragraph #69.   Their Complaint makes the statement – "some stories build alternate societal or cultural traditions…"  This is one of the bases for our claim – that Alpha's Claim (and specifically Born to Be Bound) as well as copying an overarching plot arc, contains multiple very specific alternate societal "tropes," virtually all of which were copied in Myth of Omega, and that copying went well beyond what is acceptable in a shared writing tradition like "werewolves" or "vampires ".

### COUNT II – MISREPRESENTATION, 17 U.S.C. § 512(f): RESPONSE TO PARAGRAPHS 71-75:

Defendant incorporates and cross references each and every response and argument provided throughout this document as if repeated herein.

28. Plaintiff at times appears to be making a "reverse copyright" argument, implying that because Omegaverse *is* a shared universe with many conventions and unifying elements among the stories, plagiarism is impossible. To give an analogy: It would be difficult for anyone in the U.S. today to be unfamiliar with "The Walking Dead," a television program now in its eighth season set in an America decimated by a plague of zombies. Most Americans are also familiar with the Resident Evil series of six films, spread out over fourteen years which also deal with a zombie take-over of America. Although the basic "tropes" of the worlds are identical, (flesh eating zombies caused by the release of a virus decimate mankind) the basic plot lines of Walking Dead and Resident Evil are very different. However, should someone attempt to create a film virtually identical to Resident Evil, adding only "magic" to the plot and changing genders of protagonists, it is likely a lawsuit would quickly result. Plaintiff's argument at times seems to be that because there are quite a few "conventions" in Omegaverse and because Omegaverse itself is not subject to copyright, (any more than zombies or vampires are) that within Omegaverse, "anything goes" and that plagiarism is not possible.

29. Rather, Blushing gave a formal, corroborated notice to vendors that they believed their author's work had been plagiarized.

30. Answering paragraph #72. Since 2005, ABCD Graphics/Blushing has published in excess of 3000 titles. The company has published 1370 titles since Jan 1, 2015. ABCD Graphics/Blushing is in fact one of – if not the – largest digital-first publisher in the world. This is roughly one book every week day for 13 years. In that time, they have filed two DMCA take down notices against other authors/publishers, **the one filed in this matter being the second**. Addison Cain/Soto has never filed a DMCA take down against another

author.  The statement that "ABCD Graphics/Blushing and Cain/Soto have engaged in similar acts…" is false.  Neither ABCD Graphics/Blushing nor Cain/Soto has ever used this tactic to "stifle competition." This has now been posted openly to a publicly accessible website and is defamatory to both ABCD Graphics/Blushing and Cain/Soto.

31. Answering paragraph #72.  Neither Defendant ABCD Graphics/Blushing nor Defendant Cain/Soto has filed any DMCA notices regarding any books in the Omegaverse universe with the exception of Plaintiff Zoey Ellis's Myth of Omega.   The Dragon Maiden Post referenced here refers to a blatantly-plagiarized version of Born to Be Bound posted by an author to a free erotic story website, "Literotica."   Cain/Soto did not file any legal paperwork.  Rather, Cain/Soto complained to the owners of Literotica, the claim was investigated, and the story removed in 2016.

32. Answering paragraphs #73-#74.   DMCA notices were filed against Zoey/Amarcya's titles with good faith belief that copyright had been violated and that Defendants were in possession of documentation regarding this violation.   As of the receipt of the complaint (October 19, 2018), the DMCA filed with Amazon was still open and unresolved.   Once a final determination would be received from Amazon, a decision to pursue legal copyright actions would be made.   Blushing's decision to not have filed a copyright action as of this time is not proof that Defendants did not believe such an action would be successful or is valid.

33. Answering paragraph #76.  The exact sequence of these filings is confusing as some notices were filed prior to the release of Book #3 in the Myth of Omega series, while others were filed after.   As far as Defendant knows no DMCA was filed for Book #3 prior to the release of Book #3 on May 23rd.  However, the basis for Defendants' claim – that extensive alternate

societal and cultural traditions created by Addison Cain/Soto in her Alpha's Claim series –

exist in Myth of Omega.  These traditions would carry on into Book #3 even if Book #3 had

not yet been released.

34. Answering paragraph #77.   While "ideas" and "arcs" are not copyrightable, "plots" – when

the "look and feel" are "substantially similar" or when there is significant "congruence" are.

It is the belief of Cain/Soto and ABCD Graphics/Blushing that Ellis/Amarcya's crossed this

line with Myth of Omega.


35. Answering paragraphs #78, #79, #80 -  Thirty plot congruences were listed in a document

provided to vendors as part of a DMCA take down filing.    ABCD Graphics/Blushing and

Cain/Soto/Soto disagree that they were incorrect, purposefully inaccurate, misleading, or

"tropes" of the Omegaverse.    While some could be argued as existing within a "gray area,"

the vast majority of the thirty are very specific plot instances of Alpha's Claim and were

reproduced without variation in Myth of Omega, with the exception that the world of "Myth

of Omega" brings in a substantial "magic" component (not present in Alpha's Claim)  on top

of the basic Omegaverse plot .   The magic is an adjunct, an "add-on" if you will, put on top

of the Alpha's Claim plot,  but that if the magic component is removed from Myth of Omega,

what remains is fundamentally "Alpha's Claim."


