# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1)  QUILL INK BOOKS LIMITED, a foreign corporation, | |
| Plaintiff, | |
| v. | Case No.:  CIV-18-920-G |
| (1)  ABCD GRAPHICS AND DESIGN, INC., D/B/A BLUSHING BOOKS PUBLISHING, a foreign corporation, (2)  RACHELLE SOTO a/k/a ADDISON CAIN, an individual, and (3)  JOHN and JANE DOE, unknown individuals and online participants, | |
| Defendants. | |

**PLAINTIFF, QUILL INK BOOK LIMITED'S COMBINED RESPONSE AND OBJECTION TO THE MOTION TO DISMISS FILED BY DEFENDANT, RACHELLE SOTO A/K/A ADDISON CAIN AND THE RESPONSE TO COMPLAINT FILED BY DEFENDANT, ABCD GRAPHICS AND DESIGN, INC., D/B/A BLUSHING BOOKS**

Gideon A. Lincecum, OBA No. 19674
Dylan D. Erwin, OBA No. 31987
HOLLADAY & CHILTON, PLLC
204 North Robinson, Suite 1550
Oklahoma City, OK 73102
Telephone:  (405) 236-2343
Facsimile:   (405) 236-2349
Email:  glincecum@holladaychilton.com
derwin@holladaychilton.com

**ATTORNEYS FOR PLAINTIFF
QUILL INK BOOKS LIMITED**

December 17, 2018

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

SUMMARY OF ARGUMENT ............................................................................... 2

STANDARDS ....................................................................................................... 6

    I.      GENERAL PRINCIPLES RELATING TO PERSONAL
           JURISDICTION ...................................................................................... 6

          A.    Burden of Establishing Personal Jurisdiction .................................... 6

          B.    The Exercise of General Jurisdiction ................................................ 6

          C.    Establishing Specific Jurisdiction .................................................... 7

          D.    Personal Jurisdiction in the Internet Context .................................... 8

ARGUMENT AND AUTHORITIES ..................................................................... 10

    I.      BLUSHING'S "RESPONSE TO COMPLAINT" VIOLATES RULE
           (12)(B) OF THE FEDERAL RULES OF CIVIL PROCEDURE, IS
           UNTIMELY, AND SHOULD BE STRICKEN. ......................................... 10

    II.     JURISDICTION IS PROPERLY ESTABLISHED IN THIS JUDICIAL
           DISTRICT. ............................................................................................. 12

          A.    Quill has Adequately Pled Facts Demonstrating
               Personal Jurisdiction over Blushing and Cain. ................................ 12

          B.    Specific Jurisdiction over Defendants Exists in the
               Western District of Oklahoma by virtue of the Digital
               Millennium Copyright Act Take Down Notice. .............................. 12

               1.    *Defendants have sufficient minimum contacts*
                     *with the Western District of Oklahoma.*................................ 15

               2.    *Exercising specific jurisdiction over the Defendants*
                     *would be consistent with traditional notions of fair play*
                     *and substantial justice.*......................................................... 17

          C.    Specific Jurisdiction over Defendants Exists in the Western
               District of Oklahoma by Virtue of Defendants' Tortious
               Interference with Quill's Contract with Draft2Digital.................... 20

D.    General Jurisdiction Could Additionally Be Supported Against Blushing. ............................................................................ 21

III.    VENUE IS PROPER IN THE WESTERN DISTRICT OF OKLAHOMA ......................................................................................... 22

CONCLUSION ............................................................................................... 25

## Table of Authorities

**Cases**

*Automattic Inc. v. Steiner*,
    82 F. Supp. 3d 1011 (N.D. Calif. 2014) .................................................... 13, 14, 15

*BAC Home Loans Servicing LP v. Fall Oaks Farm LLC*,
    848 F. Supp. 2d 818 (S.D. Ohio 2012) ............................................................ 10, 11

*Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*,
    223 F.3d 1082 (9th Cir. 2000) ........................................................................ 9

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*,
    21 F.3d 1558 (Fed. Cir. 1994) ........................................................................ 18

*Bird v. Parsons*,
    289 F.3d 865 (6th Cir. 2002) .......................................................................... 9

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) ............................ 7, 13, 17

*Chalfant v. Tubb*,
    453 F. Supp. 2d 1308 (N.D. Okla. 2006) ............................................... 23

*Daimler AG v. Bauman*,
    571 U.S. 117, 134 S. Ct. 746, 761 (2014) ............................................. 21

*Doe v. Sentech Emp't Servs., Inc.*,
    186 F. Supp. 3d 732 (E.D. Mich. 2016) ................................................ 11

*Donner v. Tams-Witmark Music Library, Inc.*,
    480 F. Supp. 1229 (E.D. Penn. 1979) .................................................... 23

*Droke House Publrs., Inc. v. Aladdin Distrib. Corp.*,
    352 F. Supp. 1062 (N.D. Ga. 1972) ....................................................... 24

*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*,
    514 F.3d 1063 (10th Cir. 2008) ............................................... 6, 7, 8, 13

*Gorman v. Ameritrade Holding Corp.*,
    293 F.3d 506, 352 U.S. App. D.C. 229 (D.C. Cir. 2002) ........................ 9

*Hand v. Houk*,
    No. 2:07-cv-846, 2008 WL 5378358 (S.D. Ohio Dec. 23, 2008) ................. 11

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945) ............................................. 7, 13

*Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*,
   205 F.3d 1244 (10th Cir. 2000) .......................................................................... 2, 6

*Lakin v. Prudential Sec, Inc.*,
   348 F.3d 704 (8th Cir. 2003) ................................................................................... 9

*Metro. Prop. & Cas. Ins. Co. v. Pest Doctor Sys., Inc.*,
   No. 3:14-cv-143-WHR, 2014 U.S. Dist. LEXIS 86647,
   2014 WL 2855003, (S.D. Ohio June 23, 2014).................................................... 11

*Mitchell v. King*,
   537 F.2d 385, 386 (10th Cir. 1976).......................................................................... 6

