# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| QUILL INK BOOKS LIMITED, a foreign corporation, <br>     Plaintiff, <br><br> v. <br> (1) ABCD GRAPHICS AND DESIGN, INC., D/B/A BLUSHING BOOKS PUBLISHING, a foreign corporation <br> (2) RACHELLE SOTO a/k/a ADDISON CAIN, an individual, and <br> (3) JOHN and JANE DOE, unknown individuals and online participants, <br>     Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 5:18-cv-00920-G |

## REPLY IN SUPPORT OF DEFENDANT RACHELLE SOTO'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE, OR, IN THE ALTERNATIVE, TRANSFER

In this case, Plaintiff, Quill Ink Books Limited ("Quill"), an English corporation, filed this lawsuit in Oklahoma against an individual who is a citizen of Virginia, based on the acts of a Virginia corporation. That individual, Rachelle Soto, is an author who uses the Virginia corporation, ABCD Graphics and Design Inc., D/B/A Blushing Books ("Blushing"), as a publisher for some of her books. The only contact from either Defendant that could conceivably support personal jurisdiction in Oklahoma is a Digital Millennium Copyright Act ("DMCA") takedown notice that was sent solely by Blushing to an Oklahoma company, Draft2Digital. Mrs. Soto did not send the takedown notice. Moreover, even if she did, Plaintiff did not provide this Court with any authority for the proposition that the sending of a single DMCA takedown notice to a state that is not the Plaintiff's forum state can support the exercise of personal jurisdiction in that state. Lastly, contrary to Plaintiff's belief, traditional notions of fair play and substantial

justice weigh against a finding of personal jurisdiction in Oklahoma. Accordingly, this Court should grant Mrs. Soto's Motion to Dismiss.

**I.  Mrs. Soto Did Not Send the DMCA Takedown Notice, and the Offhand Comment from a Draft2Digital Employee in an Unofficial, Interoffice Email Does Not Prove Otherwise**

Both parties agree that Plaintiff bears the burden of proving jurisdiction. *Rockwood Select Asset Fund XI (6)-1, LLC v. Devine, Millimet & Branch*, 750 F.3d 1178, 1179 (10th Cir. 2014). The most relevant inquiry in this case is whether Plaintiff has proven that Mrs. Soto "purposefully directed [her] activities at residents of the forum state." *Old Republic Ins. Co. v. Cont'l. Motors, Inc.*, 877 F.3d 895, 904 (10th Cir. 2017). Plaintiff believes that it has satisfied this burden by presenting one lone email, sent from the Office Manager of Blushing to Draft2Digital, which claims that the company had "been contacted by the author Addison Cain regarding an infringement on her titles." *See* Doc. No. #6-3. This cursory comment in the forwarded email was immediately contradicted by the sender when she attached the DMCA takedown notice that was sent by Blushing's Office Manager. Mrs. Soto has never had any direct communication with Draft2Digital and any indication to the contrary stated in the forwarded email where the employee of Draft2Digital appears to have mistakenly equated the publisher with the author should not be used as credible evidence to establish personal jurisdiction.

"Each defendant's contacts with the forum State must be assessed individually." *Calder v. Jones*, 465 U.S. 783, 790 (1984) (citing *Rush v. Savchuk*, 444 U.S. 320, 322 (1980)). And the DMCA takedown notice that was sent by Blushing's Office Manager should not be used as an example of purposeful direction on the part of Mrs. Soto.

## II. The Only Case on Which Plaintiff Relies is Distinguishable from this Case

Plaintiff cites *Automattic Inc. v. Steiner*, 82 F. Supp. 3d 1011 (N.D. Cali. 2015), and claims that the facts there and the facts here are so analogous that the court's reasoning is instructive. But that is not so. In *Automattic*, a student journalist named Oliver Hotham requested a press statement from Straight Pride UK. *Id*. at 1017. The defendant, Nick Steiner, who identified himself as the group's press officer, responded to Hotham's request. *Id*. Hotham then posted an article on his blog that discussed the information he received from Steiner and further discussed his impressions of the group. *Id*. Hotham maintained his blog via Wordpress.com, which was a web-publishing platform operated by the defendant, Automattic, a California corporation. *Id*.

