UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| QUILL INK BOOKS LIMITED,<br>a foreign corporation,<br><br>    Plaintiff,<br><br>v.<br><br>ABCD GRAPHICS AND DESIGN,<br>INC., d/b/a BLUSHING BOOKS<br>PUBLISHING, a foreign corporation,<br>et al.,<br><br>    Defendants. | Case No. CIV-18-920-G |

## **ORDER**

Now before the Court is Defendant Rachelle Soto's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue, or in the alternative, to Transfer (Doc. No. 18). Plaintiff Quill Ink Books Limited has responded (Doc. No. 21), and Defendant Soto has replied (Doc. No. 24). Upon consideration of the parties' submissions, the Court grants the Motion.

FACTUAL BACKGROUND

Plaintiff is an international book publisher with its principal place of business in London, England. Plaintiff brings this action against: Rachelle Soto, an author who resides in Virginia; Defendant Soto's book publisher Blushing Books Publishing ("Blushing Books"), whose principal place of business is in Virginia; and unknown Jane Does and John Does. *See* Am. Compl. (Doc. No. 6) ¶¶ 8, 10-12. Between January and May 2018, Plaintiff published a three-book romance series titled *Myth of Omega*. Plaintiff released

the first two books of the series to online vendors of e-books and printed books, including Draft2Digital, Amazon, Barnes and Noble, iTunes Apple, Rakuten-Kobo, and Google Play. *Id.* ¶¶ 41, 43, 46. Plaintiff alleges that following this release, Defendants Soto[1] and Blushing Books submitted notifications of copyright infringement to these online vendors pursuant to the Digital Millennium Copyright Act ("DMCA"), *see* 17 U.S.C. § 512,[2] in which they claimed that the *Myth of Omega* series plagiarized Defendant Soto's former works and requested that the vendors cease their sale of the books. Plaintiff contends that Defendants' DMCA notices contained misrepresentations and "false copyright claims." Am. Compl. ¶¶ 73, 76. Plaintiff now seeks declaratory judgment, damages, and injunctive relief for copyright misuse, misrepresentation of copyright claims under the DMCA, negligence, tortious interference with economic advantage, tortious interference with contract or business relations, defamation, false light, and civil conspiracy. *See id.* ¶¶ 1, 66-112; *see also* 17 U.S.C. § 512(c), (f).

Defendant Soto has moved for dismissal under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3) for lack of personal jurisdiction and improper venue. Alternatively,

---

[1] Defendant Rachelle Soto writes under the professional pseudonym "Addison Cain." Am. Compl. ¶ 11.

[2] The DMCA provides that

> [a] service provider shall not be liable . . . for infringement of copyright . . . if the service provider—
>
> . . .
>
> > (C) upon notification of claimed infringement . . . , responds expeditiously to remove, or disable access to, the material that is claimed to be infringing or to be the subject of infringing activity.

17 U.S.C. § 512(c)(1)(C).

Defendant Soto requests transfer of this action pursuant to 28 U.S.C. § 1404(a). *See* Def. Soto Mot. (Doc. No. 18) at 1-18.

STANDARDS GOVERNING PERSONAL JURISDICTION

Where the Court's jurisdiction over a defendant is contested, the plaintiff bears the burden of proving that jurisdiction exists. *See Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995); *Benton v. Cameco Corp.*, 375 F.3d 1070, 1074 (10th Cir. 2004). In the preliminary stages of litigation, however, "the plaintiff's burden is light." *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1056 (10th Cir. 2008). When a district court considers a pretrial motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, "the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." *Id.* at 1057 (citing *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998)).

For purposes of the plaintiff's prima facie case, the allegations in the complaint are accepted as true but only to the extent they are uncontroverted by the defendant's affidavits. *Shrader v. Biddinger*, 633 F.3d 1235, 1248 (10th Cir. 2011). "If the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Wenz*, 55 F.3d at 1505 (internal quotation marks omitted).

When considering whether personal jurisdiction is proper in a federal question case, federal courts must determine "(1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." *Peay v. BellSouth Med. Assistance Plan*, 205

F.3d 1206, 1209 (10th Cir. 2000) (internal quotation marks omitted) (citing *Republic of Panama v. BCCI Holdings (Lux.) S.A.*, 119 F.3d 935, 942 (11th Cir. 1997)). Because "neither the federal Copyright Act, 17 U.S.C. § 101 *et seq.*, nor the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*, provides for nationwide service of process," *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008), the question of whether there is statutory authorization to serve a defendant in this matter is resolved by reference to Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure, which commands that the district court apply the law of the state in which the district court sits. *See id*. Oklahoma has enacted a "long-arm" statute that authorizes its courts to exercise jurisdiction to the maximum extent permitted by the federal Constitution. *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1416-17 (10th Cir. 1988); *see* Okla. Stat. tit. 12, § 2004(F). Accordingly, the Court's inquiry is reduced to a single question: whether the Court's exercise of jurisdiction over Defendant Soto is consistent with constitutional due process. *See Shrader*, 633 F.3d at 1239; *Intercon, Inc. v. Bell Atl. Internet Sols., Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000).

