---

**UNITED STATES DISTRICT COURT**
**For the**
**Western District of Oklahoma**

QUILL INK BOOKS LIMITED, a
foreign corporation,                              )
        *Plaintiff*                                )
                       )  Civil Action No. CIV-18-00920-G
           v.                                    )
ABCD GRAPHICS AND DESIGN                           )
<u>Blushing Books, et al.</u>                       )
        *Defendant*                               )

## <u>DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

Pursuant to LCvR56.1 and Fed. R. Civ. P. 56, Defendant hereby submits the following response to *Plaintiff's Motion for Partial Summary* ("Motion"), (Doc. No. 49). This Response is supplemented by the attached Affidavits of Anne Wills ("*Wills Affidavit*"), Exhibit 1, and Allison Travis ("*Travis Affidavit*"), Exhibit 2.

## <u>INTRODUCTION</u>

1.  In April of 2018, author Addison Cain reported to her publisher, Blushing Books ("Defendant"), that Ms. Cain was receiving an alarming number of emails and private messages that led her to believe that Zoey Ellis's title, "Crave to Conquer" (Book One in the Myth of Omega Series, published 1/15/18) was based in large part on Soto's title, "Born to be Bound (Book one in the Alpha's Claim Series, published 4/8/16).. **Ex 2, ¶ 8**. Ms. Cain read the books and agreed. Ms. Cain then asked a friend to do the same thing, and Ms. Cain's colleague came up with a chart listing

between 30 - 40 points of direct similarities between the two books. Defendant's CEO, Anne Wills, conducted a similar review, and generated a third independent opinion that the books were substantially similar. **Ex 1**. **¶ 6**.

2. Upon Ms. Cain's request that Defendant take action to protect Cain's intellectual property, Defendant filed DMCA take down notices online with Barnes and Noble ("B&N"), Apple, and Kobo and Amazon. B&N, Apple, and Kobo took the books down pending review. **Ex 2, ¶ 9**. Amazon did not. **Ex 2, ¶ 12**. Defendant then filed certified a certified letter with Amazon, and may have filed one with Google Play. **Ex 2, ¶ 10**. B&N, Kobo, and Apple reviewed the complaint and made the decision that the books were not close enough and put the books back up again. **Ex 2, ¶ 17**. Defendant did not file any additional paperwork, nor did they ever post to a public forum about this situation. Plaintiff is the moving party, and they need to prove their core allegations - that Defendant did this knowing the claim was false, and to harm Plaintiff, and that Plaintiff was harmed by the Defendant's actions.

3. In addition, due process requires an opportunity for confrontation and cross-examination, and for discovery. The Defense is not in a position to investigate this case sufficiently, respond to any pleadings appropriately, or adequately prepare for trial due to the egregious discovery omissions of Plaintiff. Efforts to uncover something so basic as the actual identify of the injured have been denied by Plaintiff without proper explanation. For instance, the named Plaintiff in the case is Quill Ink Books Limited. There is minimal mention, however, of this publishing company throughout the Complaint. Indeed, the presumed "injured" party is an author

referred to as "Zoey Ellis." and in fact Plaintiff has provided no evidence whatsoever that Quill Ink published the books or even was in existence at the time these books were published. **Ex 2, ¶ 15**.  E-mails exchanged between Apple Ibooks and the book's publisher, provided by Apple books to the Defendant, make mention of Quill Books, but inform Defendant to contact a "Zuri Amarcya," related to this matter, whose identity is also unclear. **Ex 2, ¶ 16; Ex 1, ¶ 13**. Further, the initial "Cease and Desist" letter received by Defendant makes no mention of Quill Ink, and lists only "Zoey Ellis" as the client.

4.   Moreover, Plaintiff has repeatedly refused to identify who author Zoey Ellis is, and informed Defendant that because a corporation is the named Plaintiff, they do not need to identify Zoey Ellis or call her as a witness due to F.R.C.P. 30(b)(6). Quill's standing to bring this case is therefore unclear. Further questionable is how the only specific witness Plaintiff has endorsed, Dr. Kristina Busse, is also a proposed expert, expert and also the individual they have listed as Quill's corporate representative,

5.   This is the climate from which Plaintiff now moves for summary judgment. There exist, however, numerous strongly disputed material facts, described in detail below. When the smoke and mirrors are lifted from Plaintiff's Motion and its voluminous (largely irrelevant and/or inadmissible) exhibits, what remains is this: Plaintiff is not entitled to the relief they seek because they have failed to prove either that that they are entitled to summary judgment as a matter of law or that no genuine issue of fact exists. Their Motion must be denied.

