# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) QUILL INK BOOKS LIMITED, a foreign corporation,<br><br>    Plaintiff,<br><br>v.<br><br>(1) ABCD GRAPHICS AND DESIGN, INC., D/B/A BLUSHING BOOKS PUBLISHING, a foreign corporation, *et al.*,<br><br>    Defendants. | Case No.: CIV-18-920-G |

## PLAINTIFF QUILL INK BOOKS LIMITED'S TRIAL BRIEF

Plaintiff, Quill Ink Books Limited ("Plaintiff"), states:

## **PRELIMINARY STATEMENT**

This action arises from knowingly false and defamatory communications intentionally delivered by Blushing directly to Plaintiff's eBook distributor, Draft2Digital, L.L.C. ("Draft2Digital"), and directly to various, other online vendors. Blushing's contacts with Draft2Digital tortiously interfered with Plaintiff's distribution contract with Draft2Digital; deprived Plaintiff of its contractual right to participate in Draft2Digital's distribution program; and caused Plaintiff to lose pre-release and ordinary book sales in the United States and internationally. Plaintiff filed the instant action on October 17, 2018, against Blushing seeking injunctive relief for intentional interference with contract and for copyright misuse; and for damages for misrepresentation of copyright claims under the

DIGITAL MILLENNIUM COPYRIGHT ACT, tortious and malicious interference with prospective and existing business relationships, defamation, false light, civil conspiracy; and, for declaratory relief.

### STATEMENT OF MATERIAL FACTS AS TO WHICH
### NO SUBSTANTIAL CONTROVERSY EXISTS

1. On January 18, 2018, Plaintiff published *Crave to Conquer*, the first book in an omegaverse series entitled MYTH OF OMEGA.

2. On March 20, 2018, Plaintiff published *Crave to Capture*, the second book in the MYTH OF OMEGA series.

3. The third book, *Crave to Claim*, was published on May 23, 2018, concluded the MYTH OF OMEGA series.

4. Each book in the MYTH OF OMEGA series is subject to the protection of the Berne Convention for the Protection of Literary and Artistic Works and *Crave to Conquer* has a validly registered copyright under the Copyright Act of 1976.

5. The MYTH OF OMEGA series was released through Draft2Digital, Amazon, Barnes and Noble, iTunes Apple, Rakuten-Kobo and Google Play. These online vendors sell e-books and print books to customers.

6. After the release of the first two books, *Crave to Conquer* and *Crave to Capture*, Blushing directed a "take-down" notice to Draft2Digital and other vendors on or about April 19, 2018.

7. In the "take-down" notices Blushing asserted the MYTH OF OMEGA series infringed on author Rachelle Soto a/k/a Addison Cain's ("Cain") copyrights and demanded Draft2Digital remove the MYTH OF OMEGA books from sale.

8. The "take-down" notices were sent by Blushing at the direction of Cain, and it was Cain's intention to hide behind the actions of Blushing.

9. The "take-down" notices represented Cain somehow possessed validly registered copyrights on common literary tropes.

10. At the time Blushing transmitted the "take-down" notices, it was impossible for Cain to assert ownership over any sort of copyright with respect to the Omegaverse tropes she cited in the notice.

11. Cain did not register for a copyright for her first book until two years following the book's publication.

12. From April 24, 2018 to May 16, 2018 Plaintiff received multiple reader inquiries stating the MYTH OF OMEGA books were missing from online vendors. Through these communications, Plaintiff learned of Blushing's continuing efforts to disrupt Plaintiff's book sales.

13. On May 16, 2018, Draft2Digital's representatives advised Plaintiff that Draft2Digital and Barnes and Noble had removed the MYTH OF OMEGA series from sale because of the "take-down" notices.

14. During the week of May 16, 2018, Plaintiff received communications from the vendors that "take-down" notices were now filed against all three books in the MYTH

OF OMEGA series, including *Crave to Claim* which had not been published at the time the "take-down" notices were filed.