36. Answering paragraph #82.  The DMCA filings were made under penalty of perjury, a fact of

which both Defendants Cain/Soto and ABCD Graphic/Blushing are aware.  The filings were

made with the good faith belief that copyright had been violated and that Defendant Blushing

was in possession of documentation regarding this violation.

37. Answering paragraph #85  (See Response #33 & 34 – above). Further, Defendant Blushing had no duty to Plaintiffs.  They do not work with them, are not in contracts with them, and have no otherwise relationship that would create a legal duty suitable to create negligence liability.

38. Answering paragraph #86: Although ABCD Graphics/Blushing and Soto filed the DMCA notices, the vendors themselves made the decision to remove the books from sale.  This decision was optional.  While Draft to Digital's response to Ellis/Amarcya contains the statement "By law, we are required to remove content upon receiving a DMCA takedown notice…". this is false.  The DMCA does not require a service provider to take down allegedly infringing content. Instead, the DMCA gives service providers an incentive to do so by providing that they "shall not be liable for monetary relief" if they comply with a proper DMCA notice. Not all service providers have opted into the DMCA system, and even those who have opted-in are not obligated to take down content. Moreover, Amazon has never removed Plaintiff Ellis's books and has continued to ignore filings, phone calls, and letters. Therefore, any loss of income can be attributed to the vendors' decision and not the filing per se.

## COUNT IV - TORTIOUS INTERFERENCE WITH

## PROSPECTIVE ECONOMIC ADVANTAGE: Answering paragraph #87-91

Defendant incorporates and cross references each and every response and argument provided throughout this document as if repeated herein.

39. ABCD Graphics/Blushing has never made a public statement regarding this matter.   On the contrary,  Plaintiff, Plaintiff's author, and – seemingly -  Plaintiff's attorney has now made extensive public statements and actually created a website, purporting to document "DMCA" abuse but which really only discusses ONE case – this one.   The complaint includes allegations that ABCD Graphics/Blushing

    a.   manipulated reviews,

    b.   harassed  Plaintiff and Plaintiff's author,

    c.   filed the DMCA only to stifle competition

    d.   harassed at least one additional author, and

    e.   filed knowing that the allegations are false.

40. No evidence is provided regarding any of these allegations, and they are false.  Defendant ABCD Graphics/Blushing has never posted publicly to any forum regarding this matter, has never alleged that Plaintiff's author has engaged in harassment, and has never discussed this situation with anyone other than Soto and counsel.

## COUNT V – MALICIOUS INTERFERENCE WITH CONTRACT
## OR BUSINESS RELATIONS. RESPONSE TO PARAGRAPHS 92-96

Defendant incorporates and cross references each and every response and argument provided throughout this document as if repeated herein.

41. Not a single one of these allegations are supported by a single piece of documentary evidence.  Further, Plaintiff, Plaintiff's author, and Plaintiff's attorney (Ms. Coale) are engaging in exactly the behavior of which they are falsely accusing ABCD Graphics/Blushing of engaging.

42. Indeed, Zoey/Amarcya has posted publicly to a Zoey Ellis Facebook page that her attempts to resolve the issue amicably and instead Defendants "persisted with threats of blackmail and attempted intimidation, as well as continued existing attacks against my character and books in collusion with others."  Neither ABCD nor Cain/Soto engaged in any behaviors of this nature. Furthermore, they did not "ignore attempts to resolve the issue."  What they did ignore was a letter from an attorney, Margarita T.B. Coale, who has an extensive and documented history of stalking Ms. Cain/Soto on a personal level, and whose involvement with this case was never appropriate or proper, and against whom Blushing Books has filed an official grievance with the Texas State Office of Attorney Regulation.

43. In addition, Amarcya/ Ellis makes the allegation that they have "similarly targeted" other M/F Omegaverse authors and that one author "abandoned" her story after threats and "take-down" attempts.   No documentation of any of this is provided and every word of it is a fabrication,  now placed in a public venue with the direct intention of harming ABCD Graphics/Blushing, Soto or both.

44. Blushing filed the DMCA take-downs based 100% on Ms. Cain/Soto's representations to Blushing, combined with a detailed comparison to the materials.   Blushing conducted

appropriate research and juxtapositions of the works in question, but did not conduct an

independent investigation to include investigations.  What Cain/Soto/Soto provided to

Blushing contained enough information / evidence for Blushing to state that the two books

were "substantially similar."   Furthermore, Ms. Cain/Soto DID file DMCA notices on her

own, demonstrating that each individual party made a determination that Cain/Soto/Soto's

works had indeed been plagiarized.


**COUNT VI – DEFAMATION Responding to Complaint paragraphs 97-100:**


Defendant incorporates and cross references each and every response and argument provided

throughout this document as if repeated herein.


45. In the Spring of 2018, Ms. Cain/Soto, who has many passionate supporters, received

    information from multiple independent parties that Ellis/Amarcya had plagiarized her books.