*Nat'l Occupational Health Servs., Inc. v. Advanced Indus. Care*,
   50 F. Supp. 2d 1111 (N.D. Okla. 1998) ....................................................... 5, 20, 24

*OMI Holdings v. Royal Ins. Co. of Can.*,
   149 F.3d 1086 (10th Cir. 1998)........................................................................ 17, 19

*Red Oaks West, Inc. v. Specialty Trucks & Equip., Inc.*,
   2015 U.S. Dist. LEXIS 96320 (Dist. Utah 2015)................................................... 19

*Revell v. Lidov*,
   317 F.3d 467 (5th Cir. 2002) ................................................................................... 9

*Ruppe v. Knox Cty. Bd. of Educ.*,
   993 F. Supp. 2d 807 (E.D. Tenn. 2014) ................................................................. 11

*Scheid v. Fanny Farmer Candy Shops, Inc.*,
   859 F.2d 434 (6th Cir. 1988).................................................................................. 11

*Shrader v. Biddinger*,
   633 F.3d 1235 (10th Cir. 2011) ............................................................................... 8

*Silver v. Brown*,
   382 F. App'x 723 (10th Cir. 2010)............................................................................ 8

*Smith v. Basin Park Hotel, Inc.*,
   178 F. Supp. 2d 1225 (N.D. Okla. 2001) ............................................................... 10

*Southern v. All Points Delivery Sys.*,
   2006 U.S. Dist. LEXIS 19512 (N.D. Okla. 2006).................................................. 23

*Ten Mile Indus. Park v. Western Plains Serv. Corp.*,
    810 F.2d 1518 (10th Cir. 1987) ................................................................... 6

*Thomas Jackson Publ'g, Inc. v. Buckner*,
    625 F. Supp. 1044 (D. Neb. 1985) .......................................................... 23

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980) .......................... 2

**Statutes**

17 U.S.C.S. § 512 ........................................................................................... 1

28 U.S.C.S. § 1391(b)(2) ........................................................................... 5, 24

28 U.S.C.S. § 1400 ....................................................................................... 23

28 U.S.C.S. § 1400(a) ................................................................................... 24

Digital Millennium Copyright Act, 17 U.S.C. § 512 ...................................... 14

**Other Authorities**

Fed. R. Civ. P. 8. ............................................................................................ 3

Plaintiff, Quill Ink Books Limited ("Quill") submits the following combined objection in response to the *Motion to Dismiss Plaintiff's First Amended Complaint for Lack of Personal Jurisdiction and Improper Venue, or, in the Alternative, Transfer* [Motion, Dkt. No. 18] filed by Defendant Rachelle Soto a/k/a Addison Cain ("Cain") and the *Response to Complaint* [Resp., Dkt. No. 19] filed by ABCD Graphics and Design, Inc., d/b/a Blushing Books ("Blushing"). In support, Quill shows the Court as follows:

## **PRELIMINARY STATEMENT**

This action arises from false and defamatory communications delivered by Blushing and Cain *directly* to Quill's eBook distributor in Oklahoma, Draft2Digital, L.L.C. ("Draft2Digital"), and to various other online vendors. Draft2Digital is an Oklahoma limited liability company with its principal place of business, and sole office, in Oklahoma City, Oklahoma. Blushing and Cain's contacts with Draft2Digital tortiously interfered with Quill's distribution contract with Draft2Digital; deprived Quill of its contractual right to participate in Draft2Digital's distribution program; and caused Quill to lose pre-release and ordinary book sales in the United States and internationally. On May 29, 2018, after filing its counter-notice to restore its contractual relationship with Draft2Digital, Blushing and Cain provided notice of their intent to commence legal action against Quill on May 20, 2018. In providing its counter-notice to Draft2Digital, Quill was required to consent to the jurisdiction of the U.S. District Court of the Western District of Oklahoma regarding the notice delivered to its distributor.[1] Quill filed the instant action on October 17, 2018,

---

[1] 17 U.S.C.S. § 512 provides that "the subscriber consents to the jurisdiction of Federal District Court . . . if the subscriber's address is outside of the United States, for any judicial

1

against Blushing and Cain seeking injunctive relief for intentional interference with contract and for copyright misuse; and for damages for misrepresentation of copyright claims under the DIGITAL MILLENNIUM COPYRIGHT ACT ("DMCA"), tortious interference with prospective and existing business relationships, defamation, false light, civil conspiracy; and for declaratory relief.

## SUMMARY OF ARGUMENT

Personal jurisdiction in this case is based on the laws of the forum state and whether jurisdiction comports with constitutional due process. *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000). Oklahoma courts "may exercise jurisdiction on any basis consistent with the Constitution of this state and the Constitution of the United States." OKLA. STAT. tit. 12, § 2004(F). As "Oklahoma's long-arm statute permits the exercise of any jurisdiction that is consistent with the United States Constitution, the personal jurisdiction inquiry under Oklahoma law collapses into the single due process inquiry." *Intercon*, 205 F.3d at 1247.

Personal jurisdiction over a non-resident defendant satisfies due process if there are sufficient "minimum contacts between the defendant and the forum state." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980); *Intercon*, 205 F.3d at 1247. The minimum contacts may support specific jurisdiction or general jurisdiction. *Id.*

---

district in which the service provider may be found, and that the subscriber will accept service of process from the person who provided notification under subsection (c)(1)(C) or an agent of such person.").

Quill's Amended Complaint states "Defendants, and each of them, have sufficient contacts with this judicial district generally and, in particular, with the events herein alleged, that each such Defendant is subject to the exercise of jurisdiction of this court over the person and such Defendant." [Am. Cmplt. ¶ 6]. Further, Quill explains "based on the national reach of Defendants, and each of them, a substantial part of the events giving rise to the claims herein alleged occurred in this judicial district." [Am. Cmplt. ¶ 7]. These statements are made in compliance with Rule 8(a)(1) advising "of the grounds for the court's jurisdiction." FED. R. CIV. P. 8. Thus, the grounds for personal jurisdiction focus on "the events giving rise to the claims" which "occurred in [Oklahoma]." [*Id.*].