After Hotham posted his article, Steiner sent "an email to both Hotham and Automattic with the subject line: 'Digital Millennium Copyright Act—Removal Request.'" *Id*. at 1018. Automattic complied, but after the initial takedown, Hotham posted more articles, and Steiner sent more DMCA takedowns. *Id*. Eventually, Automattic and Hotham sued Steiner pursuant to 17 U.S.C. § 512(f). *Id*. at 1019.

Quill attempts to draw parallels to *Automattic* because the court in *Automattic* eventually held that California had personal jurisdiction over the defendant because he sent a DMCA takedown notice to a California corporation, but the two sets of facts are very dissimilar. First, in *Automattic*, the individual defendant, Mr. Steiner, was actually the person who sent the DMCA takedown notice to the alleged infringer. *Id*. at 1018. But here, Mrs. Soto did not send any DMCA takedown notices into Oklahoma. Instead, as discussed above, her publisher sent the notice to Draft2Digital.

Second, in *Automattic*, the defendant directed the takedown notice to Automattic, which was a California corporation. This fact, that the defendant directed the notice to the plaintiff's

forum state, weighed heavily in the court's reasoning. It stated that the final element of the effects test, announced in *Calder v. Jones*, 465 U.S. 783 (1984), is only satisfied if the plaintiff can show that "a jurisdictionally sufficient amount of harm is suffered in the forum state." *Id*. at 1024 (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1210 (9th Cir. 2006)). Next, the *Automattic* court recited binding Ninth Circuit precedent from *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1114 (9th Cir. 2002), which all but settled the personal jurisdiction issue: "[W]hen a forum in which a plaintiff corporation has its principal place of business is in the same forum toward which defendants expressly aim their acts, the "effects" test permits that forum to exercise personal jurisdiction." *Id*. at 1024-25 (quoting *Dole Food*, 303 F.3d at 1114). This dispositive factor, injury in the plaintiff's forum state, is not present here, as Quill is a corporation organized under the laws of England with its principal place of business in England. Thus, not only does *Automattic* not support Quill's argument, it cuts against it, as the crux of the court's holding is based on a fact not present in this case.

### III. Exercising Personal Jurisdiction over Mrs. Soto Would Not Be Consistent with Traditional Notions of Fair Play and Substantial Justice

Contrary to Plaintiff's assertion, the exercise of jurisdiction over Defendants would run afoul of traditional notions of fair play and substantial justice. *See OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1095 (10th Cir. 1998) (citing *Asahi Metal Indus. Co., Ltd. v. Superior Court of California, Solano Cty.,* 480 U.S. 102, 113 (1987)).

Regarding the first factor, Plaintiff argues that Mrs. Soto "should not [] be allowed to purposefully direct [her] actions to a forum to the detriment of Quill, and then cry 'burdensome' when [she is] forced to be held accountable." Doc. No. 21, at 18. But this is not the purpose of the fair play factors. They are to be evaluated independently of the minimum contacts analysis. For instance, in *OMI Holdings*, 149 F.3d at 1096, the Tenth Circuit concluded that it was a

violation of due process for Kansas to exercise personal jurisdiction over a defendant, even though the court had just determined that the defendant had sufficient minimum contacts with the state, because the fair play factors weighed against doing so. In its reasoning, the *OMI* court noted the "significant" burden on the defendant in having to litigate in a state far away from home. The court stated that the defendant, an insurance company, "maintain[ed] no offices in Kansas, employ[ed] no agents in Kansas, and insure[d] no Kansas residents." *Id*. at 1096. The court concluded that the burden-on-the-defendant factor weighed heavily in the defendant's favor, even though it had already determined that the defendant had minimum contacts with the State of Kansas. *Id*. Similarly, even if this Court determines that Mrs. Soto has sufficient minimum contacts with the State of Oklahoma, it should evaluate the burden on her independently of that conclusion, and in doing so, find that the burden on her to travel back and forth between Oklahoma and Virginia in order to litigate this case would be significant.

Contrary to Quill's assertion, the second factor also weighs in favor of Mrs. Soto since no party to this lawsuit is a resident of Oklahoma. In *OMI*, the court weighed this factor in favor of the defendant because neither party to the suit was a resident of Kansas. *Id*. ("We have little trouble concluding that this factor weighs heavily in favor of Defendants. Neither Plaintiff nor Defendants are Kansas residents.").