The due process standard requires "minimum contacts" between the defendant and the forum state and that the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980) (internal quotation marks omitted). The "minimum contacts" standard may be satisfied by showing either general or specific jurisdiction. *See OMI Holdings, Inc.*, 149 F.3d at 1090-91. In this case, the only basis of jurisdiction over Defendant Soto reasonably implicated by the factual allegations of Plaintiff's pleading and affidavit is

4

specific jurisdiction. *See* Pl.'s Resp. (Doc. No. 21) at 18-27; Coale Aff. (Pl.'s Resp. Ex. 1 (Doc. No. 21-1)) at 1-3.

Specific jurisdiction "requires, first, that the out-of-state defendant must have 'purposefully directed' its activities at residents of the forum state, and second, that the plaintiff's injuries must 'arise out of' defendant's forum-related activities." *Dudnikov*, 514 F.3d at 1071 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). The first element can take various forms. *Id.* In noncontract actions such as this, "'purposeful direction' has three elements: '(a) an intentional action . . . that was (b) expressly aimed at the forum state . . . with (c) knowledge that the brunt of the injury would be felt in the forum state.'" *Newsome v. Gallacher*, 722 F.3d 1257, 1264-65 (10th Cir. 2013) (omissions in original) (quoting *Dudnikov*, 514 F.3d at 1072).

ANALYSIS

Plaintiff proffers two arguments in support of this Court's exercise of jurisdiction over Defendant Soto. First, Plaintiff argues that Defendant Soto's submission of the DMCA notice to Draft2Digital, a distributor that has its principal address in Oklahoma, constituted a contact with Oklahoma sufficient to satisfy the requirements of specific personal jurisdiction. *See* Pl.'s Resp. at 21-25; Am. Compl. ¶¶ 8, 44. Second, Plaintiff submits that Defendant Soto's alleged tortious interference with Plaintiff's contract with Draft2Digital constitutes an independent basis for exercising specific personal jurisdiction over Defendant Soto. *See* Pl.'s Resp. at 26-27; Am. Compl. ¶¶ 87-91.

A.  *The DMCA Notice*

Plaintiff's first jurisdictional argument is based solely upon the allegation that "Blushing [Books] and [Soto] directed a 'take-down' notice to Draft2Digital . . . on or about April 19, 2018." Am. Compl. ¶ 44; Am. Compl. Ex. 3 (Doc. No. 6-3).  As an initial matter, the parties dispute whether Defendant Soto was personally involved in sending the DMCA notice to Draft2Digital.  In support of its allegation that Defendant Soto was involved, Plaintiff points to an email written by Draft2Digital's director of operations that states that Draft2Digital had "been contacted by the author Addison Cain [a/k/a Rachelle Soto] regarding an infringement on her titles." Am. Comp. Ex. 3, at 2.  Plaintiff further provides the affidavit testimony of Ms. Margarita Coale that "[Plaintiff] was advised by Draft2Digital that, on or about April 19, 2018, Blushing [Books] and [Soto] delivered a 'take-down' notice to Draft2Digital." Coale Aff. ¶ 4.

In her Motion and Reply, Defendant Soto disputes that she personally notified Draft2Digital of the alleged infringement, contending instead that the DMCA notice was sent by Blushing Books alone.  *See* Def. Soto Mot. at 9-10; Def. Soto Reply (Doc. No. 24) at 2.  As support for her assertion, Defendant Soto points out that the DMCA notice sent to Draft2Digital was signed solely by Blushing Books' office manager.  *See* Def. Soto Reply at 2; Am. Compl. Ex. 3, at 2, 6.  Defendant Soto also submitted an affidavit in which she testifies that she has no contacts with Oklahoma and does not personally conduct business in Oklahoma.  *See* Def. Soto Aff. (Def. Soto Mot. Ex. 1 (Doc. No. 18-1)) at 1-2.