## RESPONSES TO PLAINTIFF'S "STATEMENT OF MATERIAL FACTS AS TO WHICH NO SUBSTANTIAL CONTROVERSY EXISTS"

1. Defendant does not dispute Paragraph 1.

2. Defendant does not dispute Paragraph 2.

3. Defendant does not dispute Paragraph 3.

4. Defendant does not dispute Paragraph 4.

5. Defendant does not dispute Paragraph 5.

6. Defendant disputes the factual assertions in Paragraph 6. Under the preliminary statement "this action arises from knowingly false and defamatory communications intentionally delivered by blushing directly to plaintiffs e-book distributor, draft to digital…": Defendant filed no statements ever with Draft2Digital. **Ex 2, ¶ 11**. Any notice Draft2Digital received regarding the allegations of imitation came to them by way of a different vendor.  As such, the jurisdictional deficits in this case are clear. Plaintiff purposefully selected this particular forum for reasons wholly unknown to the Defendant.

7. Defendant disputes Paragraph 7. Blushing Books directed a takedown notice to Apple iTunes, Kobo, Amazon, Barnes & Noble, and Google Play. Blushing Books never directed a takedown notice to Draft2Digital. **Ex 2, ¶ 11**.

8. Defendant disputes the factual assertion in Paragraph 8. The intent of Blushing was to prevent the Plaintiff from appropriating the intellectual property of Cain and Blushing. The fact that Blushing was willing to take formal action to protect its intellectual property is not relevant to any claims made by the Plaintiff in this

paragraph. As the publisher of the series, Blushing Books felt it was its duty and obligation to support and protect its author. However, Cain herself filed one notice directly with Amazon. **Ex 2, ¶ 14**.

9.  Defendant disputes the factual assertion in Paragraph 9. At no point did Defendant represent that Cain possessed validly registered copyrights on common literary tropes, or on her books themselves. Defendant disputes Paragraph 9 to the extent that the Plaintiff alleges that Cain did not possess copyrights, as Defendant believes a certain level of copyright protection applied at the moment of publishing. **Ex 1, ¶ 22**.

10. Defendant disputes Paragraph 10. It was, in fact, possible for Cain to assert ownership over the intellectual property because those works were more than simple "Omegaverse tropes," as cited by the Plaintiff. Cain's works were distinct from general genre themes. **Ex 1, ¶ 6**.  At no point did Defendant represent that they knew or believed that Cain had registered copyrights for her titles. **Ex 1, ¶ 22**. Having a registered copyright is not a requirement for filing a DMCA takedown notice.

11. Defendant does not dispute Paragraph 11. To reiterate: At no point did Blushing Books represent that they knew or believed that Cain had registered copyrights for her titles. **Ex 1, ¶ 22**. Having a registered copyright is not a requirement for filing a DMCA takedown notice.

12. Defendant disputes Paragraph 12. Defendant never made continuing efforts to disrupt the Plaintiff's book sales. Defendant made efforts to prevent the Plaintiff's

ongoing appropriation of the intellectual property of Ms. Cain and Defendant. **Ex 1, ¶ 19.**

13. Defendant does not dispute Paragraph 13, but requests that this information be provided appropriately in discovery.

14. Defendant does not dispute Paragraph 14, but requests that this information be provided appropriately in discovery.  Defendant filed takedown notices regarding "Crave to Claim" only after the DMCA filings for Books 1 and 2 had been accepted. **Ex 1, ¶ 12**.