15. Further communications with vendors revealed that all three books of the MYTH OF OMEGA series were removed from sale.

16. iTunes removed Plaintiff's entire library of publications solely based on Blushing's false claims.

17. Blushing's "take-down" notices—while only referencing the first book, *Crave to Conquer*—made allegations against the entire MYTH OF OMEGA series without identifying how book two, *Crave to Capture*, was infringement and, more incredibly, asserted infringement by unpublished third book, *Crave to Claim*, falsely claiming it had been reviewed.

18. Despite the fact *Crave to Claim* had not yet been published, Blushing sent the take-down notice to ensure that Plaintiff "did not make any more money off the series".

19. Upon learning of the "take-down" notices, Plaintiff promptly delivered counter-notices pursuant to Section 512(g) of the Copyright Act ("Counter-Notices").

20. Plaintiff showed in the Counter-Notices that Blushing made material, false representations.

21. Blushing's "take-down" notices violated the Copyright Act, damaged Plaintiff's reputation and resulted in financial losses, including, but not limited to, pre-release and ordinary book sales in the United States and internationally.

22. The actions taken by Blushing and their author, Cain, were calculated to end the career of Plaintiff's author and destroy the *Zoey Ellis* brand of books.

23. Following the filing of this lawsuit, Blushing has represented on multiple occasions to both the Plaintiff and the Court that they are liable for the damage to Plaintiff. *See* Doc. No. 32, ¶ 78 ("Based on these metrics, [Blushing] can state with confidence that the actual LOSS OF SALES' related damages in this case is likely less than $2000.00 and may be less than $1000.00."); *see also* Doc. No. 42, ¶ 2 ("Defendant, however, did not disclose any confidential details whatsoever, and in fact will be filing a public pleading in the very near future wherein it presents its F.R.C.P. 68 Offer of Judgment in detail."); *see also id.* at ¶ 5 ("Defendant, using extremely reliable methods of calculating sales of Plaintiff's works, estimates any conceivable damages to Plaintiff to be in the area of $1,000 to $2,000 US dollars.").

24. Recently, Blushing admitted in its Motion to Exclude Plaintiff's Expert Witness (Doc. No. 48) that it is willing to stipulate that "[t]hese books are not identical" admitting "[t]his is not a copyright infringement case," which is precisely what an industry expert and commentator, unaffiliated with any party, already confirmed. *See* Doc. No. 48.

## ARGUMENT AND AUTHORITIES

I. **PLAINTIFF IS ENTITLED TO JUDGMENT AGAINST BLUSHING FOR MISUSE OF COPYRIGHT AND MISREPRESENTATION UNDER 17 U.S.C. § 512(f).**

Blushing's DMCA "take-down" notices were submitted to various vendors of Plaintiff's violated federal copyright law. Under 17 U.S.C. § 512(f), "[a]ny person who <u>knowingly materially misrepresents</u> under this section…that material or activity is infringing…shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer, by any copyright owner or copyright owner's authorized

licensee…who was injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing, or in replacing the removed material or ceasing to disable access to it." 17 U.S.C. § 512(f) (emphasis added). Under federal law, *knowingly* "means that a party actually knew, should have known if it acted with reasonable care or diligence, or would have had no substantial doubt had it been acting in good faith, that it was making misrepresentations." *Online Policy Group v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1204, 2004 U.S. Dist LEXIS 19697 (N.D. Cal. 2004); *see also Handshoe v. Perret*, 2018 U.S. Dist. LEXIS 155971, 20 (S.D. Miss. 2018) ("To act knowingly is to act in such a manner that the actor engaged in prohibited conduct with the knowledge that the social harm that the law was designed to prevent was practically certain to result; deliberately.") (internal citations omitted). Moreover, the requirement of *good faith* "encompasses a subjective, rather than objective standard." *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1153-54, 2016 U.S. App. LEXIS 5026 (9th Cir. 2016) (citing *Rossi v. Motion Picture Ass'n of Am., Inc.*, 391 F.3d 1000, 1004, 2004 U.S. App. LEXIS 24743 (9th Cir. 2004)).