    The subsequent Takedown Letters filed by Defendant Cain/Soto's publisher, Blushing

    Books, were well-researched, well documented, specifically-outlined demonstratives

    conveying their joint and well-founded beliefs that Zoey Ellis/ Zuri Amarcya had plagiarized

    Cain/Soto/Soto's work.


46. The Plaintiffs have argued throughout the complaint that Blushing has defamed and harassed

    them.  However, the sole piece of communication between Blushing and Plaintiff is a private

    electronic message wherein Blushing attempts to devise an amicable, discreet method of

resolving the dispute. No public communications were made by Blushing Books regarding this dispute.

47. At the very least, Plaintiff Ellis is a limited purpose public figure. Further, Ms. Cain/Soto's statements on social media are constitutionally-protected and therefore nonactionable, especially because the comments arose from a public online dispute between a prominent writer (Cain/Soto) and one of her rivals. Defamation law supplies robust protection for opinions.

48. Plaintiffs cannot plead and prove actual malice, a federal constitutional requirement for defamation claims asserted by public figures, for the reasons stated above. Thus, Plaintiffs cannot show any probability that she will prevail on her claim. The Court should disregard this section, because Plaintiffs have not pled, and will never be able to plead, a valid claim for defamation.

49. Because defamation per se does not apply, these claims should be disregarded. Plaintiff must plead and prove actual damages to recover for defamation. Plaintiff has not alleged actual damages. Her only allegations of damages are general allegations that she lost unspecified business as a result of the Takedown Letters. Plaintiff cannot, additionally, establish a causal relationship between the Takedown Letters and damages. Again, the Complaint contains no specific damages or figures corroborating those damages.

**COUNT VII – FALSE LIGHT: Responding to Complaint Paragraphs 101-107**

Defendant incorporates and cross references each and every response and argument provided throughout this document as if repeated herein.

50. Any negative publicity Plaintiffs experienced as a result of Defendants filing Takedown Letters came as a result of the. public controversy they both created and fueled in an online public website. Indeed, shortly after filing the Complaint, **Plaintiff even created a website to broadcast this dispute**.  The Complaint does not and cannot specify any economic harm that Plaintiff allegedly has suffered as a result of the Takedown Letters as opposed to the many other aspects of her public internet attack campaign against Blushing Books.

51. Further, Plaintiffs do not prove actual malice (reckless disregard for the truth) because the standard requires conscious disregard of actual evidence that the statement is false, i.e., that Blushing, at the time they filed the Takedown Letters, entertained "serious doubts" about the veracity of the statements, that is, a "high degree of awareness" that the comments were probably false. St. Amant v. Thompson, 390 U.S. 727, 731 (1968). Plaintiff cannot show this, and the Complaint fails even to allege this—it merely pleads that Blushing said something without knowing whether it was true or not. This is not the standard for actual malice. Absent competent evidence that Blushing was actually aware that their comments were false or had information that would cause one to entertain serious doubts about their truth, Plaintiff cannot prove actual malice.

## COUNT IX – DECLARATORY JUDGMENT: Responding to paragraphs 108-112.

52. This section seems to indicate that, because Plaintiff Ellis's works may have infringed on Defendant Soto/Cain's intellectual property, that amounts to a controversy such that this

court must adjudicate the matter.  Plaintiff, not Defendants, brought this action, and elected to bring it in an improper forum.

53. Further, the Complaint is insufficient on its face for the court to adjudicate these claims.

54. The Defendant denies the allegations set forth in the Complaint by Plaintiffs Quill and Ellis.

## **CONCLUSION**

55. For the reasons set forth above, this civil action should be DISMISSED for lack of personal jurisdiction and improper venue, or, if this Court finds that it is in the interests of justice, TRANSFERRED to the District of Virginia pursuant to 28 U.S.C. § 1406(a).  28 U.S.C. § 1631 provides another mechanism for the transfer of an action filed where personal jurisdiction is lacking. See Trujillo v. Williams, 465 F.3d 1210, 1223 (10th Cir. 2006)(transferring case under 28 U.S. C. § 1631 where personal jurisdiction and venue were lacking).

## **REQUEST FOR RELIEF**

56. WHEREFORE, Defendant Blushing Books, requests the following relief:

1) Dismissal of the action;

2) Defendant Blushing Books' Attorneys' fees pursuant to 17 U.S.C. § 505, other portions of the COPYRIGHT ACT, or as otherwise allowed by law;

3) Defendant's recoverable costs; and

4) Any further relief as the Court deems just and equitable.

Respectfully Submitted,
*/s/ Rebecca Briggs*
 REBECCA BRIGGS, #40626 (CO) & #91362 (VCC)
 Attorney at Law
 The Law Office of Becky Briggs, LLC
 Dated:  November 26, 2018


**CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of November, 2018, I
electronically transmitted the attached document to the Court
Clerk using the ECF System for filing. Based on the records
currently on file, the Clerk of Court will transmit a Notice of
Electronic Filing to the following ECF registrants (names
only are sufficient):


Gideon A. Lincecum glincecum@holladaychilton.com

Dylan D. Erwin derwin@holladaychilton.com

Shawn

                    */s/ Rebecca Briggs*