While these initial statements are, by design, conclusory, each is supported by subsequently alleged jurisdictional facts. Specifically, Quill alleges its "publications are sold internationally through Amazon and other online vendors, including Barnes and Noble, Apple iTunes, Rakuten-Kobo, Google Play, and ***Draft2Digital, a distributor whose principal address is in Oklahoma City, Oklahoma***." [Am. Cmplt. ¶ 8 (emphasis added)]. The Amended Complaint alleges "Blushing and Cain directed a 'take-down' notice to Draft2Digital and other vendors on or about April 19, 2018," demanding "Draft2Digital remove the MYTH OF OMEGA books from sale." [Am. Cmplt. ¶ 44; Coale Dec., Ex.1]. And, "[o]n May 16, 2018, Draft2Digital's representative advised Plaintiff that Draft2Ditigal and Barnes and Noble had removed the MYTH OF OMEGA Series from sale because of the 'take-down' notices." [Am. Cmplt. ¶ 48; *Id.*]. In response, Quill's counsel "promptly delivered counter-notices under Section 512(g) of the Copyright Act" to Draft2Digital, Quill's *Oklahoma* distributor, and other vendors. Quill additionally alleges Defendants'

3

communication with Draft2Digital "damaged Plaintiff's reputation" and were "part of concerted efforts to monopolize the market" and "stifle competition" [Am. Cmplt. ¶¶ 56, 60, 71]. Thus, Defendants' communication to Draft2Digital and others "resulted in financial losses, including, but not limited to, pre-release and ordinary book sales in the United States and internationally." [Am. Cmplt. ¶ 56].

Of considerable distinction is Quill's relationship with Draft2Digital. Quill and Draft2Digital are parties to a binding contract involving Draft2Digital's distribution program. [Coale Dec., Ex. 1]. Draft2Digital is compensated through commissions on all sales completed by it or through multiple online bookstores which sell Quill's books. Quill receives the full amount paid to Draft2Digital less their royalty commission. This contract is governed under the laws of Oklahoma. Therein, Quill is also bound by jurisdiction and venue provisions making the federal and state courts located in Oklahoma County, Oklahoma, exclusive with respect to any claims, suits, or proceedings arising out of or in connection with the agreement or the contemplated transactions.

Accordingly, Blushing and Cain's ***direct*** communications with Draft2Digital, ***in Oklahoma City, Oklahoma***, wherein they "knowingly and materially misrepresented to Draft2Digital" that the "MYTH OF OMEGA series infringes upon Cain's copyright" and caused Draft2Digital to remove Quill's publications from its distribution program constitute sufficient "minimum contacts" between Defendants and Oklahoma to support specific jurisdiction in this forum. [Am. Cmplt. Ex. 3].

Moreover, venue is proper as Quill is statutorily entitled to bring its civil action in "a judicial district in which a substantial part of the events or omissions giving rise to the

claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C.S. § 1391(b)(2). The substantial events giving rise to Quill's claim occurred when Draft2Digital received Defendants' notice in Oklahoma City, Oklahoma, and removed Quill's publications from its distribution program. Having intentionally interfered with an Oklahoma property right (Quill's contract with Draft2Digital) Defendants should not be heard to complain of having to defend against consequences of its actions in Oklahoma. *Nat'l Occupational Health Servs., Inc. v. Advanced Indus. Care*, 50 F. Supp. 2d 1111, 1117 (N.D. Okla. 1998) ("A party that tortiously interferes with the contract of another is subject to personal jurisdiction in the state in which the property rights under that contract exist."). Oklahoma has an interest in the contract between Quill and Draft2Digital. Thus, Quill's contract with Draft2Digital represents an Oklahoma property right in which Defendants' targeted and intentionally interfered with to cutoff distribution of Quill's publications. *See Overbeck v. Quaker Life Ins. Co.*, 1984 OK CIV APP 44,¶ 4, 757 P.2d 846, 847-48 ("[I]nterference with a contractual relationship results in loss of a property right.").

Cain's motion to dismiss should be denied. With respect to the apparently false affidavit attached to Cain's motion, Blushing admits "[it] and Soto filed the DMCA notices," which includes their communication with Draft2Digital in Oklahoma. [Resp. at ¶ 38]. Her denial of having any contacts directed to Oklahoma is belied by the email from Draft2Digital's Director of Operations stating: "We've been contacted by the author Addison Cain regarding an infringement on her titles." [Am. Cmplt. Ex. 3]. Cain's declaration of no contacts is simply false and should be disregarded.

Blushing's motion to dismiss should be stricken from its pleading as untimely and, notwithstanding, is without merit and wholly unsupported by any affidavit or other evidence sufficient to overcome Quill's prima facie showing of personal jurisdiction.

## STANDARDS

## I.    GENERAL PRINCIPLES RELATING TO PERSONAL JURISDICTION

### A.    Burden of Establishing Personal Jurisdiction

The plaintiff bears the burden of establishing personal jurisdiction, but where, as here, the issue is raised early on in litigation, based on pleadings (with attachments) and affidavits, that burden can be met by a prima facie showing. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1069-70 (10th Cir. 2008). "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." *Id.* **Such as here.** If the parties present conflicting affidavits, all factual disputes must be resolved in plaintiff's favor, and "the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Id.* However, only the well pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true. *Ten Mile Indus. Park v. Western Plains Serv. Corp.*, 810 F.2d 1518, 1524 (10th Cir. 1987); *Mitchell v. King*, 537 F.2d 385, 386 (10th Cir. 1976).

### B.    The Exercise of General Jurisdiction

Where, as in Oklahoma, the state long arm statute supports personal jurisdiction to the full extent constitutionally permitted, due process principles govern the inquiry. *Intercon*, 205 F.3d at 1247. "[T]o exercise jurisdiction in harmony with due process, defendants must have 'minimum contacts' with the forum state, such that having to defend

a lawsuit there would not 'offend traditional notions of fair play and substantial justice.'"