The third factor, the plaintiff's interest in receiving convenient and effective relief, also weighs in favor of Mrs. Soto because there is no meaningful difference between this case being tried in Oklahoma versus Virginia because this case hinges on a claim under federal law—misrepresentation under 17 U.S.C. § 512(f). Thus, there is no competing state law that would be more favorable to Plaintiff in Oklahoma rather than Virginia. Moreover, Plaintiff is a foreign

corporation that will have to travel for this case regardless. In fact, a case in a federal court in Virginia would be a more convenient forum for Plaintiff, at least in terms of travel.

Further contrary to Plaintiff's contentions, the fourth factor, the interstate judicial system's interest in obtaining the most effective resolution of the controversies, weights in favor of dismissal based on the location of witnesses. *OMI*, 149 F.3d at 1097. As Mrs. Soto stated in her opening brief, two of the most important witnesses in this suit are Mrs. Soto and representatives of Blushing Books responsible for sending the takedown notice, all of whom are located in Virginia. Plaintiff does not even try to dispute this fact, but rather claims that "regardless of the forum, the parties will be required to travel." Doc. No. 21, at 19. But that is not true. Rather, Plaintiff, as an English corporation, will be required to travel regardless of the forum. Mrs. Soto and Blushing, however, would not have to travel if the case was transferred to Virginia.

Thus, contrary to Plaintiff's assertion, the fair play factors weigh heavily in favor of Mrs. Soto and against the exercise of personal jurisdiction in Oklahoma.

**IV.    Plaintiff's Tortious Interference Claim Does Not Provide it with a Separate Avenue for a Finding of Personal Jurisdiction in Oklahoma**

In its Response Brief, Plaintiff states, "Notwithstanding the specific jurisdiction conferred upon Defendants through the DMCA takedown notice, [this Court] also has jurisdiction over the Defendants by virtue of the allegations contained in Counts IV and V, relating to Defendants' malicious interference with Plaintiff's contract with Draft2Digital." Doc. No. 21, at 20. It is not really clear what Plaintiff's point is here. But if Plaintiff is arguing that something about the malicious interference claim changes the analysis of whether the DMCA takedown notice was purposefully directed at Oklahoma, Plaintiff is wrong. Regardless of the cause of action, the only incident in this case that could possibly support the exercise of personal jurisdiction by an

6

Oklahoma court is the sending of the DMCA takedown notice.  Thus, the Court should focus its analysis on that act and not the cause of action pleaded.

## CONCLUSION

Mrs. Soto did not send the take down notice.  And even if the Court imputes the actions of her publisher onto Mrs. Soto, sending a takedown notice to a third party that is not located in the plaintiff's forum state does not constitute the purposeful direction required to haul a foreign individual defendant into court.  And even if such an action did constitute purposeful direction, traditional notions of fair play and substantial justice weigh against doing so.  For these reasons, the Court should grant Mrs. Soto's Motion to Dismiss.

Respectfully submitted,

Date: December 26, 2018

s/Shawn M. Dellegar
Shawn M. Dellegar, OBA #20973
Deric McClellan, OBA #32827
CROWE & DUNLEVY, P.C.
500 Kennedy Building
321 South Boston Avenue
Tulsa, OK  74103-3313
(918) 592-9800
(918) 592-9801 (Facsimile)
shawn.dellegar@crowedunlevy.com
deric.mcclellan@crowedunlevy.com

And

Tynia Watson, OBA #30765
CROWE & DUNLEVY, P.C.
Braniff Building
324 North Robinson Avenue, Suite 100
Oklahoma City, OK 73102-8273
(405) 235-7700
(405) 239-6651 (Facsimile)
tynia.watson@crowedunlevy.com

**ATTORNEYS FOR DEFENDANT
RACHELLE SOTO, A/K/A ADDISON CAIN**

**CERTIFICATE OF SERVICE**

       I hereby certify that on this 26th day of December, 2018, I electronically transmitted the attached document to the Court Clerk using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants (names only are sufficient):

    Gideon A. Lincecum    glincecum@holladaychilton.com
    Dylan D. Erwin         derwin@holladaychilton.com
    Rebecca L. Briggs     beckybriggslaw@gmail.com

                                                */s/ Shawn M. Dellegar*
                                                Shawn M. Dellegar