While Defendant Soto's argument presents a factual dispute regarding whether Defendant Soto personally directed the DMCA notice to Draft2Digital, the Court is

6

constrained to resolve factual disputes in Plaintiff's favor for purposes of determining personal jurisdiction. *See Fed. Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992); *ATS Sports Sci.*, 514 F.3d at 1057. As such, the Court accepts as true that Defendant Soto personally participated in directing the DMCA notice to Draft2Digital, as alleged by Plaintiff in its pleading.

The resulting question is whether the single DMCA notice sent by Plaintiff to nonparty Draft2Digital is sufficient to satisfy the "purposeful direction" requirement of the jurisdictional analysis. In *Calder v. Jones*, 465 U.S. 783 (1984), the Tenth Circuit considered personal jurisdiction in the context of a libel action brought against Florida residents arising from an article published in the *National Enquirer* about a California resident. *See id.* at 785. The Supreme Court found personal jurisdiction existed in California over the individual defendants, reasoning that the individuals' Florida conduct—i.e., writing and editing the article—was aimed at California, where the subject of the article lived, worked, and suffered harm. *See id.* at 789-90.

From *Calder*, the Tenth Circuit distilled the three factors outlined above as the necessary elements of purposeful direction in tort-based actions: "(a) an intentional action" "(b) expressly aimed at the forum state" "with (c) knowledge that the brunt of the injury would be felt in the forum state." *Dudnikov*, 514 F.3d at 1072. In *Dudnikov*, the plaintiffs sold products from their home in Colorado via eBay auctions. After the defendants successfully suspended one plaintiff's eBay auctions by contacting eBay with allegations of copyright infringement, the plaintiffs sought declaratory judgment that the products offered in the auction did not infringe defendants' copyrighted works. *Id.* at 1067. The

defendants included a British copyright holder and its American agent, located in Connecticut. *Id.* at 1068. In finding that the three factors for purposeful direction were met, the Tenth Circuit emphasized that the defendants knew the plaintiffs' business was located in Colorado. *See id.* at 1076. This knowledge was pivotal to the determination that defendants had expressly aimed to "halt a Colorado-based sale by a Colorado resident," *id.* at 1076, and that the defendants knew that the brunt of the injury caused by the cancellation of the eBay auction would be felt in Colorado. *See id.* at 1077. The Tenth Circuit added that while "[s]ome courts have held that the 'expressly aimed' portion of *Calder* is satisfied when the defendant individually targets a known forum resident," the Tenth Circuit takes a "somewhat more restrictive approach," namely, that "the forum state itself must be the 'focal point of the tort.'" *Id.* at 1074 n.9 (alteration and internal quotation marks omitted).

The Tenth Circuit revisited the issue of personal jurisdiction in the internet context in *Shrader v. Biddinger*, 633 F.3d 1235. In that case, the plaintiff was a writer who lived and worked in Oklahoma. One defendant, the plaintiff's business partner, stopped doing business with the plaintiff and sent an email explaining his reasoning to a list of customers. Another defendant then posted the email on an internet forum. *See id.* at 1237-38. The plaintiff brought a defamation action in Oklahoma, which the district court dismissed for lack of personal jurisdiction. In determining that the defendant who posted the email to the online forum had not "expressly aimed" his conduct at the forum state, the Tenth Circuit looked at the nature of the web forum, the content of the plaintiff's literary works, and the content of the defamatory email. The Tenth Circuit highlighted that the web forum "[had] no particular connection with Oklahoma" because it did not specifically "target[] an

8

Oklahoma audience or the work of Oklahoma writers." *Id.* at 1242, 1244. Regarding the plaintiff's literary works, the Court found that "there [was] nothing about the content . . . , or [the plaintiff's] internet customer base, that [had] been shown to have any tie to Oklahoma." *Id.* at 1244. Finally, the Court determined that "Oklahoma was not the focal point of the email posted by [the defendant], either in terms of its audience or its content." *Id.* at 1245. In sum, the Tenth Circuit held that "defamatory postings may give rise to personal jurisdiction if they are directed specifically at a forum state audience or otherwise make the forum state the focal point of the message." *Id.* at 1244 (citing *Johnson v. Arden*, 614 F.3d 785, 796 (8th Cir. 2010)).