15. Defendant does not dispute Paragraph 15, but requests that this information be provided appropriately in discovery.

16. Defendant disputes Paragraph 16.  The claims were well founded, and the DMCA takedown notices were signed reflecting Defendant's honest, subjective belief that Zoey Ellis's books inappropriately intruded on Addison Cain's intellectual property. **Ex 1, ¶ 7**.In addition, Apple iTunes' decision to remove Plaintiff's entire library of publications is an internal decision made by Apple iTunes and was never requested or expected by Defendant. Furthermore, it is critical to note that it is not a requirement of the DMCA system that a book be removed during a review process and, in fact, Amazon and Google Play never removed the books whatsoever.

17. Defendant disputes Paragraph 17. Defendant did not falsely claim that it had reviewed *Crave to Claim*. Defendant knew that the third book was going to be published and believed it was going to violate the DCMA in the same manner as

the first two books. There were no false representations made by Defendant. Nowhere or in any venue did Defendant state that the third book of the Myth of Omega series had been read or reviewed. The DMCA was filed solely on the basis that if Books 1 and 2 of the series were plagiarized, the foundation that Book 3 was built upon was sufficiently tainted. **Ex 1, ¶ 6**.

18. Defendant disputes Paragraph 18. Defendant's intent was not solely to ensure that the Plaintiff "did not make any more money off the series." Defendant's intent was to prevent the Plaintiff from to continuing to unlawfully profit from the theft of intellectual property. Defendant's intent was to prevent further monetary loss as a result of the Plaintiff's unlawful monetary gain from its theft of Cain's intellectual property. **Ex. 1, 8**.

19. Defendant does not dispute Paragraph 19, but requests that this information be provided appropriately in discovery.

20. Defendant disputes Paragraph 20. The Plaintiff's bare legal conclusion that "it showed in the Counter-Notices that Blushing made material, false representations" is unsupported by any evidence or undisputed facts. **Ex 1, ¶ 7**.

21. Defendant disputes Paragraph 21. The Plaintiff's conclusory statement that "Blushing's "take-down" notices violated the Copyright Act, damaged Plaintiff's reputation and resulted in financial losses, including, but not limited to, prerelease and ordinary book sales in the United States and internationally" is unsupported by any evidence or undisputed facts.

22. Defendant disputes Paragraph 22. Defendant's actions were meant to protect the intellectual property of Cain and Defendant. Those attempts extended to any continued or future theft of intellectual property by the Plaintiff. Defendant legitimately believed Plaintiff has demonstrated a pattern of continued theft of intellectual property and the only remedy for Defendant to prevent Ellis from continued unlawful use of intellectual property was to file formal DMCA notices. **Ex 1, ¶ 8**.

23. Defendant disputes Paragraph 23. The Plaintiff cites to quotes from pleadings in an attempt to misrepresent facts to this court. These are negotiations between the parties and are not factual assertions of fault or damages. As stated in the Plaintiff's motion these were simply "any conceivable damages." In an effort to assist Plaintiff's counsel with basic concepts of the English language, that statement merely conveys that those would be the extent of possible damages, if the Plaintiff's position were legally sound. It is, however, not legally sound.

24. Defendant disputes Paragraph 24. A literary work does not need to be identical to another for it to be in violation of the DCMA. Defendant does not concede that a book must be identical to another for it to be properly subject to the DCMA. **Ex 1, ¶ 7**. Plaintiff's assertion that Courtney Milan is not affiliated with any party is false, given that the Plaintiff sought out Ms. Milan to give the opinion to which it cites. Defendant also does not agree with Ms. Milan's analysis or ability to conduct such an analysis.

## MEMORANDUM OF ARGUMENTS AND AUTHORITIES

**A.  SUMMARY JUDGMENT STANDARD OF REVIEW**

1.  A motion for summary judgment should only be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996). While the movant bears the burden of showing the absence of a genuine issue of material fact, the movant need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim. Id.

2.  When determining a motion for summary judgement, "inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). Summary judgment should not be granted "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In this procedural posture, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

**B.     PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT SHOULD BE
DENIED BECAUSE DEFENDANT DID NOT MAKE MATERIAL
MISREPRESENTATIONS UNDER 17 U.S.C. § 512(F).**

3.  The Plaintiff claims in its motion for summary judgment that it is further
    undisputed that the DMCA "take-down" notices knowingly and materially
    misrepresented the facts therein. There is no support in evidence for this
    claim.