In the present case, Blushing knowingly transmitted the DMCA "take-down" notices while the same contained various material misrepresentations. Blushing's own author admitted to them that she did not possess a valid copyright for all the materials cited in the DMCA "take-down" notices. *See* Statement of Material Facts As To Which No Substantial Controversy Exists ("Facts"), ¶¶ 8-11. Moreover, not only did she not possess a valid copyright, but the material Blushing claims is plagiarized consisted almost entirely of omegaverse tropes; and, tropes cannot be copyrighted. Further, there was no "good

faith" present—subjective or otherwise—in Blushing's conclusion that the material was infringing. In fact, Blushing's author admitted on various occasions *to* Blushing that she did not believe the material to be infringing, and that she knew she did not have a copyright on the omegaverse. Moreover, the alleged similarities between the works that were provided with the DMCA "take-down" notice were self-serving summaries of similarities without any specific reference to the texts themselves. Almost every referenced similarity between the works lists a trope that is common throughout all omegaverse fiction. *See, e.g., Green v. Lindsey*, 885 F. Supp. 469, 486 (S.D.N.Y. 1992 ), *aff'd*, 9 F.3d 1537 (2d Cir. 1993), *cert. denied*, 510 U.S. 1202, 127 L. Ed. 2d 667, 114 S. Ct. 1318 (1994); *see also Williams v. Crichton*, 84 F.3d 581, 588-89 (2d Cir. 1996) ("Having reviewed both parties' works in detail, we find that nearly all the similarities between the works arise from noncopyrightable elements, and thus the district court correctly concluded that the works are not substantially similar."). Further, judgment has been granted based on a court's finding that the morals of the two stories were different, that the similarity of events constituted unprotected *scènes à faire*, *i.e.*, that the similarities necessarily flowed from the common idea underlying the stories, and most importantly, that the two works differed in total feel because they were "not similar in mood, details or characterization." *Reyher v. Children's TV Workshop & Tuesday Publ'ns,* 553 F.2d 87, 92 (2d Cir. 1976). Lastly, by Blushing's own admission, the two works are not identical. *See* Facts, ¶ 24. In fact, other than standard Omegaverse *scène à faire*, Cain cannot identify any similarity between her series and Plaintiff's publications.

As a direct result of Blushing's misrepresentations under 17 U.S.C. § 512(f), Plaintiff has been damaged. For purposes of § 512, Plaintiff is not required to allege specific monetary damages. *See Lentz v. Universal Music Corp., supra,* at 1164-65 ("Universal incorrectly asserts that Lentz must demonstrate she incurred "actual monetary loss"…the damages an alleged infringer may recover under § 512(f) from "any person" are broader than monetary relief…[b]ecause Congress specified the recovery of "any damages," we reject Universal's contention that Congress did not indicate its intent to depart from the common law presumption that a misrepresentation plaintiff must have suffered a monetary loss.") (citations omitted). Lastly, this blatant misrepresentation by Blushing constitutes a misuse of copyright—more specifically, Blushing has willfully and knowingly misused federal copyright protections afforded to victims of plagiarism; and, in doing so, damaged an innocent party.

In summation, it is undisputed that Blushing transmitted the DMCA "take-down" notices. It is further undisputed that the DMCA "take-down" notices knowingly and materially misrepresented the facts therein. It is further undisputed that Blushing did not have a good faith basis for believing that the material published by Plaintiff was infringing. It is further undisputed that these misrepresentations sought to misuse federal copyright protections. Lastly, it is undisputed that Plaintiff was damaged as a direct result of Blushing's unlawful conduct. Therefore, Plaintiff is entitled to judgment against Blushing as to Counts I and II of the Amended Petition.