*Dudnikov*, 514 F.3d at 1070 (*quoting Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)). Such contacts may give rise to personal jurisdiction over a non-resident defendant either generally, for any lawsuit, or specifically, solely for lawsuits arising out of particular forum-related activities:

> General jurisdiction is based on an out-of-state defendant's "continuous and systematic" contacts with the forum state, and does not require that the claim be related to those contacts.

*Id.* at 1078 (citation omitted).

## C.    Establishing Specific Jurisdiction

Specific jurisdiction, on the other hand, is premised on something of a quid pro quo: in exchange for "benefitting" from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts. *Id*. Thus, in contrast to the single, overarching requirement of continuous and systematic contacts for general jurisdiction, the "minimum contacts" test for specific jurisdiction encompasses two distinct requirements: "first, that the out-of-state defendant must have 'purposefully directed' its activities at residents of the forum state, and second, that the plaintiff's injuries must 'arise out of' defendant's forum-related activities." *Id.* at 1071 (*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)). In *Dudnikov*, the Tenth Circuit delineated three salient factors that together indicate "purposeful direction":

> (a) an intentional action (writing, editing, and publishing the article), that was (b) expressly aimed at the forum state (the article was about a California resident and her activities in California; likewise it was drawn from

7

California sources and widely distributed in that state), with (c) knowledge that the brunt of the injury would be felt in the forum state (defendants knew Ms. Jones was in California and that her career revolved around the entertainment industry there).

*Dudnikov*, 514 F.3d at 1072.

The second prong of the minimum contacts analysis requires consideration of whether the alleged injuries arise out of Defendants' contacts with Oklahoma. *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011). Courts are split on the causal standard to apply to this requirement, and the Tenth Circuit has not addressed which approach it endorses. *Silver v. Brown*, 382 F. App'x 723, 731 (10th Cir. 2010) (citing *Dudnikov*, 514 F.3d at 1078). The two approaches considered by the Tenth Circuit are (1) "but-for" causation and (2) proximate cause. *Dudnikov*, 514 F.3d at 1078.

Finally, even if the "purposeful direction" and "arising out of" conditions for specific jurisdiction are met, that is not the end of the matter. "[W]e must still inquire whether the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice." *Id.* at 1080 (quotation omitted). But at that point, "it is incumbent on defendants to present a *compelling* case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* (emphasis added).

## D.      Personal Jurisdiction in the Internet Context

The question of general jurisdiction here is potentially more complicated when Blushing's website's commercial activities are considered. These do not affect the analysis of specific jurisdiction, since only the contacts out of which Quill's claims arise are relevant in that respect. As the Fifth Circuit explained in analogous circumstances:

> For specific jurisdiction we look only to the contact out of which the cause of action arises—in this case the maintenance of the internet bulletin board. Since this defamation action does not arise out of the solicitation of [business] . . ., those [commercial] portions of the website need not be considered.

*Revell v. Lidov*, 317 F.3d 467, 472 (5th Cir. 2002). But, the case for general jurisdiction, which is based on all of a defendant's contacts with the forum state, can sweep much broader to include the sales side of the site.

It should be emphasized that, as we are dealing with general jurisdiction, the commercial contacts here must be of a sort "that approximate physical presence" in the state—and "engaging in commerce with residents of the forum state is not in and of itself the kind of activity that approximates physical presence within the state's borders." *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000); *see Revell*, 317 F.3d at 471 & n.19; *Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir. 2002). **Nevertheless, most courts would agree that operating a website selling products to residents of a state can subject the seller to general jurisdiction in that state, depending on the nature and degree of commercial activity with the forum state**. *See, e.g., Lakin v. Prudential Sec, Inc.*, 348 F.3d 704, 712-13 (8th Cir. 2003) (noting determination of general jurisdiction over commercial web site would require development of facts regarding quantity of transactions with forum residents) (emphasis added); *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 513, 352 U.S. App. D.C. 229 (D.C. Cir. 2002) (same).

The best general formulation for this niche of the law may have been provided by the district court in Oklahoma: "A website will subject a defendant to general personal

jurisdiction only when the defendant has actually and deliberately used its website to conduct commercial transactions on a sustained basis with a substantial number of residents of the forum." *Smith v. Basin Park Hotel, Inc.*, 178 F. Supp. 2d 1225, 1235 (N.D. Okla. 2001) (emphasis added).

<u>**ARGUMENT AND AUTHORITIES**</u>

I.   **BLUSHING'S "RESPONSE TO COMPLAINT" VIOLATES RULE (12)(B) OF THE FEDERAL RULES OF CIVIL PROCEDURE, IS UNTIMELY, AND SHOULD BE STRICKEN.**

Quill filed its Amended Complaint on October 17, 2018. On November 26, 2018, having obtained an extension of time to answer or otherwise respond, Blushing filed a pleading entitled "Defendant's Response to Complaint"—an answer that includes a paragraph seeking a dismissal. [Resp. at ⁋ 4]. Rule 12(b)(6) requires a motion to dismiss to "be made before pleading." FED. R. CIV. P. 12(B). Blushing begins its pleading by answering Quill's Amended Complaint with both a general denial of wrongdoing and then proceeds with a denial of each paragraph of the Amended Complaint. [Resp. at ⁋⁋ 1-3, 5-52]. Blushing includes in its pleading a request for dismissal on the grounds of personal jurisdiction and venue. [Resp. at ⁋ 4]. Blushing continues answering each paragraph of Quill's Amended Complaint and includes sporadic arguments for dismissal in the context of several paragraphs. Blushing's response has, therefore, conflated practice under Rule 7(a)(6) and Rule 12(b)(6). *See BAC Home Loans Servicing LP v. Fall Oaks Farm LLC*, 848 F. Supp. 2d 818, 822 (S.D. Ohio 2012). Such is improper as "Rule 12(b) permits only *sequential*, not *concurrent*, filing of a motion to dismiss and an answer." *Id.*