In view of these authorities, and upon consideration of the facts alleged in Plaintiff's Amended Complaint and supporting affidavit, the Court determines that Plaintiff has failed to establish personal jurisdiction over Defendant Soto in this forum. The most salient factor distinguishing this case from the cases cited above as finding personal jurisdiction is that Plaintiff is not located in Oklahoma and its business activities are not centered in Oklahoma. *See* Am. Compl. ¶ 8 ("[Plaintiff] is a foreign, international corporation organized and existing under the laws of England with its principal place of business in London, England."). Plaintiff as a result must base its assertion of personal jurisdiction on Defendant Soto's single contact with nonparty Draft2Digital. While Draft2Digital's principal address is in Oklahoma, there is nothing to suggest that it uniquely targets an Oklahoma audience or Oklahoma writers or that Defendant Soto was aware of Draft2Digital's presence in Oklahoma. *See Shrader*, 633 F.3d at 1248 ("[I]f the plaintiff does not show that the defendant otherwise knew where the recipient was located, the email

itself does not demonstrate purposeful direction of the message to the forum state, even if that happens to be where the recipient lived."). Like the online forum in *Shrader*, Draft2Digital is referenced in Plaintiff's pleading as nonlocal in nature, drawing a customer base beyond merely the state of Oklahoma. *See Shrader*, 633 F.3d at 1242; Am. Comp. ¶¶ 7-8, 43, 56. Similarly, Plaintiff does not allege that the author of the *Myth of Omega* series or the series' content has any tie to Oklahoma. And like the defamatory email in *Shrader*, the DMCA notice sent to Draft2Digital did not "make [Oklahoma] the focal point of the message." *Shrader*, 633 F.3d at 1244. To the contrary, the DMCA notice contains "geographically-neutral content," *id.* at 1245, that appears tailored for submission to all distributors of the *Myth of Omega* series, not just Draft2Digital. *See* Am. Compl. Ex. 3, at 2-6.

Accordingly, Plaintiff at minimum has not satisfied the third factor required for the exercise of personal jurisdiction—the defendant's "knowledge that the brunt of the injury would be felt in the forum state." *Dudnikov*, 514 F.3d at 1072. Here, Plaintiff is "a foreign, international corporation . . . with its principal place of business in London, England," not Oklahoma; and Plaintiff's alleged injury is primarily a loss in "book sales in the United States and internationally." Am. Compl. ¶¶ 8, 56. The fact that the DMCA notice was sent to one online distributor of Plaintiff's that is located in Oklahoma, and even that distributor does not direct its sales to Oklahoma, is not sufficient to locate the "brunt" of Plaintiff's alleged injury in Oklahoma, much less to establish that Defendant Soto had knowledge that the brunt of Plaintiff's alleged injury would be felt in Oklahoma. *See Dudnikov*, 514 F.3d at 1077 (finding that plaintiffs had "satisfied their burden of establishing . . . that defendants

knew plaintiffs' business and auction were based in [forum state], and therefore knew the effects of the [copyright infringement notice] would be felt there").

In light of the foregoing, Plaintiff has not established purposeful direction under the *Calder* framework based upon Defendant Soto's request, via the DMCA notice, that Oklahoma resident and nonparty Draft2Digital remove the *Myth of Omega* series from sale.

B.  *Tortious Interference with Contract*

Plaintiff additionally submits that Defendant Soto's alleged tortious interference with Plaintiff's contract with Draft2Digital provides an independent basis for exercising specific personal jurisdiction over Defendant Soto. *See* Pl.'s Resp. at 26-27; Am. Compl. ¶¶ 87-91. Plaintiff cites a decision by the United States District Court for the Northern District of Oklahoma for the proposition that "[a] party that tortiously interferes with the contract of another is subject to personal jurisdiction in the state in which the property rights under that contract exist." *Nat'l Occupational Health Servs., Inc. v. Advanced Indus. Care*, 50 F. Supp. 2d 1111, 1117 (N.D. Okla. 1998). According to Plaintiff, the contract between Plaintiff and Draft2Digital is "an Oklahoma contract" that "represents a property right," and Defendant Soto's alleged tortious interference with the contract therefore subjects her to this Court's jurisdiction. Pl.'s Resp. at 26.

The cited decision, however, makes clear that personal jurisdiction must be exercised only within the parameters of due process and that jurisdiction is not proper when the defendant did not purposefully direct its activities toward the forum state. *See Nat'l Occupational Health Servs., Inc.*, 50 F. Supp. 2d at 1117. The Court has already determined that Defendant Soto's sole alleged contact with Oklahoma, the sending of a

11

DMCA notice to Draft2Digital, does not constitute purposeful direction. *See Dudnikov*, 514 F.3d at 1072; *supra* Part I. While interference with an Oklahoma contract may reasonably result in injury within Oklahoma, nothing in Plaintiff's pleading or affidavit suggests that Defendant Soto was aware that Draft2Digital was based in Oklahoma or that it had an Oklahoma-based contract with Plaintiff. Thus, Plaintiff has not shown that Defendant Soto had "knowledge that the brunt of the injury" caused by the alleged interference with contract "would be felt in [Oklahoma]." *Dudnikov*, 514 F.3d at 1072, 1077 (explaining that it is not enough that the brunt of the injury was suffered in the forum state; the plaintiff must also show that the defendant knew the effects would predominantly be felt there); *see also Browning v. Salmon*, 143 F. App'x 917, 920 (10th Cir. 2005) (affirming Colorado district court's dismissal for lack of personal jurisdiction where the plaintiff brought suit in Colorado against his Indiana relatives for tortious interference with contract related to real property located in Colorado); *OMI Holdings*, 149 F.3d at 1092 ("Purposeful availment requires actions by the Defendant which create a substantial connection with the forum state." (internal quotation marks omitted)).