4.  The intentions of the actors involved in this lawsuit cannot be gleaned from
    the pleadings and exhibits alone, as there are some disagreements that
    cannot be resolved without a formal finder of fact. Indeed, the context in
    which these communications were made cannot be explained properly
    without the testimony of Anne Wills and Allison Travis, the two primary
    employees for Defendant. The DMCA permits an individual who believes
    that their work has been infringed on to file a claim and have that claim
    reviewed by an independent third party and have that claim either rejected
    or accepted it. That is how the system worked in this case: Apple, Barnes
    and Noble, and Kobo conducted a review, made their evaluation, and
    determined that the works were not similar enough to require permanent
    removal without a finding from a copyright court case.

5.  Although no court in Oklahoma has ruled on the necessity of registering a
    copyright in order to bring a claim under the DMCA, courts in several other
    jurisdictions have held that a failure to register the copyright does not bar
    DMCA claims. In <u>Medical Broadcasting Co. v. Flaiz</u>, No. Civ.A. 02-28554,

2003 WL 22838094, at *1, *3 (E.D. Pa. Nov. 25, 2003), the court

considered the defendant's argument that DMCA claims against him were

inappropriate because the disputed information did not have a copyright

registration. In holding that copyright registration is not required to bring a

claim, the court observed that "[n]othing in [17 U.S.C.] §1202 of the

DMCA suggests that registration is a precondition to a lawsuit. . . [DMCA

claims] are simply not copyright infringement claims and are separate and

distinct from the latter." Id. at *3. In I.M.S. Inquiry Manag. Systems v.

Berkshire Inform., 307 F.Supp2d 521, 530-31, n.9 (S.D.N.Y. 2004), the

court adopted the holding in Medical Broadcasting noting:

> As a preliminary matter, we note that there is no inconsistency in
> addressing plaintiff's DMCA claim on the merits and finding that
> this Court does not possess subject matter jurisdiction over
> plaintiff's copyright infringement action. An owner's copyrighted
> work can be unregistered. Unlike its effect on its infringement
> claim, plaintiff's failure to register its copyrighted work is not a
> bar to a DMCA action.

6. More recently, the court in Gattoni v. TIBI, LLC., 254 F.Supp.3d 659, 663

(S.D.N.Y. 2017) also held that a pending application for copyright did not

bar a DMCA action. As such, if the action had been brought as a traditional

copyright infringement under the Copyright Act, registration of the

copyright would be a precondition to filing the claim; however, because

DMCA actions are not copyright infringement claims, there is no

registration prerequisite to filing a take-down notice under the DMCA.

7.  Indeed, only a subjective belief is required to file a DMCA

notice. See Rossi v. Motion Picture Ass'n of America Inc., 391 F.3d 1000

(9th Cir. 2004), cert. denied, 544 U.S. 1018 (2005) (The Ninth Circuit also

ruled in Rossi that the requirement of section 512(c)(3)(A)(v) that

notifications include a statement that the complaining party believes, in

good faith, that the copyrighted material identified is being used in a

manner that is not authorized by the copyright owner, its agent or the law,

encompasses a subjective, rather than objective, standard. See generally

supra § 4.12[9][B]); See, e.g., Dudnikov v. MGA Entm't, Inc., 410 F. Supp.

2d 1010, 1012 (D. Colo. 2005) ("In Rossi, the Ninth Circuit held that the

good faith standard under § 512(c) is a subjective rather than objective

standard based on the fact that a cause of action for improper infringement

notifications under § 512(f) is expressly limited to those situations where

the copyright owner's notification is a 'knowing' and 'material'

misrepresentation. Thus, as long as MGA acted in good faith belief that

infringement was occurring, there is no cause of action under § 512(f)."

(citation omitted)); see also Bio-Safe One, Inc. v. Hawks, No. 07-

6764(DC), 2007 U.S. Dist. LEXIS 88032, at *29-32 (S.D.N.Y. Nov. 29,

2007) (knowing material misrepresentation requires "intentionally and

knowingly" misrepresenting infringement).