## II. PLAINTIFF IS ENTITLED TO JUDGMENT AGAINST BLUSHING FOR INTERFERING WITH PLAINTIFF'S EXISTING AND PROSPECTIVE BUSINESS.

### a. It is undisputed that Blushing tortuously interfered with Plaintiff's prospective economic advantage when they published information about the baseless DMCA "take-down" notices.

To prevail on a claim for tortious interference with prospective economic advantage, the following must be shown: "the existence of a valid business relation or expectancy, knowledge of the relationship or expectancy on the part of the interferer, an intentional interference inducing or causing a breach or termination of the relationship or expectancy, and resultant damage to the party whose relationship has been disrupted." *Batton v. Mashburn*, 107 F. Supp. 3d 1191, 1198, 2015 U.S. Dist. LEXIS 61890 (W.D. Okla. 2015) (citing *Lakeshore Cmty. Hosp., Inc. v. Perry*, 212 Mich. App. 396, 538 N.W.2d 24, 27 (Mich. Ct. App. 1995); *see also Gonzalez v. Sessom*, 2006 OK CIV APP 61, ¶ 16, 137 P.3d 1245, 1249 ("The essential elements of a claim for intentional interference with prospective economic advantage are (1) the existence of a valid business relation or expectancy, (2) knowledge of the relationship or expectancy on the part of the interferer, (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy, and (4) resultant damage to the party whose relationship has been disrupted. The interference is intentional if the interferer acted with the purpose to interfere with the relationship or expectancy.")

In the present case, it is undisputed that Plaintiff had both valid business relationships and expectancies with the various online vendors that were contracted to sell the MYTH OF OMEGA series. *See* Facts, ¶¶ 5, 13-16 It is further undisputed that Blushing

Case 5:18-cv-00920-G   Document 70   Filed 08/20/19   Page 10 of 16

Case 5:18-cv-00920-G Document 70 Filed 08/20/19 Page 10 of 16

knew of these relationships, as is made clear by the fact they specifically targeted the vendors that they knew were contracted to sell the MYTH OF OMEGA series. *See id.* at ¶¶ 8, 10, and 23. It is further undisputed that Blushing's interference was intentional, and that it induced a termination of the relationship when the specifically targeted vendors removed Plaintiff's published books from their stores. *See id.* at ¶¶ 12-16. Lastly, it is undisputed that Plaintiff suffered damages because of Blushing's tortious interference; not only did the removal of the MYTH OF OMEGA series result in lost sales, but it also cancelled all preorders for the then-forthcoming third book in the MYTH OF OMEGA series. *See id.* at ¶ 21. Therefore, Plaintiff is entitled to judgment against Blushing as to Count IV of the Amended Petition.

      **b.**    **It is undisputed that Blushing maliciously interfered with Plaintiff's contract and business relations when they published information about the baseless DMCA "take-down" notices.**

To prevail on a claim for malicious interference with contract and business relations, the following must be shown: "proof that defendant interfered with plaintiff's business or contractual rights; the interference was not justified, privileged, or excusable; and plaintiff was damaged as a result of the interference" *Wilspec Techs., Inc. v. Dunan Holding Group Co., Ltd.*, 2008 U.S. Dist. LEXIS 47750, *9 (W.D. Okla. 2008) (citing *Gabler v. Holder & Smith, Inc.*, 2000 OK CIV APP 107, 11 P.3d 1269, 1278.

In the present case, as argued, *supra*, it is undisputed that Blushing interfered with Plaintiff's business and contractual rights. It is further undisputed that the interference was not justified, privileged, or excusable, because the interference was based entirely on

misrepresentations of copyright and violations of federal law under 17 U.S.C. § 512(f). *See supra; see also* Facts, ¶ 6-11. Lastly, as discussed, it is undisputed that Plaintiff was damaged as a result of this malicious interference. *See* Facts, ¶ 21. Additionally, and most importantly, Defendant's articulated reason for the ongoing interference was to ruin the career of one of Plaintiff's authors and drive her out of the business. *Id.* at ¶ 22.