This Court should align itself with those other courts that avoid unguided acceptance of technical deviations by strictly honoring the language and structure of the federal rules. *See, e.g., Hand v. Houk*, No. 2:07-cv-846, 2008 WL 5378358, at *2 (S.D. Ohio Dec. 23, 2008) (denying Rule 12(b) motion to dismiss because "[t]he Rule does not envision that a motion to dismiss will be combined with an answer'); *BAC Home Loans Servicing LP*, 848 F. Supp. 2d at 822-23 (denying a motion-to-dismiss component of defendant's answer as untimely and explaining that "[t]his strict approach presents no substantive prejudice . . . because [defendant] can simply make its arguments post-answer through another mechanism that complies with the Civil Rules."). This strict approach presents no substantive prejudice here because Blushing can simply make its arguments post-answer through another mechanism that complies with the federal rules.[2]

Accordingly, Blushing's pleading should be deemed an answer that includes affirmative defenses relating to personal jurisdiction and venue. [Resp. at ℙ 55]. Paragraph 4 of the Blushing's pleading purporting to advance a motion to dismiss should be denied as untimely and stricken from the Response. [Resp. at ℙ 4].

---

[2] While some courts have construed a concurrent motion to dismiss and answer, *separately filed*, as motion for judgment on the pleadings under Rule 12(c), Blushing's response does not fit within this exception as it blends the two into one document. *See, e.g.*, *Metro. Prop. & Cas. Ins. Co. v. Pest Doctor Sys., Inc.*, No. 3:14-cv-143-WHR, 2014 U.S. Dist. LEXIS 86647, 2014 WL 2855003, at *1 (S.D. Ohio June 23, 2014); *Ruppe v. Knox Cty. Bd. of Educ.*, 993 F. Supp. 2d 807, 809-10 (E.D. Tenn. 2014); *Doe v. Sentech Emp't Servs., Inc.*, 186 F. Supp. 3d 732, 736 (E.D. Mich. 2016); *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 n.1 (6th Cir. 1988).

## II.   JURISDICTION IS PROPERLY ESTABLISHED IN THIS JUDICIAL DISTRICT.

### A.   Quill has Adequately Pled Facts Demonstrating Personal Jurisdiction over Blushing and Cain.

Quill's Amended Complaint alleges Defendants Blushing and Cain "directed a 'take-down' notice to Draft2Digital and other vendors on or about April 19, 2018" and "demanded Draft2Digital remove the MYTH OF OMEGA books from sale." [Am. Cmplt. ¶ 44]. Quill also alleged Draft2Digital's "principal address is in Oklahoma City, Oklahoma." [Am. Cmplt. ¶ 8]. Further, Quill alleges the "MYTH OF OMEGA series was released through Draft2Digital [and others]." [Am. Cmplt. ¶ 43]. And, "[o]n May 16, 2018, Draft2Digital's representatives advised Plaintiff that Draft2Digital and Barnes and Noble had removed the Myth of Omega series from sale because of the 'take-down' notices." [Am. Cmplt. ¶ 48]. Quill additionally alleged "Blushing and Cain's 'take-down' notices violated the Copyright Act, damaged Plaintiff's reputation and resulted in financial losses, including, but not limited to, pre-release and ordinary book sales in the United States and internationally." [Am. Cmplt. ¶ 56].

Blushing admits the DMCA notices in this lawsuit were sent by Blushing and Cain to Draft2Digital, which is located in Oklahoma City, Oklahoma. [Resp. at ⁋ 38 ("ABCD Graphics/Blushing and Soto filed the DMCA notices.")].

### B.   Specific Jurisdiction over Defendants Exists in the Western District of Oklahoma by Virtue of the Digital Millennium Copyright Act Take Down Notice.

The primary basis for Quill asserting jurisdiction over Defendants arises from §512(f) of the DMCA. When a party sends a DMCA notice to a certain jurisdiction

("Receiving Jurisdiction"), that party avails itself of the jurisdiction of that court. This availment operates not as a matter of the DMCA, but rather an operation of federal due process requirements—more specifically, the standard discussed in *Dudnikov*. "The Supreme Court has held that, to exercise jurisdiction in harmony with due process, defendants must have minimum contacts with the forum state, such that having to defend a lawsuit there would not offend traditional notions of fair play and substantial justice." *Dudnikov*, 514 F.3d at 1070 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). With regard to the minimum contacts standard, there are two requirements that must be met to establish subject matter jurisdiction: "first, that the out-of-state defendant must have purposefully directed its activities at residents of the forum state, and second, that the plaintiff's injuries must arise out of defendant's forum-related activities." *Id.* at 1071 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). In addition to the two aforementioned requirements, "exercising personal jurisdiction over defendants must always be consistent with traditional notions of fair play and substantial justice.". *Id; see also Burger King Corp.,* 471 U.S. at 475 ("This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts").

The act of sending a DMCA notice is sufficient under federal due process to confer specific jurisdiction in the Receiving Jurisdiction over the party sending the same under the standard articulated in *Dudnikov*. In *Automattic Inc. v. Steiner*, 82 F. Supp. 3d 1011 (N.D. Calif. 2014), we find a series of facts that share similarities with the present action. *Automattic* was a suit involving a California corporation, a student journalist based in

London, and a press officer working for Straight Pride UK. Automattic, "a corporation based in San Francisco…operates WordPress." *Automattic,* 82 F. Supp. 3d at 1017. WordPress is "a web-publishing platform." *Id*. Oliver Hotham, the student journalist, "maintains a blog on WordPress." *Id*. For a piece he published on WordPress, Hotham used quotes from a press statement he requested and obtained from Nick Steiner – who identified himself as the "Press Officer" for Straight Pride UK. *Id*. When Hotham posted his article to WordPress using the quotes from Steiner, "[Steiner] [sent] an email to both Hotham and Automattic with the subject line: 'Digital Millennium Copyright Act – Removal Request.'" *Id*. at 1018. Automattic complied with the notice, and "disabled access to the material identified as infringing." *Id*. Following the takedown, Hotham allegedly posted more infringing content, which was met with more emails from Steiner pursuant to the DMCA. Automattic "expended time and resources in reviewing the takedown notices, disabling Hotham's posts, notifying Hotham of the takedown notices, handling requests for comment from press, and pursuing legal action." *Id*. at 1019.