Accordingly, the Court finds that Plaintiff has failed to make a sufficient showing to establish personal jurisdiction over Defendant Soto based upon her alleged tortious interference with an Oklahoma contract.

    C.    *Dismissal or Transfer*

Because the Court lacks personal jurisdiction over Defendant Soto, the Court considers whether "it is in the interest of justice" to transfer the claims to an appropriate court rather than dismiss those claims. 28 U.S.C. § 1631; *see Trujillo v. Williams*, 465 F.3d

1210, 1222-23 (10th Cir. 2006). The Tenth Circuit has recognized that "[j]urisdictional defects that arise when a suit is filed in the wrong federal district may be cured by transfer under the federal transfer statute, 28 U.S.C. § 1631, which requires a court to transfer such an action if the transfer is in the interest of justice." *Haugh v. Booker*, 210 F.3d 1147, 1150 (10th Cir. 2000) (internal quotation marks omitted).³ "[F]actors warranting transfer rather than dismissal, at least under § 1631, include finding that the new action would be time barred; that the claims are likely to have merit; and that the original action was filed in good faith rather than filed after plaintiff either realized or should have realized that the forum in which he or she filed was improper." *Trujillo*, 465 F.3d at 1223 n.16 (citations and internal quotation marks omitted).

Defendant Soto's earliest alleged wrongdoing occurred on April 19, 2018. *See* Am. Compl. at ¶ 44. Thus, a new action would not likely be time barred if brought in Virginia, where Defendant Soto resides and Defendant Blushing Books has its principal place of business. *See Cooper v. NCS Pearson, Inc.*, 733 F.3d 1013, 1014 (10th Cir. 2013) (noting that "[t]he statute of limitations for claims under the Copyright Act is three years"); *Henderson v. Fairfax-Falls Church Cmty. Serv. Bd.*, No. 1:18-cv-825, 2018 WL 6037522, at *4 (E.D. Va. Nov. 15, 2018) (noting that Virginia applies a one-year statutory limitations period to "every action for injury resulting from libel, slander, insulting words, or defamation" (internal quotation marks omitted)), *appeal docketed*, No. 19-1040 (4th Cir.

---

³ Though some circuit courts have found that § 1631 applies only to defects in subject-matter jurisdiction, the Tenth Circuit has construed § 1631 as authorizing transfer based on the transferor court's lack of subject-matter jurisdiction or of personal jurisdiction over a party. *See Fed. Deposit Ins. Corp. v. McGlamery*, 74 F.3d 218, 220 (10th Cir. 1996).

Jan. 10, 2019); *see also* Am. Compl. ¶¶ 10-11; Def. Soto Mot. at 12-13; Pl.'s Resp. at 27. Thus, the first factor weighs against transfer to Virginia.

With respect to the second factor, the Court may "peek at the merits to avoid raising false hopes and wasting judicial resources that would result from transferring a case which is clearly doomed." *Haugh*, 210 F.3d at 1150 (internal quotation marks omitted). It does not appear from the record before the Court that Plaintiff's action is "clearly doomed." This factor, then, weighs in favor of transfer.

With respect to the third factor, there is at least some argument that Plaintiff should have known that jurisdiction was not proper. Indeed, Defendant Soto does not personally conduct business or reside in Oklahoma, nothing in the Amended Complaint suggests that Defendant Soto was aware that Draft2Digital was located in Oklahoma, and the direct injury occurred primarily against a corporation organized in England. As such, this factor weighs slightly toward dismissal.

Accordingly, the Court finds that the interests of justice do not favor transfer of the case under § 1631 over dismissal of the claims against Defendant Soto.

CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendant Soto's Motion to Dismiss (Doc. No. 18) is GRANTED. The claims against Defendant Soto are dismissed without prejudice for lack of personal jurisdiction.

IT IS SO ORDERED this 13th day of February, 2019.

*Charles B. Goodwin*
CHARLES B. GOODWIN
United States District Judge