8. The Plaintiff further claims that there is no dispute that Defendant did not have a good-faith basis for believing that the material published by Plaintiff was infringing. This claim is based upon the argument that the similarities between the works are, broadly, "tropes" that are not subject to copyright. This argument is not based in fact, but instead the opinion of the Plaintiff and Plaintiff's purported witnesses.

9. As stated in Exhibit 1, the similarities she identified in the two works are not "tropes." The themes in Cain's works are her own unique creations and are not so common as to render them tropes or common themes found throughout the Omegaverse. **Ex 1, ¶ 6-8**.

10. Therefore, Defendant has shown admissible evidence that disputes the Plaintiff's claim that "[a]lmost every referenced similarity between the works lists a trope that is common throughout all Omegaverse fiction." **Ex. 1**. And when viewed in the appropriate standard for summary judgment, that "inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion," this material dispute of fact – whether Cain's themes are unique to her or just "tropes" – must be resolved in favor of the Defendant for purposes of this motion.

11. Plaintiff further argues that the two works are not identical, and that this has some controlling legal effect. It cites no legal authority for this claim.  It does cite, in support of its argument, analysis from an unendorsed expert witness sought by the Plaintiff. This evidence, therefore, would be

inadmissible and should not be relied upon in support of the

motion. See Jones v. Wilkinson, 800 F.2d 989, 1002 (10th Cir.1986)

12. Furthermore, this is simply the opinion of a person and not stipulated fact. A jury could disagree with this opinion, if this person were allowed to testify, when it evaluated the witness's bias, motive, and prejudice. A jury could also not find the witness credible in light of evidence in Defendant's Exhibit 1, which provides evidence that contradicts the Plaintiff's evidence in support of this argument.

13. Therefore, the Plaintiff's argument that summary judgement should be granted because the works are not identical should be disregarded because "a reasonable jury" could disagree with Ms. Milan's analysis and find that there are identical sections in the works. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## C.   PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT SHOULD BE DENIED BECAUSE BLUSHING DID NOT INTERFERE WITH PLAINTIFF'S EXISTING AND PROSPECTIVE BUSINESS.

14. The elements of this cause of action are simply lacking. More importantly, Defendant maintains that their actions were justified. **Ex 2, ¶ 5, 6**.

15. Further complicating matters is the fact that Defendant has never been to Oklahoma, does not do business in Oklahoma, and has never, as Plaintiff repeatedly claims, reached out to Draft2Digital, an Oklahoma company. It is therefore unclear which state law controls this cause of action, as there

are numerous vendors incorporated in different states, none of which is Oklahoma.

16. Assuming for purposes of this motion that Oklahoma law controls: In a tort action, Oklahoma follows the most significant relationship approach to conflict-of-laws issues. "[T]he rights and liabilities of parties with respect to a particular issue in tort shall be determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties." Brickner v. Gooden, 1974 OK 91, ¶ 23, 525 P.2d 632, 637. Following the Restatement (Second) of Conflict of Laws, the Supreme Court in Brickner identified the contacts to be considered as factors when determining which state's law would apply:

> 1. the place where the injury occurred;
> 2. the place where the conduct causing the injury occurred;
> 3. the domicile, residence, nationality, place of incorporation and place of business of the parties; and
> 4. the place where the relationship, if any, between the parties occurred.

> Id. (citing Restatement (Second) of Conflict of Laws § 145 (1971)).

17. To prevail on a claim for tortious interference with prospective economic advantage, the following must be shown: "the existence of a valid business relation or expectancy, knowledge of the relationship or expectancy on the part of the interferer, an intentional interference inducing or causing a breach or termination of the relationship or expectancy, and resultant damage to the party whose relationship has been disrupted." Batton v.

15

Mashburn, 107 F. Supp. 3d 1191, 1198, 2015 U.S. Dist. LEXIS 61890

(W.D. Okla. 2015) (citing Lakeshore Cmty. Hosp., Inc. v. Perry, 212 Mich.

App. 396, 538 N.W.2d 24, 27 (Mich. Ct. App. 1995); see also Gonzalez v.