Moreover, even *after* it was brought to Blushing's attention via DMCA counter-notices that the works were not infringing, Blushing *continued* to maliciously interfere with Plaintiff's business and contractual relationships. *Id.* These actions are purposefully malicious, deliberate, and unlawful. *See Mercer Publ., Inc. v. Smart Cookie Ink, LLC*, 2012 U.S. Dist. LEXIS 198949, *14 (W.D. Wash. 2012) ("Smart Cookie further alleges that Mercer continued to send these allegedly misleading DMCA notices even after Smart Cookie provided evidence that its products did not infringe…Based on these allegations, the court concludes that Smart Cookie has pleaded sufficient factual support to state a plausible claim for relief under the DMCA.")

Therefore, Plaintiff is entitled to judgment against Blushing as to Count V of the Amended Petition.

### III. PLAINTIFF IS ENTITLED TO JUDGMENT AGAINST BLUSHING FOR DEFAMATION, FALSE LIGHT, AND NEGLIGENCE.

The accusations leveled against Plaintiff by Blushing wherein Plaintiff was accused of plagiarism constitute defamation, and Plaintiff is entitled to judgment against Blushing for the same. To prevail on a claim for defamation of a public figure, Plaintiff must have the ability to show: (1) the statement or statements exposed Plaintiff to public hatred,

contempt, ridicule or disgrace; (2) Blushing communicated the statement or statements to persons other than Plaintiff; (3) that the persons to whom Blushing communicated understood the statement or statements to be about Plaintiff; (4) that the statement or statements were false; (5) that the statement or statements caused Plaintiff to suffer both financial loss and damage to Plaintiff's reputation. *See* OUJI (Civ) 3rd Ed., No. 28.2. Additionally, Plaintiff must be able to show that Blushing either knew the statement or statements were false or had serious doubt whether the statement or statements were true or false. *Id.* In the present case, it is undisputed that Plaintiff and its author were accused of plagiarism, and that those statements were communicated to the public at large via online message boards and social media. Those false statements sought to, and successfully subjected Plaintiff to public hatred, contempt, ridicule and disgrace by directly identifying Plaintiff and its author. Not only were these statements false, but as evidenced by various email correspondences between Blushing and Cain, Blushing *knew* those statements were false. Lastly, it is undisputed that, as a direct result of these defamatory statements, Plaintiff's suffered both financial loss and damage to its reputation—as the public now viewed Plaintiff in a false light, believing it to be in league with and publishing stories penned by a plagiarist.

In making these defamatory statements, Blushing did not exercise ordinary care to avoid injury to Plaintiff. Blushing's unreasonable and negligent actions were a direct cause of the injury sustained by Plaintiff. *See* OUJI (Civ) 3rd Ed., Nos. 9.1, 9.2.

Therefore, Plaintiff is entitled to judgment against Blushing as to Counts III, VI and VII of the Amended Petition.

IV. **PLAINTIFF IS ENTITLED TO JUDGMENT AGAINST BLUSHING FOR CONSPIRING WITH CAIN TO ENGAGE IN UNLAWFUL BEHAVIOR TO STIFLE COMPETITION.**

To prevail on a claim for civil conspiracy, a Plaintiff must provide evidence of "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Hitch Enters. v. Cimarex Energy Co.*, 859 F. Supp. 2d 1249, 1268, 2012 U.S. Dist. LEXIS 70564, *46 (W.D. Okla. 2012); *see also Singer v. Wadman*, 745 F.2d 606, 609, 1984 U.S. App. LEXIS 18198, *7 ("A civil conspiracy is the combination of two or more persons acting in concert, either to commit an unlawful act, or to commit a lawful act by unlawful means."). In the present case, it is undisputed that Blushing acted in concert with and at the direction of its author Cain. *See* Facts, ¶ 8. It is further undisputed that the object they sought to be accomplished was the transmission of meritless DMCA "take-down" notices to ensure that Plaintiff and its author did not make any more money from their published works. *See id.* at ¶¶ 8, 18, 22. It is undisputed that there was a meeting of the minds, as evidenced by the ongoing discussions via email between Blushing and its author. *Id.* In sending the DMCA notices contemplated in the email correspondence, it is undisputed that there was an overt act. Lastly, as argued, *supra*, it is undisputed that Plaintiff suffered damages as a *direct* result of the conspiracy between Blushing and its author.