The legal action instigated by both Automattic and Hotham against Steiner was based on the belief that the content of the notice was fraudulent. *Id*. at 1016 ("This action arises under subsection (f) of the Digital Millennium Copyright Act, 17 U.S.C. § 512 ('DMCA'), which provides a cause of action against any person who 'knowingly materially misrepresents' that material or activity infringes a copyright to utilize the DMCA's takedown notice procedures"). The primary issue there was one of jurisdiction. In answering the question of whether specific jurisdiction attached to Hotham, a non-California resident, the Court held "Defendant's sending the takedown notice to

14

Automattic with the knowledge and purpose that it would induce Automattic to remove content from Wordpress 'individually targeted' Automattic and thus constituted conduct 'expressly aimed' at California." *Id*. at 1024. The court went on to state "Defendant's conduct with the purpose of forcing Automattic to act constituted 'individualized targeting' to satisfy 'express aiming' at the forum state to justify specific jurisdiction over the Defendant." *Id*.

Therefore, as in *Automattic,* the act of sending the DMCA notice to Draft2Digital, with the knowledge and purpose of causing Draft2Digital to act, Defendants subjected themselves to the jurisdiction of the District Court for the Western District of Oklahoma. In order to fully analyze this issue, the standard articulated in *Dudnikov* will be applied to the facts at issue.

> ### 1.    *Defendants have sufficient minimum contacts with the Western District of Oklahoma.*

In her Motion, Cain argues "Quill does not allege that Cain personally undertook any acts in Oklahoma that relate to its declaratory judgment or other claims." [Motion at 9]. **This is simply not true.** As alleged in paragraph 44 of the First Amended Complaint [Am. Cmplt. ⁋ 44], "Blushing and Cain directed a 'take down' notice to Draft2Digital and other vendors on or about April 19, 2018." At the time of filing, Quill offered its Exhibit 3 in support of this allegation. Exhibit 3 of the First Amended Complaint [Am. Cmplt. Ex. 3] is an email from the Director of Operations for Draft2Digital regarding DMCA Take Down Notice. The email message relates "DMCA Take Down Notice sent on Title: Crave to Claim (Myth of Omega #3)", and stated, "We've been contacted by the author Addison

Cain regarding an infringement on her titles." [Am. Cmplt. Ex. 3]. Draft2Digital was contacted ***directly*** by Defendants regarding the DMCA take down notice. [*Id.*]. After the filing of the First Amended Complaint, more evidence of Defendants' contacts with this jurisdiction were brought to light that directly contradict the allegations in Defendants' Motion. Specifically, in Blushing's Response to Complaint, Blushing states in response to paragraph 86 of the First Amended Complaint "ABCD Graphics/Blushing and Soto filed the DMCA notices". [Resp. at ¶ 38]. By Blushing's own admission, Defendants were each involved in the transmission of the DMCA notice, either by transmitting it, directly contacting Draft2Digital, or acting in concert with each other to do the same. Therefore, Defendants purposefully directed their activities to the Western District of Oklahoma.

In the First Amended Complaint, at the very least, the injury sustained in Counts I through IX are all directly related to Defendants' actions in the Western District of Oklahoma. The basis for the vast majority of Quill's allegations hinge on the fact that Blushing and Cain unlawfully sent a DMCA takedown notice to Draft2Digital, an Oklahoma City distributor, among other vendors, based on false information and a misrepresented copyright. As was discussed, *supra*, Draft2Digial was contacted *directly* by Defendants regarding the DMCA take down notice. The injury sustained as a result of Defendants' misuse of a copyright arises out of Defendants' activities in the Western District of Oklahoma. Therefore, Quill's injuries arose out of Defendants' forum-related activities.

### 2.   *Exercising specific jurisdiction over the Defendants would be consistent with traditional notions of fair play and substantial justice.*

Satisfaction of *Dudnikov's* two-prong test alone is insufficient to establish specific jurisdiction over Defendants. To fully comply with due process requirements of the United States and the State of Oklahoma's Constitutions, it must be established that exercising jurisdiction over Defendants is consistent with traditional notions of fair play and substantial justice. *See Burger King Corp*, 471 U.S. at 476 ("Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'") (citations omitted). When analyzing the effect of jurisdiction on the these traditional notions, the Tenth Circuit considers the following factors: "(1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies." *OMI Holdings v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1095 (10th Cir. 1998) (citations omitted). Moreover, "[t]he strength of these factors sometimes served to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Id.* Each of these issues will be discussed in turn.

With regard to the first consideration, the burden on Defendants is minimal. Although Cain bemoans that she was "forced to hire Oklahoma counsel so she can litigate

1,200 miles away from her home in Virginia" [Motion at 11], the situation is not quite as dramatic as suggested. As was established, *supra*, Defendants have sufficient minimum contacts with the Western District of Oklahoma. Defendants cannot, and should not, be allowed to purposefully direct their actions to a forum to the detriment of Quill, and then cry "burdensome" when they are forced to be held accountable by Quill for injuries sustained as a result of those actions.

With regard to the second consideration, Oklahoma has a significant interest in resolving the dispute. As a state, Oklahoma has an undeniable interest in discouraging injuries that occur within the state. *See Beverly Hills Fan Co. v. Royal Sovereign Corp*., 21 F.3d 1558, 1568 (Fed. Cir. 1994). Not only do we have an instance where a party was harmed *in Oklahoma*, but Oklahoma also has an underlying commercial interest. The injury sustained by Quill in Oklahoma was directly connected to Quill's contract with a small, independently owned Oklahoma publishing company. If Defendants are allowed to sidestep jurisdiction, this could have an undeniably adverse effect on the business and reputation of Oklahoma distributors. Therefore, not only are traditional notions of fair play and substantial justice not offended by asserting jurisdiction over Defendants, but those notions are *served* and *furthered* by such an assertion.