Sessom, 2006 OK CIV APP 61, ¶ 16, 137 P.3d 1245, 1249 ("The essential

elements of a claim for intentional interference with prospective economic

advantage are (1) the existence of a valid business relation or expectancy,

(2) knowledge of the relationship or expectancy on the part of the interferer,

(3) an intentional interference inducing or causing a breach or termination

of the relationship or expectancy, and (4) resultant damage to the party

whose relationship has been disrupted. The interference is intentional if the

interferer acted with the purpose to interfere with the relationship or

expectancy.")

18. To prevail on a claim for malicious interference with contract and business

relations, the following must be shown: "proof that defendant interfered

with plaintiff's business or contractual rights; the interference was not

justified, privileged, or excusable; and plaintiff was damaged as a result of

the interference" Wilspec Techs., Inc. v. Dunan Holding Group Co., Ltd.,

2008 U.S. Dist. LEXIS 47750, *9 (W.D. Okla. 2008) (citing Gabler v.

Holder & Smith, Inc., 2000 OK CIV APP 107, 11 P.3d 1269, 1278.

**D.    PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED BECAUSE BLUSHING DID NOT CONSPIRE WITH CAIN TO ENGAGE IN UNLAWFUL BEHAVIOR TO STIFLE COMPETITION.**

19. Defendant's intentions were to defend Cain's statutory rights under the DMCA. There is a profound dispute that there was any unlawful purpose behind Defendant's actions.

20. The jurisdictional problems outlined in section C, supra, remain. However, assuming, arguendo, that Oklahoma law applies, to state a claim for civil conspiracy, a plaintiff must plead the following elements: 1) a combination of two or more persons; 2) an object to be accomplished; 3) a meeting of the minds on the object or course of action; 4) one or more unlawful overt acts; and 5) damages as a proximate result thereof. See Gaylord Entertainment Co. v. Thompson, 958 P.2d 128, 148 (Okla. 1998); Hitch Enterprises, Inc. v. Cimarex Energy Co., 859 F.Supp.2d 1249, 1268 (W.D. Okla. 2012).

21. The Supreme Court of Oklahoma has said that "unlike its criminal counterpart, civil conspiracy itself does not create liability." Brock v. Thompson, 948 P.2d 279, 294 (Okla. 1997). Rather, "[t]o be liable the conspirators must pursue an independently unlawful purpose or use an independently unlawful means." Id. There can be no liability for civil conspiracy where the act complained of and the means employed are lawful. Id.  Plaintiff seems to argue that this is a claim for liability, when it actually just creates more ability to go after more sources for damages. Id. at 294 (emphasis deleted) (footnotes omitted). "In essence, a civil

conspiracy claim enlarges the pool of potential defendants from whom a plaintiff may recover for an underlying tort." Id. n. 66.

22. Moreover, "a conspiracy between two or more persons to injure another is not enough; an underlying unlawful act is necessary to prevail on a civil conspiracy claim." Roberson v. Paine Webber, Inc., 998 P.2d 193, 201 (Okla. Civ. App. 1999).

23. The email threads provided in Plaintiff's exhibits clearly contain Addison Cain and Anne Wills listing and discussing the points of similarity in the books. There are instances where Ms. Cain and Ms. Wills appear to acknowledge that Zoey Ellis's books are not verbatim replications of Ms. Cain's books. In addition, Defendant Blushing is observed to be suggesting that Ms. Cain not take action on the matter. This suggestion does not provide evidence of any wrongdoing, is not a statement against interest, and is inadmissible. Further, there are innumerable reasons why a business person might counsel a colleague not to pursue formal action in a situation.

E.    **DEFENDANT'S "EVIDENCE" SUPPORTING ITS CLAIM OF UNDISPUTED DAMAGES IS ENTIRELY IRRELEVANT AND INADMISSIBLE**

24. In Paragraph 23 of its motion, the Plaintiff has submitted, without prior notice, irrelevant and inadmissible correspondence between Defendant's attorney and Plaintiff's counsel pertaining directly to settlement negotiations. See Doc. No. 32, ¶ 78 ("Based on these metrics, [Blushing]

can state with confidence that the actual LOSS OF SALES' related damages in this case is likely less than $2000.00 and may be less than $1000.00."); <u>see</u> Doc. No. 49 at ¶ 5 ("Defendant, using extremely reliable methods of calculating sales of Plaintiff's works, estimates any conceivable damages to Plaintiff to be in the area of $1,000 to $2,000 US dollars.").