Therefore, Plaintiff is entitled to judgment against Blushing as to Count VIII of the Amended Petition.

### V. PLAINTIFF IS ENTITLED TO A DECLARATORY JUDGMENT AGAINST BLUSHING REGARDING THE ISSUE OF PLAGARISM.

Of all the issues before the Court, it appears that both Plaintiff and Blushing agree that this case is *not* about copyright infringement. *See* Facts, ¶ 24. As such, no actual controversy exists between the parties with regard to plagiarism and copyright infringement. *See* 28 U.S.C. §§ 2201-2202; *see also* FED. R. CIV. P. 57. Plaintiff is entitled to a declaratory judgment that Plaintiff's published MYTH OF OMEGA series does no plagiarize Blushing's published ALPHA'S CLAIM series, and that Plaintiff's publication of the same was lawful.

Therefore, Plaintiff is entitled to a declaratory judgment that the publication of the MYTH OF OMEGA series is lawful, as alleged in Count IX of the Amended Petition.

### CONCLUSION

For the reasons stated herein, Plaintiff Quill Ink Books is entitled to judgment against Defendant ABCD Graphics and Design, Inc. d/b/a Blushing Books Publishing as follows:

1. Judgment as to liability for Plaintiff and against Blushing for misuse of copyright;
2. Judgment as to liability for Plaintiff and against Blushing for misrepresentation under 17 U.S.C. § 512(f);
3. Judgment as to liability for Plaintiff and against Blushing for negligence;
4. Judgment as to liability for Plaintiff and against Blushing for tortious interference with prospective economic advantage;

5. Judgment as to liability for Plaintiff and against Blushing for malicious interference with contract or business relations;

6. Judgment as to liability for Plaintiff and against Blushing for defamation;

7. Judgment as to liability for Plaintiff and against Blushing for false light;

8. Judgment as to liability for Plaintiff and against Blushing for civil conspiracy;

9. A declaratory judgment that the publication of the MYTH OF OMEGA series is lawful.

Dated this 20th day of August, 2019.

        s/ *Dylan D. Erwin*
        Gideon A. Lincecum, OBA No. 19674
        James W. Dobbs, OBA No. 14995
        Dylan D. Erwin, OBA No. 31987
        HOLLADAY & CHILTON, PLLC
        204 North Robinson, Suite 1550
        Oklahoma City, OK 73102
        Telephone:  (405) 236-2343
        Facsimile:   (405) 236-2349
        Email:  glincecum@holladaychilton.com
                jdobbs@holladaychilton.com
                derwin@holladaychilton.com

        **ATTORNEYS FOR PLAINTIFF**
        **QUILL INK BOOKS LIMITED**

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of August, 2019, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

**Rebecca L Briggs**
beckybriggslaw@gmail.com

**Shawn M Dellegar**
shawn.dellegar@crowedunlevy.com, carol.welch@crowedunlevy.com,
ECFT@crowedunlevy.com, tammy.shaddox@crowedunlevy.com

**Deric J McClellan**
deric.mcclellan@crowedunlevy.com, pat.george@crowedunlevy.com,
ecft@crowedunlevy.com

**Gideon A Lincecum**
glincecum@holladaychilton.com, cburgess@holladaychilton.com,
ECF_Service@holladaychilton.com

**Dylan D Erwin**
derwin@hollladaychilton.com, lspencer@holladaychilton.com,
ecf_service@holladaychilton.com

*s/ Dylan D. Erwin*