With regard to the third consideration, Quill can obtain convenient and effective relief in Oklahoma. The Western District of Oklahoma is equipped to litigate these matters.

With regard to the fourth consideration, Oklahoma is the most convenient place to litigate the dispute. In assessing this consideration, a court may consider "the location of witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law

18

governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation. *OMI Holdings*, 149 F.3d at 1097 (citations omitted). In this case, regardless of the forum, the parties will be required to travel. The non-party witnesses are primarily located in Oklahoma. However, the fact that a substantial portion of the underlying issues in this lawsuit occurred in the forum as it relates to the DMCA notice, actions taken by Draft2Digital, and the location of many of the relevant witnesses to Quill's claims live in forum, it is clear that the most convenient place to litigate would be in the Western District of Oklahoma.

With regard to the fifth and final consideration, the interest of the several states in furthering fundamental substantive social policies is best served by litigating this matter in the Western District of Oklahoma. As discussed, *supra*, Oklahoma has a substantial interest in seeing that those wronged within its borders receive fair treatment. Moreover, there is nothing in Defendants' briefs that would indicate exercising specific jurisdiction over them would affect the "substantive social policy interests of any other state or foreign nation." *Red Oaks West, Inc. v. Specialty Trucks & Equip., Inc*., 2015 U.S. Dist. LEXIS 96320, *20 (Dist. Utah 2015) (quoting *OMI Holdings,* 149 F.3d at 1097).

Therefore, as Defendants have minimum contacts with the Western District of Oklahoma, the exercise of jurisdiction over Defendants would not run afoul of traditional notions of fair play and substantial justice, specific jurisdiction exists in this forum.

C.   **Specific Jurisdiction over Defendants Exists in the Western District of Oklahoma by Virtue of Defendants' Tortious Interference with Quill's Contract with Draft2Digital.**

Notwithstanding the specific jurisdiction conferred upon Defendants through the DMCA take down notice, the Western District of Oklahoma also has jurisdiction over the Defendants by virtue of the allegations contained in Counts IV and V, relating to Defendants' malicious interference with Plaintiff's contract with Draft2Digital. For purposes of jurisdiction, "[a] party that tortiously interferes with the contract of another is subject to personal jurisdiction in the state in which the property rights under that contract exist." *Nat'l Occupational Health Servs., Inc.,* 50 F. Supp. 2d at 1117. The contract between Quill and Draft2Digital represents a property right. *See Overbeck*, 1984 OK CIV APP 44, ¶ 4 ("[I]nterference with a contractual relationship results in a loss of a property right."). The contract between Quill and Draft2Digital is an Oklahoma contract, and therefore, Oklahoma has an interest in that contract. *See Nat'l Occupational Health Servs., Inc.,* 50 F. Supp. 2d at 1117 (N.D. Okla. 1998) ("[T]he Court finds that Oklahoma has an interest in the Contract between NOHS and MOST. Plaintiff's principal place of business was in Oklahoma, tests were either performed in Oklahoma or tests results were transmitted to MOST through Oklahoma, and invoices for services performed by Plaintiff were sent from Oklahoma."). Not only do the services rendered by Draft2Digital as a distributor flow through Oklahoma, but the contracts between Draft2Digital and their authors all contain the following language:

> "THIS AGREEMENT WILL BE GOVERNED BY THE LAWS OF THE STATE OF OKLAHOMA, WITHOUT REFERENCE TO RULES GOVERNING CHOICE OF LAWS. YOU HEREBY IRREVOCABLY

CONSENT TO AND WAIVE ANY OBJECTION TO THE EXCLUSIVE JURISDICTION AND VENUE OF THE FEDERAL AND STATE COURTS LOCATED AT OKLAHOMA COUNTY, OKLAHOMA WITH RESPECT TO ANY CLAIMS, SUITS OR PROCEEDINGS ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY."

Draft2Digital Terms of Service, § 17(e) (https://www.draft2digital.com/terms-of-service/). Therefore, as Defendants tortuously interfered with the property right granted to Quill through their contract with Draft2Digital, Defendants are subject to the jurisdiction of the Western District of Oklahoma.

**D.   General Jurisdiction Could Additionally Be Supported Against Blushing.**

Quill alleged in its Amended Complaint that Blushing is a corporation organized under the State of Virginia with its principal place of business in Charlottesville, Virginia. [Am. Cmplt. ¶ 10]. However, the court in *Daimler* clarifies jurisdiction is not exclusively limited to a corporation's place of incorporation and its principal place of business, but indicated that the standard for general jurisdiction over a corporation has been heightened, as "the inquiry under *Goodyear* is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so "continuous and systematic" as to render [it] essentially at home in the forum State.'" *Daimler AG v. Bauman,* 571 U.S. 117, 138, 134 S. Ct. 746, 761 (2014), citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, 2851 (2011). Moreover, Quill has alleged that Blushing's actions with respect to the DMCA notice served on Draft2Digital in Oklahoma was part of an effort to

"stifle competition" and thereby benefit Blushing and Cain's online sales in Oklahoma and elsewhere. [Am. Cmplt. ¶ 71].

Blushing's response fails to demonstrate it is not engaging in "continuous and systematic" business in Oklahoma. Instead, Blushing falsely claims its ties to Oklahoma are "non-existent" and then admits engaging in commercial transactions with Oklahoma residents through its website. Since Blushing claims it is the "oldest eBook publishers on the web" having sold eBooks since 2001, its attempt to limit its business in Oklahoma to the sales here only since January 2018 appears misleading and untrustworthy. Upon proper examination, evidence may be available to demonstrate Blushing has engaged in "continuous and systematic" business in the Oklahoma for many years thereby providing for a determination of general jurisdiction. Blushing fails to provide anything whatsoever to controvert Quill's allegations or to substantiate its claims. Thus, while it is doubtful Blushing's online sales, based upon the unsubstantiated statement of its counsel, would be sufficient to garner general jurisdiction in Oklahoma, this issue should not be foreclosed at this stage without sufficient evidence being offered. Though, as demonstrated above, Blushing's admitted contacts with Draft2Digital are more than enough to support personal jurisdiction notwithstanding.