25. This evidence is completely inadmissible under Fed. R. Evid. 408 and should be ignored by this Court for purposes of evaluating summary judgment. As that rule states,

> "Evidence of the following is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction: … (2) conduct or statements made in compromise negotiations regarding the claim… (b) Permitted uses.-- … Examples of permissible purposes include proving a witness's bias or prejudice; negating a contention of undue delay; and proving an effort to obstruct a criminal investigation or prosecution."

26. Rule 408 directly applies to evidence of conduct or statements made in compromise negotiations, "and this encompasses the whole of the settlement evidence." <u>Overseas Motors, Inc. v. Import Motors Ltd., Inc.,</u> 375 F.Supp. 499, 537 (D.C.Mich. 1974). In the matter at hand, the correspondence between counsel was related to the parties' attempts to

come to a compromise to avoid further litigation. It does not fall within the limited exceptions for permissible use.

27. Only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment. <u>Jones v. Wilkinson</u>, 800 F.2d 989, 1002 (10th Cir.1986) (stating that "Fed.R.Civ.P. 56 ... requires that material supporting a motion for summary judgment be admissible evidence"); <u>World of Sleep, Inc. v. Lay–Z–Boy Chair Co.</u>, 756 F.2d 1467, 1474 (10th Cir.1985) ("Under Fed.R.Civ.P. 56(e), the court may consider only admissible evidence in ruling on a motion for summary judgment.")

28. Therefore, the Plaintiffs' evidence regarding damages in its motion for summary judgement is inadmissible evidence. It is also the only evidence submitted in the Plaintiff's motion in regards to damages. Not only does the Defendant dispute all facts regarding damages, there is no admissible evidence contained within the Plaintiff's motion to support its assertion that there exist undisputed facts to support its claim of damages. For that reason, the motion for summary judgement fails because there is a material dispute of facts regarding an essential element of all of the Plaintiff's claims. Finally, damages alone will not suffice without proof that Defendant engaged in some form of wrongdoing, and that Defendant's wrongdoing was the proximate cause of Plaintiff's damages.

29. The Plaintiff's final argument, that it has suffered damages, is a bare legal conclusion bereft of any evidentiary support. The Plaintiff claims it does

not have to state specific monetary damages in this statutory context, relying upon <u>Lenz v. Universal Music Corp.</u>, 815 F.3d 1145, 1153-54 (9th Cir. 2016). But <u>Lenz</u> does not stand for the proposition that a Plaintiff can simply state that it "has been damaged," as the Plaintiff does in its summary judgement motion. It still must show some evidence that it has been damaged, because as <u>Lenz</u> points out, a Plaintiff "may seek recovery of nominal damages due to an unquantifiable harm suffered as a result of [a Defendant's] actions." <u>Id</u>. at 1158. But it still must offer some undisputed evidence that it has suffered some type of damages.

30. And, because there has been no material misrepresentation made by Defendant under 17 U.S.C. 512(f), nominal damages are not even available. Therefore, this argument that there is no material dispute regarding damages also fails because the Plaintiff has failed to show, in a light most favorable to the non-movant, that it suffered damages.

## **RELIEF REQUESTED**

WHEREFORE, Defendant respectfully requests the Court DENY Plaintiff's Motion for Partial Summary Judgment.

Respectfully Submitted,

*/s/ Rebecca Briggs*
**Rebecca Briggs,** #40626 (CO) & #91362 (VCC)
Attorney for Blushing Books
The Law Office of Becky Briggs, LLC
315 Colorado Ave, Pueblo, CO 81003
Phone:  (434) 989-0847          Fax:  (970) 826-7050

E-mail:  beckybriggslaw@gmail.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of June, 2019, I electronically transmitted the attached document to the Court Clerk using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

*/s/ Rebecca Briggs*

Gideon A. Lincecum
Dylan D. Erwin

glincecum@holladaychilton.com derwin@holladychilton.com