## III.   VENUE IS PROPER IN THE WESTERN DISTRICT OF OKLAHOMA.

In Defendant Cain's Motion, she relies on a specific portion of the United States Code in her venue analysis. Pursuant to federal law, "[c]ivil actions, suits, or proceedings arising under any Act of Congress relating to copyrights or exclusive rights in mask works or designs may be instituted in the district in which the defendant or his agent resides or

*may be found.*" 28 U.S.C.S. § 1400 (emphasis added). For purposes of establishing venue, it is important to note the interaction between specific jurisdiction and venue, and to more fully analyze the application of the "may be found" language in the United States Code. For purposes of establishing proper venue, and as correctly identified by Defendant, "courts that have had occasion to determine the meaning of 'may be found' in this provision have held that a defendant is 'found' in any district in which personal jurisdiction may be obtained over him'" [Motion at 12]. This Court should follow this interpretation. In light of the fact that the Western District of Oklahoma can assert specific jurisdiction over Defendants, it is without question that venue is proper in this case. *See Southern v. All Points Delivery Sys.*, 2006 U.S. Dist. LEXIS 19512, *18 (N.D. Okla. 2006) ("28 U.S.C. § 1400(a) permits copyright infringement suits to be instituted in any district where the defendant resides or may be found, and a defendant may be found anywhere he is subject to personal jurisdiction") (citations omitted); *Chalfant v. Tubb*, 453 F. Supp. 2d 1308, 1316 (N.D. Okla. 2006) ("Defendants argue that he is a resident of Texas, and that venue in the Northern District of Oklahoma is improper. Under section 1400(a), a defendant may be found in any judicial district where he is subject to personal jurisdiction. The Court has already determined that it has personal jurisdiction over defendants. Therefore, venue is proper in this Court.") (citations omitted); *Thomas Jackson Publ'g, Inc. v. Buckner*, 625 F. Supp. 1044, 1046, (D. Neb. 1985) ("[V]enue is proper in any district in which the court has personal jurisdiction over a non-resident defendant pursuant to a state's long-arm statute.") (citations omitted); *Donner v. Tams-Witmark Music Library, Inc.*, 480 F. Supp. 1229, 1234 (E.D. Penn. 1979) ("The federal copyright venue statute provides that suit may be brought

in any district in which the defendant "may be found." 28 U.S.C.S. § 1400(a). Decisions interpreting this phrase hold that a defendant "may be found" wherever he is amenable to personal jurisdiction.") (citations omitted); *Droke House Publrs., Inc. v. Aladdin Distrib. Corp.*, 352 F. Supp. 1062, 1065 (N.D. Ga. 1972) ("state long arm statutes may be used to establish service of process, venue and *in personam* jurisdiction in copyright infringement cases and the jurisdictional and venue standards found in 28 U.S.C. § 1400(a) should be applied liberally") (citations omitted).

Moreover, venue is proper as Quill is statutorily entitled to bring its civil action in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C.S. § 1391(b)(2).

Further, it is important to note that the analysis provided by the court in *National Occupational Health Servs., Inc.,* where the Northern District of Oklahoma determined that venue was improper does not apply in this case. In *National Occupational Health Servs.*, the court determined that "[s]ince neither a substantial part of the events or omissions giving rise to the claim occurred in Oklahoma, nor a substantial part of the property that is subject to the action is situated in Oklahoma, this action may not be brought in Oklahoma." *Nat'l Occupational Health Servs.*, 50 F. Supp. 2d at 1119. In the present case, venue is proper because both a substantial part of the events or omissions giving rise to the claim occurred in Oklahoma for the reasons discussed, *supra*, and a substantial part of the property that is subject to the action is situated in Oklahoma by virtue of the contract with Draft2Digital.  Therefore, this forum is the appropriate venue for the present action.

## CONCLUSION

WHEREFORE, for the reasons stated herein, Plaintiff, Quill Ink Books Limited prays that this Court deny the *Motion to Dismiss Plaintiff's First Amended Complaint for Lack of Personal Jurisdiction and Improper Venue, or, in the Alternative, Transfer* [Motion, Dkt. No. 18] filed by Defendant Rachelle Soto a/k/a Addison Cain. Defendant ABCD Graphics and Design, Inc., d/b/a Blushing Books' pleading [Resp., Dkt. No. 19] should be deemed an answer that includes affirmative defenses relating to personal jurisdiction and venue. Paragraph 4 of Blushing's pleading purporting to advance a motion to dismiss should be denied as untimely and stricken from the Response. [Resp. at ¶ 4]. Quill requests such other relief as the Court deems just and equitable.

Respectfully submitted,

s/ Gideon A. Lincecum
Gideon A. Lincecum, OBA No. 19674
Dylan D. Erwin, OBA No. 31987
HOLLADAY & CHILTON, PLLC
204 North Robinson, Suite 1550
Oklahoma City, OK 73102
Telephone:  (405) 236-2343
Facsimile:   (405) 236-2349
Email:  glincecum@holladaychilton.com
            derwin@holladaychilton.com

**ATTORNEYS FOR PLAINTIFF
QUILL INK BOOKS LIMITED**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 17th day of December, 2018, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

**Rebecca L Briggs**
beckybriggslaw@gmail.com

**Shawn M Dellegar**
shawn.dellegar@crowedunlevy.com,carol.welch@crowedunlevy.com,ECFT@crowedunlevy.com,tammy.shaddox@crowedunlevy.com

**Deric J McClellan**
deric.mcclellan@crowedunlevy.com,pat.george@crowedunlevy.com,ecft@crowedunlevy.com

**Gideon A Lincecum**
glincecum@holladaychilton.com,cburgess@holladaychilton.com,ECF_Service@holladaychilton.com

**Dylan D Erwin**
derwin@hollladaychilton.com,lspencer@holladaychilton.com,ecf_service@holladaychilton.com

s/ Gideon A. Lincecum