## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) QUILL INK BOOKS LIMITED, a foreign corporation,<br><br>      Plaintiff,<br><br>v.<br><br>(1) ABCD GRAPHICS AND DESIGN, INC., D/B/A BLUSHING BOOKS PUBLISHING, a foreign corporation, *et al.*,<br><br>      Defendants. | Case No.: CIV-18-920-G |

## FINAL PRETRIAL REPORT

All counsel who will appear at trial:

**Appearing for Plaintiff**:

Gideon A. Lincecum, Esq.
James W. Dobbs, Esq.
Dylan D. Erwin, Esq.
HOLLADAY & CHILTON, PLLC

**Appearing for Defendant**:

Becky Briggs, Esq.
THE LAW OFFICE OF BECKY BRIGGS, LLC

**Jury Trial Demanded ☒  -  Non-Jury Trial ☐**

1.    <u>BRIEF PRELIMINARY STATEMENT</u>.

    a.    <u>Plaintiff</u>:

       This action arises from knowingly false and defamatory communications intentionally delivered by Defendant ABCD Graphics and Design, Inc. d/b/a Blushing Books Publishing ("Defendant") directly to Plaintiff Quill Ink Books Limited's ("Plaintiff") eBook distributor, Draft2Digital, L.L.C. ("Draft2Digital"), and directly to various, other online vendors. Defendant's contacts with Draft2Digital tortiously interfered with Plaintiff's distribution contract with Draft2Digital; deprived Plaintiff of its contractual right to participate in Draft2Digital's distribution program; and caused Plaintiff to lose pre-release and ordinary book sales in the United States and internationally. Plaintiff filed the instant action on October 17, 2018, against Defendant seeking injunctive relief for intentional interference with contract and for copyright misuse; and for damages for misrepresentation of copyright claims under the DIGITAL MILLENNIUM COPYRIGHT ACT, tortious and malicious interference with prospective and existing business relationships, defamation, false light, civil conspiracy; and, for declaratory relief.

    b.    <u>Defendant</u>:

       This is a civil case involving two publishing companies. The plaintiff company alleges that the defendant company misrepresented claims made to internet service providers as part of the defendant's protection of copyrights to its literary works. The defendant made a claim to these providers, pursuant to the Digital Millennium Copyright Act, because it believed that literary works created by Plaintiff and being sold on these websites infringed upon the defendant's copyrighted literary works. The literary works at issue in this case are romance novels.

       The plaintiff has made several claims related to this activity. The defendant has denied all of those claims.

2.    <u>JURISDICTION</u>.

    a.    Plaintiff:

       The Court has subject matter jurisdiction over the federal claims pursuant to the Copyright Act (17 U.S.C. §§ 101 et seq.), 28 U.S.C. §§ 1331 and 1338 and the Declaratory Judgment Act (28 U.S.C. § 1367(a)). The state law claims form part of the same case or controversy as the federal claims.

b.    Defendant

The Defendant does not believe that jurisdiction is proper in this case, for a couple reasons.

None of the acts giving rise to this incident occurred in the State of Oklahoma. In addition, Defendant never availed itself of the court's jurisdiction through any minimum contacts. Plaintiff has asserted throughout this lawsuit that Defendant contacted Draft2Digital, an online vendor centralized in Oklahoma. Documents produced pursuant to a subpoena issued to Draft2Digital, as well as discussions with their corporate attorney, have demonstrated that this is not the case. Any communication with Draft2Digital came through a third party, not Blushing Books. The evidence indicates Defendant has proven their previously pleaded affirmative defense of lack of jurisdiction, entitling them to summary judgment on that issue.

In addition, the Plaintiff claimed this court has subject matter jurisdiction over the federal claims pursuant to the Declaratory Judgment Act (28 U.S.C. § 1367(a)) in that the state law claims form part of the same case or controversy as the federal claims. The Defendant disputes this for the preemption arguments outlined below, and in Defendant's separate *Motion for Summary Judgment*.

[Plaintiff's Response: Defendant waived jurisdiction in their Answer and no such *motion for summary judgment has ever been filed.]*

3.    <u>STIPULATED FACTS</u>.  List stipulations as to all facts that are not disputed or reasonably disputable, including jurisdictional facts.

a.  Plaintiff's Proposed Stipulations:

i.   Jurisdiction and venue are proper.

ii.  Jurisdiction is proper in the Western District of Oklahoma under 28 U.S.C.

iii. § 1332 as the amount in controversy exceeds seventy-five thousand dollars ($75,000.00) and complete diversity exists.

b.  Defendant's Proposed Stipulations:  The Defendant does not stipulate to any facts.

4.    <u>LEGAL ISSUES</u>.  State separately, and by party, each disputed legal issue and the authority relied upon.

A.    <u>Plaintiff</u>:

1.    *Whether Defendant knowingly and willfully misused the "safe harbor" provisions of the DIGITAL MILLENNIUM COPYRIGHT ACT and federal copyright law by claiming ownership of certain common tropes within the sub-genre of omegaverse fiction in order to demand the expeditious takedown of the MYTH OF OMEGA series.*

       <u>Authority</u>:     17 U.S.C. § 512

2.    *Whether Defendant materially misrepresented to Draft2Digital, Amazon, Barnes & Noble, iTunes/Apple, Rakuten/Kobo and/or other parties that the MYTH OF OMEGA series infringes upon the ALPHA'S CLAIM series in the take-down notices.*

       <u>Authority</u>:     17 U.S.C. § 512(f)

3.    *Whether Defendant breached a duty to exercise good faith and due diligence in evaluating and filing any take-down notice with respect to the MYTH OF OMEGA series, and because of that breach Plaintiff suffered financial losses and harm to their reputation.*

       <u>Authority</u>: OUJI (Civil) Nos. 9.1, 9.2, 9.3, 9.6, 9.10

4.    *Whether Defendant tortuously interfered with Plaintiff's prospective business relations and expectancies involving the sale of the Myth of Omega  economic advantage in communicating and directing others to file false reports to online vendors.*

       <u>Authority</u>:     *Batton v. Mashburn*, 107 F. Supp. 3d 1191, 2015 U.S. Dist. LEXIS 61890 (W.D. Okla. 2015) ("To prevail [on a claim for tortious interference with prospective economic advantage] a plaintiff must allege and prove the existence of a valid business relation or expectancy, knowledge of the relationship or expectancy on the part of the interferer, an intentional interference inducing or causing a breach or termination of the relationship or expectancy, and resultant damage to the party whose relationship has been disrupted.") (internal citations omitted); *Gonzalez v. Sessom*, 2006 OK CIV APP 61, ¶ 16, 137 P.3d 1245, 1249 ("The essential elements of a claim for intentional interference with prospective economic advantage are (1) the existence of a valid business relation or expectancy, (2) knowledge of the relationship or expectancy on the part of the interferer, (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy,

and (4) resultant damage to the party whose relationship has been disrupted. The interference is intentional if the interferer acted with the purpose to interfere with the relationship or expectancy.")

5.   *Whether Defendant maliciously, wrongfully, and knowingly interfered with Plaintiff's existing business relations involving the sale of the Myth of Omega economic advantage in communicating and directing others to file false reports to online vendors.*

   Authority:   *Wilspec Techs., Inc. v. Dunan Holding Group Co., Ltd.*, 2008 U.S. Dist. LEXIS 47750, *9 (W.D. Okla. 2008) ("The elements of a claim for malicious interference with contract or business relations…[requires] proof that defendant interfered with plaintiff's business or contractual rights; the interference was not justified, privileged, or excusable; and plaintiff was damaged as a result of the interference."); *Mercer Publ., Inc. v. Smart Cookie Ink, LLC,* 2012 U.S. Dist. LEXIS 198949, *14 (W.D. Wash. 2012) ("[Plaintiff] further alleges that [Defendant] continued to send these allegedly misleading DMCA notices even after [Plaintiff] provided evidence that its produces did not infringe…Based on these allegations, the court concludes that [Plaintiff] has pleaded sufficient factual support to state a plausible claim for relief under the DMCA.")

5.   *Whether Defendant knowingly, willfully, and maliciously published false and defamatory statements concerning Plaintiff with knowledge of the statements' falsity, and/or with reckless and negligent disregard for the falsity of the statements.*

   Authority: OUJI (Civil) Nos. 28.1, 28.2, 28.9

6.   *Whether Defendant broadcasted information to a large number of people regarding Plaintiff that would be highly objectionable to a reasonable person and which attributed to Plaintiff and its publications false characteristics, conduct and/or beliefs that placed Plaintiff and its publications in a highly offensive and false light and position.*

   Authority: OUJI (Civil) 28.15

7.   *Whether Defendant and their author, Rachelle Soto a/k/a Addison Cain together conspired wrongfully stifle competition and harm Plaintiff financially.*

Authority:    *Hitch Enters v. Cimarex Energy Co.*, 859 F. Supp.
1249, 1268, 2012 U.S. Dist. LEXIS 70564, *46 (W.D. Okla. 2012)
("In Oklahoma, the essential elements of a civil conspiracy that a
plaintiff must ultimately establish are (1) two or more persons; (2) an
object to be accomplished; (3) a meeting of minds on the object or
course of action; (4) one or more unlawful, overt acts; and (5)
damages as the proximate result.") (internal citations omitted);
*Singer v. Wadman*, 745 F.2d 606, 609, 1984 U.S. App. LEXIS
18198, *7 (10th Cir. 1984) ("A civil conspiracy is the combination
of two or more persons acting in concert, either to commit an
unlawful act, or to commit a lawful act by unlawful means.")

B.   Defendant

1.   **Defendant's Daubert Motion**—Objected to by Plaintiff.
Authorities and case law outlined in **Doc. No. 48**. No ruling as of yet.

2.   **Defendant's Witness and Exhibit Objections**. Defendant filed a
host of objections to Plaintiff's Witness and Exhibit list, **Doc. No. 44**,
filed May 23rd, 2019. No ruling as of yet.

*[Plaintiff's Response: Defendant did not file any motions in limine, as
ordered by the Court, seeking to exclude evidence based upon any such
objections.  Any such objections, including those attempted to be made out
herein, were not properly preserved and are deemed waived.]*

3.   **Partial Summary Judgment for the Plaintiff**—Doc.No. 49,
Objected to by Defendant. No ruling as of yet.

4.   **Summary Judgment for the Defendant**—to be filed within 30
days after the close of discovery. Brief Summary below:

*[Plaintiff's Response: No such deadline for the filing of dispositive motions
was provided for in the Court's scheduling order. Defendant has not filed
any motion for summary judgment and the deadline for doing so was on
June 1, 2019.  Item 4 and its subparts and Item 5 below should be stricken
from this order.]*

a.   **Count 1—Misuse of Copyright**. Defendant is entitled to
Summary Judgment and/or a directed verdict on Count I –
Misuse of Copyright "[C]ourts have generally head that
copyright misuse does not support a claim for damages." Malibu
Media, LLC v. Doe 1, 2012 WL 6681990, at *2 (D. Md. Dec. 21,
2012) (quoting Ameretto Ranch Breedables v. Oximals, Inc., 790

F. Supp. 2d 1024, 1034 n.7 (N.D.Cal 2012)(collecting cases).

b.    **Counts III-VIII**--Defendant is entitled to Summary Judgment and/or a directed verdict on all the State Tort Cases (Count III – Negligence, Count IV-Tortious Interference with Prospective Economic Advantage, Count V-Malicious Interference with Contract or Business Relations, Count VI-Defamation, Count VII-False Light, and Count VIII-Civil Conspiracy) in that they all merge with Count II under federal preemption principles. These state tort claims stem directly from the filing of the DMCA takedown notices, and Plaintiff can seek relief within that statute. Defendant relies on the following authorities for this proposition:

c.    Principles of Preemption are sourced in the US Constitution:

This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any state to the contrary notwithstanding. Art. 6 cl. 2, U.S. Constitution:

d.    When Congress amended the Copyright Act in 1976, it provided for the preemption of state law claims that are interrelated with copyright claims in certain ways. Under 17 U.S.C. § 301, a state law claim is preempted when: (i) the state law claim seeks to vindicate "legal or equitable rights that are equivalent" to one of the bundle of exclusive rights already protected by copyright law under 17 U.S.C. § 106—styled the "general scope requirement"; and (ii) the particular work to which the state law claim is being applied falls within the type of works protected by the Copyright Act under Sections 102 and 103—styled the "subject matter requirement." The state law claims asserted by Quill based on Oklahoma law are preempted by federal authority, and the court lacks jurisdiction over them anyway.

5.    **Defendant is entitled to Summary Judgment and/or a directed verdict on Count IX—Declaratory Judgment**

To issue a declaratory judgment, there must be an actual controversy between the parties. Several courts have held that DMCA takedown notices, without accompanying threats of litigation, do not create a

justiciable controversy that would warrant a declaratory judgment. <u>See</u> <u>Handshoe v. Perret</u>, 270 F. Supp. 3d 915, 933 (S.D. Miss. 2017) ("Unasserted, unthreatened and unknown potential future copyright claims against Plaintiff do not present an immediate or real threat which merits declaratory relief.")' <u>Pac. Bell Internet Servs. V. Recording Indus. Ass'n of Am., Inc.</u>, 2003 WL22862662, at *4 (N.D. Cal. Nov. 26, 2003) (holding there was no actual controversy with notice letters that did not threaten litigation. Here, as in the cases cited above, there is no actual controversy between Quill Ink and ABCD Graphics. The DMCA takedowns, without more, do not create a justiciable controversy.

5.   <u>CONTENTIONS AND CLAIMS FOR DAMAGES OR OTHER RELIEF</u> <u>SOUGHT</u>.

    A.   <u>Plaintiff</u>:

    Contentions:

    1.   Misuse of DMCA Notice Procedure/Abuse of Process

        a.   The MYTH OF OMEGA series is an original work of authorship, not infringement.

        b.   The Myth of Omega series was independently created and employed a degree of creativity consistent with other "fan fictions" written in omegaverse fiction.

        c.   The Myth of Omega series is a dark-edged romance that draws upon established omegaverse tropes and immerses the reader in a stirring tale of a yearning erotic desire amidst a heroine's epic journey. However, Cain's dark erotic suspense thriller, while also drawing upon omegaverse tropes, is a story of brutal rape, murder, and death—a horrific tragedy of loss.

        d.   And, though there is no single, accepted set of rules for stories written in the omegaverse genre, such stories usually include strong themes of dominance, submission, and possessiveness. Most stories focus on alphas bonding and mating with omegas, and there is a strong use of the "soul mate" trope as well as the concept of sex (or mating) as a biological imperative. As demonstrated above, some stories build alternate societal and cultural traditions, while others insert omegaverse conventions into an otherwise "real world" or canonical story.

e. The Myth of Omega and Alpha's Claim both assimilate dominant omegaverse tropes.

f. Blushing and its author's motivation, however, in demanding the removal of the Myth of Omega series was not to protect any copyright, but instead was intended to stifle competition.

g. Blushing and its author have engaged in similar acts with other authors writing omegaverse fan fiction.

h. In this instance, Blushing and its author used false copyright claims in their "take-down" notice because the "safe harbor" provisions of the Digital Millennium Copyright Act, 17 U.S.C. § 512, provides a mechanism by which it could demand expeditious takedown of materials alleged to infringe copyright.

i. Blushing and its author never intended to pursue litigation in good faith because the only similarities between the Myth of Omega and Cain's Alpha's Claim were the persistent and dominant tropes found in all omegaverse fan fiction.

j. Cain's assertion of ownership with respect to the male/female omegaverse sub-genre and false claim of authoring the first male/female story arc are unfounded, claims. Such deceit can only be maintained by willfully and purposefully ignoring catalogued omegaverse fan fiction publications beginning in 2010 that predate Cain's 2016 series.

2. Misrepresentation, 17 U.S.C. § 512(f)

a. Blushing and its author knowingly and materially misrepresented to Draft2Digital, Amazon, Barnes and Noble, iTunes-Apple and Rakuten-Kobo and other parties that the Myth of Omega series infringes upon Cain's copyright while falsely claiming review of all three books of the series.

b. Blushing and its author knowingly and inaccurately represented the standard to vendors that "ideas" "plots" and "arcs" are copyrightable.

c. Out of the supposed similarities, Blushing and its author misrepresented eight of them as copyrightable, without noting that they are tropes of omegaverse, in no way novel or unique

to Cain's work, and thus not subject to copyright protection. In particular, Defendants misleadingly alleged that they hold copyright on the concepts of (a) alphas being big, (b) suppressants being used by omegas to hide their dynamics, (c) protagonist couple be an alpha male and an omega female, (d) omegas are rare and valued as mates to provide children, (e) that in a dark romance the main character is an anti-hero, (f) that the omega fights and wants to escape the relationship, (g) that the omega is unhappy, and (h) that biology predetermines the finding of mates (most shifter romance works include this). These are concepts that cannot be copyrighted.

d.      Ten of the allegations of why Cain's work was copyrightable were presented in a misleading way that ignores the context, logic, and circumstances of the books.

e.      Twelve of the allegations were outright false statements made about the story of Crave to Conquer to make it seem like it had been copied from Cain. These allegations are not only incorrect, but purposefully inaccurate. And, much of the information provided by Blushing and its author about its own work was presented incorrectly and/or out of context to make it similar to Crave to Conquer for the purposes of the "take-down" notices. A side-by-side comparison demonstrates that Blushing and its author liberally misquote their own work.

f.      Blushing and its author represented that they had conducted an independent review of a book that had not been published (established law required that for copyright violation to occur there must be "text" or "work" that infringes the copyrighted work). Blushing and its author still represented that in Crave to Claim where the two main characters mate, have an infant daughter, rule their world together, and live happily ever after violated the copyrighted text of Cain's third book wherein the heroine gets raped as orchestrated by the ex-lover of the anti-hero (with who the anti-hero had cheated with), she loses her baby and is left for dead, the anti-hero is presumed to be dead, and at the end of the book it is unclear whether or not both main characters are alive.

g.      Blushing and its author made all of these allegations under

penalty of perjury and represented they had satisfied the requirements under the Copyright Act and that they were filing "take-down" notices in good faith.

h.    Blushing and its author's actions have caused Plaintiff injuries as set forth above and they are entitled to all relief afforded by law.

3.    Negligence

a.    Blushing and its author had a duty to Plaintiff to exercise good faith and due diligence in communicating with others regarding its "take-down" notice with respect to the Myth of Omega series.

b.    Blushing and its author breached its duty to Plaintiff.

c.    Because of Cain's and Blushing's breach, Plaintiff suffered financial losses.

4.    Tortious Interference With Prospective Economic Advantage

a.    Plaintiff had prospective business relations and expectancies involving the sale of the Myth of Omega series as distributed through the vendors.

b.    Blushing and its author had knowledge of Plaintiff's prospective business relations and expectancies.

c.    Blushing and its author intentionally interfered with Plaintiff's prospective business relations and expectancies causing a breach and termination of those relationships and expectancies.

d.    Blushing and its author's interference caused Plaintiff to suffer economic losses and other damages as set forth herein.

e.    Plaintiff is entitled to all relief afforded by law resulting from Blushing and its author's wrongful and intentional interference with their prospective business relations and expectancies.

5.    Malicious Interference With Contract Or Business Relations

a.    Plaintiff had existing business relations involving the sale of

the Myth of Omega series.

b.   Blushing and its author intentionally interfered with Plaintiff's existing business relations causing a breach and termination of is relationship with Draft2Digital and other partners.

c.   Blushing and its author's interference was malicious, wrongful, and neither justified, privileged, nor excusable.

d.   Blushing and its author's interference proximately caused Plaintiff to suffer economic losses and other damages.

6.   Defamation

a.   Blushing and its author made false and defamatory statements concerning Plaintiff and its publications.

b.   Blushing and its author's anonymously conspired and colluded to publish and communicate these false and defamatory statements concerning Plaintiff and its publications to third parties without privilege or authorization, including accusations Plaintiff's author is engaging in harassment, and are presently maintaining and continuing their tortious activities.

c.   Blushing and its author's anonymously created and/or contributed to multiple online forums that published and communicated these false and defamatory statements concerning Plaintiff and its publications. Such forums continue in operation.

d.   Blushing and its author's published the false and defamatory statements concerning Plaintiff with actual malice, with knowledge of the statements' falsity, and/or with reckless and negligent disregard for the falsity of the statements.

7.   False Light

a.   Blushing and its author broadcast to the public in general and/or to a large number of people information that would be highly objectionable to a reasonable person by attributing to Plaintiff and its publications false characteristics, conduct, and/or beliefs that place Plaintiff and its publications in a

highly offensive and false light and position.

b.  Blushing and its author placed Plaintiff and its publications in a false light even though they knew of and/or acted in reckless disregard of the falsity of the publicized information.

c.  Plaintiff has incurred damages and other harm as a result of Blushing and its author's tortious conduct.

8.  Civil Conspiracy

a.  Blushing and its author form a confederation of two or more people or entities.

b.  On information and belief, Blushing and its author together facilitated and furthered, and continue to facilitate and further, false claims of plagiarism against Plaintiff to harm Plaintiff financially.

c.  On information and belief, Blushing and its author together facilitated and furthered, and continue to facilitate and further, the posting of defamatory statements online about Plaintiff and have and continue to cause Plaintiff to be cast in a false light to stifle competition and harm Plaintiff financially.

d.  Blushing and its author's misconduct and unlawful activities caused, and continue to cause, Plaintiff actual harm for which it is entitled to recover damages.

9.  Declaratory Judgment

a.  A real and actual controversy exists between Plaintiff and Blushing and its author regarding whether the Myth of Omega series infringes upon any copyrights claimed by Cain.

b.  Plaintiff seeks a declaratory judgment pursuant to 28 U.S.C. §§ 2201-2202 and Rule 57 of the Federal Rules of Civil Procedure to determine and adjudicate questions of actual controversy between parties.

c.  Plaintiff contends as it relates to Blushing and its author, consistent with the Copyright Act, judicial decisions construing such laws, doctrines, and provisions, publication

of the Myth of Omega series is lawful.

    d.    Blushing and its author contend the contrary of the above-stated proposition and refuse to withdraw the false DMCA notices.

Claims for Damages:

1.    Damages for lost earnings estimated at $135,000.00 based upon expected pre-orders, sales, and future potential sales at approximately $15,000.00 per book for each book in Plaintiffs Zoey Ellis brand of books, or such other amount as the evidence at trial shall demonstrate;

2.    Reputational harm damages to Plaintiffs brand(s) and lost earning capacity believed to be in excess of $250,000.00, or such other amount as the evidence at trial shall demonstrate;

3.    Plaintiffs damages for Plaintiffs lost business or economic opportunities believed to be in excess of $250,000.00, or such other amount as the evidence at trial shall demonstrate·

4.    Plaintiffs damages due to interruption of and increased expense of publishing and creative costs, including, but not limited to, lost business partnerships, said amount believed to be in excess of $100,000.00, or such other amount as the evidence at trial shall demonstrate;

5.    All income derived by Defendant flowing from the disparagement scheme between Defendant, Rachelle Soto, and others with respect to Plaintiffs brand(s) believed to be in excess of $100,000.00, or such other amount as the evidence at trial shall demonstrate;

6.    Punitive damages for the sake of example and by way of punishing Defendant for its malicious, intentional, and knowing activities taking into account the profitability of Defendant's misconduct, the duration of Defendant's misconduct and attempted concealment thereof, Defendant's awareness, Defendant's attitude and conduct, the number and level of employees causing and concealing the misconduct, and the financial condition of Defendant, said amount expected to be in excess of $500,000.00. 23 OKLA. STAT. § 23-9.l(D) (Category Ill) ("Where the jury finds by clear and convincing evidence that: 1. The defendant has acted intentionally and with malice towards others; ... the jury, in a separate proceeding

conducted after the jury has made such finding and awarded actual damages, may award punitive damages in any amount the jury deems appropriate, without regard to the limitations set forth in subsections B and C of this section.")

7.   Attorney's fees and costs pursuant to 17 U.S.C. § 512(f), other portions of the COPYRIGHT ACT, incurred by Quill as a result of Defendant's unlawful actions, plus such other and further fees and costs incurred to the date of trial.

8.   Piercing of Defendant's corporate veil as courts may disregard the legal fiction that bestows on an entity an existence that is separate and distinct from its members when necessary to protect the interests of the public, circumvent fraud, and protect the rights of third persons or accomplish justice. *See, e.g., Mid-Continent Life Ins. Co. v. Goforth*, 1943 OK 244, 110, 193 Okla. 314, 143 P.2d 154.

B.   <u>Defendant:</u>

Defendant's Motion to Compel Discovery (Doc. No. 60). The Court ordered Plaintiff to provide additional computations of damages by September 3rd, 2019. That discovery has not yet been provided.

*[Plaintiff's Response: As ordered, Plaintiff reviewed its computation for purposes of supplementing its Rule 26 disclosures. Plaintiff's computation of damages remains the same and all documents supporting those computations, as acknowledged by Defendant's counsel at the recent hearing, had already been produced in discovery. The estimate of Plaintiff's damages for each category is unchanged and the supporting documentation was provided on August 15, 2019, prior to the hearing, including the amounts Defendant's made following the filing of the false DMCAs. <u>Defendant's counsel was so advised and merely stated it did not matter as Defendant had already met with a bankruptcy attorney in the event any damages were awarded</u>. Defendant's counsel never made any attempt to discuss any further deficiencies in Plaintiff's disclosures or discovery responses following the Court's order despite numerous opportunities to discuss, including when Defendant's counsel appeared for docket call on September 3, 2019. To the extent any issue remained, Defendant was required to advise the Court of any the remaining issues no later than September 3, 2019. <u>Moreover, Defendant, throughout discovery, never sought to take any depositions regarding Plaintiff's damages and has sat idle despite Plaintiff's designation of a corporate representative with personal knowledge of Plaintiff's damages</u>. Defendant cannot now be heard*

*to complain about anything. Defendant's initial complaint was only made to cover Defendant's spoliation of evidence and Plaintiff's motion for sanctions. Nevertheless, Plaintiff has fully complied with the Court's order having provided all documents supporting its original damage estimates in supplementation of its Rule 26 obligations and in response to Defendant's discovery requests. Plaintiff simply does not have anything else to provide Defendant.*

*More importantly, at the September 3, 2019 docket call, Defendant's counsel advised Plaintiff that <u>Defendant would not be producing the documents, including the email, ordered by the Court</u>. Plaintiff requested that Defendant produce everything ordered by the close of business on September 6, 2019, which is when this Final Pretrial Conference Order is due. At the time of delivery of this document, Defendant has not produced the documents as ordered. Thus, while Plaintiff has again done everything required by the Court, Defendant has done nothing and has attempted to conceal their conduct with frivolous discovery disputes, which it has not made any effort whatsoever to follow-up on.]*

6. <u>EXHIBITS</u>. The following exclusionary language **MUST** be included:

Unlisted exhibits will not be admitted unless, by order of the court, the final pretrial order is amended to include them.

A. <u>Plaintiff</u>:

| No. | Title/Description | Bates No. | Objection | Rule |
|---|---|---|---|---|
| 1. | MOTION for Leave *to Proceed Under Pseudonym* by All Plaintiffs. (Lincecum, Gideon) (Entered: 09/19/2018) | | The Pleadings are inadmissible hearsay, are not evidence, and should not be admitted as exhibits. | 801(c),802, 805, 901(a), 401, 402, 104(b), and b, Lack of Foundation. |
| 2. | ORDER denying Motion for Leave. If Plaintiffs choose to pursue the prosecution of this lawsuit, Plaintiffs shall file an amended complaint that fully complies with Federal Rules of Civil Procedure 10(a) and 17(a) within ten days of the date of this order. Signed by Honorable Charles | | The Pleadings are inadmissible hearsay, are not evidence, and should not be admitted as exhibits. | 801(c),802, 805, 901(a), 401, 402, 104(b), and b, Lack of Foundation. |

| | Goodwin on 10/11/2018. (jb) (Entered: 10/11/2018) | | | |
|---|---|---|---|---|
| 3. | AMENDED COMPLAINT against All Defendants filed by Quill Ink Books Limited. (Attachments: # 1 Exhibit-Blushing Information, # 2Exhibit-Trademark Dismissal, # 3 Exhibit-Take Down Notice dated 4-19-18, # 4 Exhibit-Additional Take Down Notice, # 5 Exhibit-Vendor Communications, # 6 Exhibit-Counter-Notices dated 5-14_16-18, # 7 Exhibit-Draft2Digital Correspondence, # 8 Exhibit-Cain Review Manipulation, # 9 Exhibit-Cain's Online Posts targeting Ellis, # 10 Exhibit-Amazon Guidelines, # 11 Exhibit-Disparaging Posts, # 12 Exhibit-Review Manipulation, # 13 Exhibit-Kristina Busse Ph D Analysis, # 14 Exhibit-Blushing Emails, # 15 Exhibit-Cease and Desist Letter, # 16 Exhibit-Cain's Dragon Maiden Post)(Lincecum, Gideon) (Entered: 10/17/2018) | | The Pleadings are inadmissible hearsay, are not evidence, and should not be admitted as exhibits. | 801(c),802, 805, 901(a), 401, 402, 104(b), and b, Lack of Foundation. 106, 1001-1004, 602 |
| 4. | MOTION to Dismiss for Lack of Jurisdiction Or in the Alternative, MOTION to Transfer Case by Rachelle Soto. (Attachments: # 1 Exhibit 1 - Soto's Declaration)(Dellegar, Shawn) (Entered: 11/26/2018) | | The Pleadings are inadmissible hearsay, are not evidence, and should not be admitted as exhibits. | 801(c),802, 805, 901(a), 401, 402, 104(b), and b, Lack of Foundation. 106, 1001-1004, 602 |
| 5. | RESPONSE in Opposition re MOTION to Dismiss for Lack of Jurisdiction *Or in the Alternative* MOTION to Transfer Case *and 19RESPONSE to* | | The Pleadings are inadmissible hearsay, are not evidence, and | 801(c),802, 805, 901(a), 401, 402, 104(b), and b, Lack of |

| | | | |
|---|---|---|---|
| | *Complaint* filed by Quill Ink Books Limited. (Attachments: # 1 Exhibit 1_Coale Declaration)(Lincecum, Gideon) (Entered: 12/17/2018) | | should not be admitted as exhibits. | Foundation.<br><br>106, 1001-1004,<br><br>602 |
| 6. | REPLY by Defendant Rachelle Soto re MOTION to Dismiss for Lack of Jurisdiction *Or in the Alternative* MOTION to Transfer Case (Dellegar, Shawn) (Entered: 12/26/2018) | | The Pleadings are inadmissible hearsay, are not evidence, and should not be admitted as exhibits. | 801(c),802, 805, 901(a), 401, 402, 104(b), and b, Lack of Foundation.<br><br>106, 1001-1004,<br><br>602 |
| 7. | REPLY by Defendant ABCD Graphics and Design Inc *REPLY IN SUPPORT OF DEFENDANT BLUSHING BOOKS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT DUE TO LACK OF PERSONAL AND GENERAL JURISDICTION, AND IMPROPER VENUE* filed by ABCD Graphics and Design Inc. (Briggs, Rebecca) STRICKEN on 2/8/2019 (jb). (Entered: 12/31/2018) | | The Pleadings are inadmissible hearsay, are not evidence, and should not be admitted as exhibits. | 801(c),802, 805, 901(a), 401, 402, 104(b), and b, Lack of Foundation.<br><br>106, 1001-1004,<br><br>602 |
| 8. | MOTION to Strike *Reply in Support of Defendant Blushing Books' Motion to Dismiss* by Quill Ink Books Limited. (Erwin, Dylan) (Entered: 01/02/2019) | | The Pleadings are inadmissible hearsay, are not evidence, and should not be admitted as exhibits. | 801(c),802, 805, 901(a), 401, 402, 104(b), and b, Lack of Foundation.<br><br>106, 1001-1004, |

| | | | 602 |
|---|---|---|---|
| 9. | ORDER granting MOTION to Strike Reply in Support of Defendant Blushing Books' Motion to Dismiss. Defendant Blushing Books may properly answer or otherwise respond to Plaintiff's Amended Complaint on or before February 17, 2019. Signed by Honorable Charles Goodwin on 02/08/2019. (jb) (Entered: 02/08/2019) | | The Pleadings are inadmissible hearsay, are not evidence, and should not be admitted as exhibits. | 801(c),802, 805, 901(a), 401, 402, 104(b), and b, Lack of Foundation. 106, 1001-1004, 602 |
| 10. | ORDER granting Motion to Dismiss. The claims against Defendant Soto are dismissed without prejudice for lack of personal jurisdiction. Signed by Honorable Charles Goodwin on 02/13/2019. (jb) (Entered: 02/13/2019) | | The Pleadings are inadmissible hearsay, are not evidence, and should not be admitted as exhibits. | 801(c),802, 805, 901(a), 401, 402, 104(b), and b, Lack of Foundation. 106, 1001-1004, 602 |
| 11. | FIRST ANSWER to Amended Complaint, Answer, FIRST COUNTERCLAIM Complaint against Quill Ink Books Limited by ABCD Graphics and Design Inc.(Briggs, Rebecca) (Entered: 02/17/2019) | | The Pleadings are inadmissible hearsay, are not evidence, and should not be admitted as exhibits. | 801(c),802, 805, 901(a), 401, 402, 104(b), and b, Lack of Foundation. 106, 1001-1004, 602 |
| 12. | FIRST MOTION to Exclude *PLAINTIFFS EXPERT WITNESS KRISTINA BUSSE; REQUEST FOR HEARING* | | The Pleadings are inadmissible hearsay, are not | 801(c),802, 805, 901(a), 401, 402, 104(b), and b, Lack |

| | | | |
|---|---|---|---|
| | *PURSUANT TO DAUBERT AND FRE 702* by ABCD Graphics and Design Inc. (Briggs, Rebecca) (Entered: 05/30/2019) | | evidence, and should not be admitted as exhibits. | of Foundation.<br><br>106, 1001-1004,<br><br>602 |
| 13. | FIRST MOTION to Compel *DISCOVERY AND REQUEST FOR SANCTIONS AND ATTORNEYS FEES* by ABCD Graphics and Design Inc. (Attachments: # 1 Exhibit 1: Plaintiff's Initial Disclosures, # 2 Exhibit: Defendant's Discovery Requests, # 3 Exhibit: Formal Letter Requesting Discovery, # 4 Exhibit: Plaintiff's Response to Discovery Request)(Briggs, Rebecca) (Entered: 07/25/2019) | | The Pleadings are inadmissible hearsay, are not evidence, and should not be admitted as exhibits. | 801(c),802, 805, 901(a), 401, 402, 104(b), and b, Lack of Foundation.<br><br>106, 1001-1004,<br><br>602 |
| 14. | Select Portions of Deposition of Rachelle Soto a/k/a Addison Cain, including Deposition Exhibits # 1 Announcements, # 2 Amended Complaint, # 3 GoFundMe, "Help Addison Cain with her legal defense!", # 4 Blog Post, # 5 Addison Cain's Facebook page, # 6 Spreadsheet of side-by-side read-through, # 7 DMCA e-mail Bates SOTO_000103 through 106, # 8 E-mail chain beginning 4/19/18 from Bethany Burke to Rachelle Soto, # 9 Certificate of Registration, Registration Number TX 8-578-230 Bates SOTO_001089, # 10 E-mail chain beginning 4/17/18 from Rachelle Soto to Bethany Burke Bates SOTO)001001 through 1003, # 11 5/16/18 e-mail from Rachelle Soto to Allison Bates SOTO_000571, # 12 E-mail chain beginning 4/26/18 from | | These lack foundation, personal knowledge, and are inadmissible hearsay. | 801(c),802, 805, 901(a), 401, 402, 104(b), and b, Lack of Foundation.<br><br>106, 1001-1004,<br><br>602 |

| | | | | |
|---|---|---|---|---|
| | Rachelle Soto to Allison Bates SOTO_000627, # 13 E-mail chain beginning 4/26/18 from Rachelle Soto to Allison Bates SOTO_000600, # 14 "Exhibit 5" to the complaint, series of emails, # 15 "Exhibit 4" to the complaint, # 16 "Exhibit 3" to the complaint, # 17 "Exhibit 6" to the complaint. | | | |
| 15. | *Crave to Conquer* by Zoey Ellis | QIB-000078 | Hearsay, Lack of Foundation, Lack of Authentication, Incomplete Evidence. | FED. R. EVID. 801(c) and 802, 805. 901(a), 1001-1004, |
| 16. | *Crave to Capture* by Zoey Ellis | QIB-000078 | Hearsay, Lack of Foundation, Lack of Authentication, Incomplete Evidence. | FED. R. EVID. 801(c) and 802, 805. 901(a), 1001-1004. |
| 17. | *Crave to Claim* by Zoey Ellis | QIB-000078 | Hearsay, (Lack of Foundation, Lack of Authentication, Incomplete Evidence | FED. R. EVID. 801(c) and 802, 805. 901(a), 1001-1004). |
| 18. | *Born to be Bound* by Addison Cain | | Hearsay, (Lack of Foundation, Lack of Authentication, Incomplete Evidence | FED. R. EVID. 801(c) and 802, 805. 901(a), 1001-1004. |
| 19. | *Born to be Broken* by Addison Cain | | Hearsay, Lack of Foundation, Lack of Authentication, Incomplete Evidence | FED. R. EVID. 801(c) and 802, 805. 901(a), 1001-1004. |
| 20. | *Reborn* by Addison Cain | | Hearsay, (Lack of Foundation, Lack of Authentication, | FED. R. EVID. 801(c) and 802, 805. |

| | | | Incomplete Evidence | 901(a), 1001-1004. |
|---|---|---|---|---|
| 21. | Kristina Busse, Ph.D. Report and *curriculum vitae* | | Hearsay, Lack of Foundation, Lack of Authentication, Incomplete Evidence | FED. R. EVID. 801(c) and 802, 805. 901(a), 1001-1004. |
| 22. | Financial Statements | QIB-000001 - QIB-000009 | Hearsay, Incomplete, Lack of Foundation, Lack of Authentication, Lack of Personal Knowledge, Calls for Speculation | FED. R. EVID. 801(c) and 802, 805. 901(a), 1001-1004. |
| 23. | Financial Verification | QIB-0000010, QIB-000068 | Hearsay, Lack of Foundation, Lack of Authentication, Incomplete Evidence | FED. R. EVID. 801(c) and 802, 805. 901(a), 1001-1004. |
| 24. | Marketing Information | QIB-0000011 - QIB-000014 | Hearsay, Lack of Foundation, Lack of Authentication, Incomplete Evidence | FED. R. EVID. 801(c) and 802, 805. 901(a), 1001-1004. |
| 25. | BookTrader Information | QIB-000015 - QIB-000016, QIB-000069 | Hearsay, Lack of Foundation, Lack of Authentication, Incomplete Evidence | FED. R. EVID. 801(c) and 802, 805. 901(a), 1001-1004. |
| 26. | Amazon Sales Information | QIB-000017- QIB-000026 | Hearsay, (FED. R. EVID. 801(c) and 802, 805). Lack of Foundation, Lack of | FED. R. EVID. 801(c) and 802, 805. 901(a), 1001-1004. |

|  |  |  | Authentication, Incomplete Evidence |  |
|---|---|---|---|---|
| 27. | Google Sales Information | QIB-000027-QIB-000066 | Hearsay, (FED. R. EVID. 801(c) and 802, 805). Lack of Foundation, Lack of Authentication, Incomplete Evidence, Lack of Personal Knowledge | FED. R. EVID. 801(c) and 802, 805. 901(a), 1001-1004. 602 |
| 28. | Quill Ink Books Limited Registration | QIB-000067 | Hearsay, Lack of Foundation, Lack of Authentication, Incomplete Evidence, Lack of Personal Knowledge | FED. R. EVID. 801(c) and 802, 805. 901(a), 1001-1004. 602 |
| 29. | Quill Ink Books Expenses | QIB-000070-QIB-000073 | Hearsay, Lack of Foundation, Lack of Authentication, Incomplete Evidence, Lack of Personal Knowledge | FED. R. EVID. 801(c) and 802, 805. 901(a), 1001-1004. 602 |
| 30. | Quill Ink Books Comparison | QIB-000074 | Hearsay, Lack of Foundation, Lack of Authentication, Incomplete Evidence, Lack of Personal Knowledge | FED. R. EVID. 801(c) and 802, 805. 901(a), 1001-1004. 602 |
| 31. | Emails concerning Business Interference | QIB-000075-QIB-000077 | Hearsay, Lack of Foundation, Lack of Authentication, Incomplete | FED. R. EVID. 801(c) and 802, 805. 901(a), |

| | | | Evidence, Lack of Personal Knowledge | 1001-1004. 602 |
|---|---|---|---|---|
| 32. | Documents Produced by Draft2Digital Pursuant to Subpoena, including July 8, 2019, July 14, 2019, and July 19, 2019 correspondence. | D2D-001 – D2D-052 | Hearsay, Lack of Foundation, Lack of Authentication, Incomplete Evidence, Lack of Personal Knowledge | FED. R. EVID. 801(c) and 802, 805. 901(a), 1001-1004. 602 |
| 33. | Defendant's Responses to Plaintiff's First Set of Discovery Requests, including documents produced #1, #2, #3, #4, #5, #6, #7, #11, #12, #71, #72, #73, #74, #75, #77, and #78 (Identified with Post-It Notes, Not bates labeled). | N/A | Hearsay, Lack of Foundation, Lack of Authentication, Incomplete Evidence, Lack of Personal Knowledge | FED. R. EVID. 801(c) and 802, 805. 901(a), 1001-1004. 602 |
| 34. | Defendant's Supplemental Document Production without bates labeling, as follows: | N/A | See below | |
| 35. | Broken Contract | N/A | Hearsay, Lack of Foundation, Lack of Authentication, Incomplete Evidence, Lack of Personal Knowledge | FED. R. EVID. 801(c) and 802, 805. 901(a), 1001-1004. 602 |
| 36. | Reborn Contract | N/A | Hearsay, Lack of Foundation, Lack of Authentication, Incomplete Evidence, Lack of Personal Knowledge | FED. R. EVID. 801(c) and 802, 805. 901(a), 1001-1004. 602 |
| 37. | Bound Contract | N/A | Hearsay, Lack of Foundation, Lack of Authentication, Incomplete | FED. R. EVID. 801(c) and 802, 805. 901(a), |

|   |   |   | Evidence, Lack of Personal Knowledge | 1001-1004. 602 |
|---|---|---|---|---|
| 38. | Stolen Contract | N/A | Hearsay,  Lack of Foundation, Lack of Authentication, Incomplete Evidence, Lack of Personal Knowledge | FED. R. EVID. 801(c) and 802, 805. 901(a), 1001-1004. 602 |
| 39. | Cease and Desist | N/A | Hearsay, Lack of Foundation, Lack of Authentication, Incomplete Evidence, Lack of Personal Knowledge | FED. R. EVID. 801(c) and 802, 805. 901(a), 1001-1004. 602. |
| 40. | Excel Comparison | N/A | Hearsay, Lack of Foundation, Lack of Authentication, Incomplete Evidence, Lack of Personal Knowledge | FED. R. EVID. 801(c) and 802, 805. 901(a), 1001-1004. 602. |
| 41. | Excel Comparison Chart | N/A | Hearsay, Lack of Foundation, Lack of Authentication, Incomplete Evidence, Lack of Personal Knowledge | FED. R. EVID. 801(c) and 802, 805. 901(a), 1001-1004. 602. |
| 42. | Submitted Draft of Bred | N/A | Hearsay, Lack of Foundation, Lack of Authentication, Incomplete Evidence, Lack of Personal Knowledge | FED. R. EVID. 801(c) and 802, 805. 901(a), 1001-1004. 602. |

| 43. | Submitted Draft of Stolen | N/A | Hearsay, Lack of Foundation, Lack of Authentication, Incomplete Evidence, Lack of Personal Knowledge | FED. R. FED. R. EVID. 801(c) and 802, 805. 901(a), 1001-1004. 602. |
|---|---|---|---|---|
| 44. | Submitted Draft of Broken | N/A | Hearsay, Lack of Foundation, Lack of Authentication, Incomplete Evidence, Lack of Personal Knowledge | FED. R. EVID. 801(c) and 802, 805. 901(a), 1001-1004. 602. |
| 45. | Submitted Draft of Reborn | N/A | Hearsay, Lack of Foundation, Lack of Authentication, Incomplete Evidence, Lack of Personal Knowledge | FED. R. EVID. 801(c) and 802, 805. 901(a), 1001-1004. 602. |
| 46. | Ellis Soto Chat | N/A | Hearsay, Lack of Foundation, Lack of Authentication, Incomplete Evidence, Lack of Personal Knowledge | FED. R. EVID. 801(c) and 802, 805. 901(a), 1001-1004. 602. |
| 47. | Barnes and Noble DMCA Notice | N/A | Hearsay, Lack of Foundation, Lack of Authentication, Incomplete Evidence, Lack of Personal Knowledge | FED. R. EVID. 801(c) and 802, 805. 901(a), 1001-1004. 602. |
| 48. | Amazon DMCA Notice | N/A | Hearsay, Lack of Foundation, Lack of | FED. R. EVID. 801(c) and |

| | | | Authentication, Incomplete Evidence, Lack of Personal Knowledge | 802, 805. 901(a), 1001-1004. 602. |
|---|---|---|---|---|
| 49. | Blushing Books DMCA Notice 4-19-2018 | N/A | Hearsay, Lack of Foundation, Lack of Authentication, Incomplete Evidence, Lack of Personal Knowledge | FED. R. EVID. 801(c) and 802, 805. 901(a), 1001-1004. 602. |
| 50. | Blushing Books DMCA Notice 5-2-2018 | N/A | Hearsay, Lack of Foundation, Lack of Authentication, Incomplete Evidence, Lack of Personal Knowledge | FED. R. EVID. 801(c) and 802, 805. 901(a), 1001-1004. 602. |
| 51. | Response to DMCA Notice-Book 1 | N/A | Hearsay, Lack of Foundation, Lack of Authentication, Incomplete Evidence, Lack of Personal Knowledge | FED. R. EVID. 801(c) and 802, 805. 901(a), 1001-1004. 602. |
| 52. | Response to DMCA Notice-Book 2 | N/A | Hearsay, Lack of Foundation, Lack of Authentication, Incomplete Evidence | FED. R. EVID. 801(c) and 802, 805. 901(a), 1001-1004. 602. |
| 53. | Response to DMCA Notice-Book 3 | N/A | Hearsay, Lack of Foundation, Lack of Authentication, | FED. R. EVID. 801(c) and 802, 805. |

| | | | Incomplete Evidence, Lack of Personal Knowledge | 901(a), 1001-1004. 602. |
|---|---|---|---|---|
| 54. | Zoey Ellis Chat with Soto (Feb 26) | N/A | Hearsay, Lack of Foundation, Lack of Authentication, Incomplete Evidence, Lack of Personal Knowledge | FED. R. EVID. 801(c) and 802, 805. 901(a), 1001-1004. 602. |
| 55. | Defendant's Revised Discovery Responses | N/A | Hearsay, Lack of Foundation, Lack of Authentication, Incomplete Evidence, Lack of Personal Knowledge | FED. R. EVID. 801(c) and 802, 805. 901(a), 1001-1004. 602. |
| 56. | Defendant's Response to Complaint | N/A | Inadmissible. The pleadings are not evidence. Hearsay, Lack of Foundation, Lack of Authentication, Incomplete Evidence, Lack of Personal Knowledge | FED. R. EVID. 801(c) and 802, 805, 901(a), 1001-1004. 602. |
| 57. | Amazon Letter to Addison Cain | N/A | Hearsay, Lack of Foundation, Lack of Personal Knowledge, Lack of Authentication, | FED. R. EVID. 801(c) and 802, 805, 901(a), 1001-1004. 602. |

| | | | Incomplete Evidence | |
|---|---|---|---|---|
| 58. | Blushing Email dated 2018-04-30 | N/A | Hearsay, Lack of Foundation, Lack of Authentication, Incomplete Evidence, Lack of Personal Knowledge | FED. R. EVID. 801(c) and 802, 805, 901(a), 1001-1004. 602. |
| 59. | Blushing Email dated 2018-05-20 | N/A | Hearsay, Lack of Foundation, Lack of Authentication, Incomplete Evidence, Lack of Personal Knowledge | FED. R. EVID. 801(c) and 802, 805, 901(a), 1001-1004. 602. |
| 60. | Blushing Email dated 2018-05-23 | N/A | Hearsay, Lack of Foundation, Lack of Authentication, Incomplete Evidence, Lack of Personal Knowledge | FED. R. EVID. 801(c) and 802, 805, 901(a), 1001-1004. 602. |
| 61. | Blushing Email dated 2018-05-25 | N/A | Hearsay, Lack of Foundation, Lack of Authentication, Incomplete Evidence, Lack of Personal Knowledge | FED. R. EVID. 801(c) and 802, 805, 901(a), 1001-1004. 602. |
| 62. | Blushing Email dated 2018-05-29 | N/A | Hearsay, Lack of Foundation, Lack of Authentication, Incomplete | FED. R. EVID. 801(c) and 802, 805, 901(a), |

| | | | Evidence, Lack of Personal Knowledge | 1001-1004. 602. |
|---|---|---|---|---|
| 63. | Blushing Email dated 2018-05-30 | N/A | Hearsay, Foundation, Lack of Authentication, Incomplete Evidence, Lack of Personal Knowledge | FED. R. EVID. 801(c) and 802, 805, 901(a), 1001-1004. 602. |
| 64. | Blushing Email dated 2018-05-31 | N/A | Hearsay, Lack of Foundation, Lack of Authentication, Incomplete Evidence, Lack of Personal Knowledge | FED. R. EVID. 801(c) and 802, 805, 901(a), 1001-1004. 602 |
| 65. | Blushing Email dated 2018-06-03 | N/A | Hearsay, Lack of Foundation, Lack of Authentication, Incomplete Evidence, Lack of Personal Knowledge | FED. R. EVID. 801(c) and 802, 805, 901(a), 1001-1004. 602 |
| 66. | Blushing Email dated 2018-06-18 | N/A | Hearsay, Lack of Foundation, Lack of Authentication, Incomplete Evidence, Lack of Personal Knowledge | FED. R. EVID. 801(c) and 802, 805, 901(a), 1001-1004. 602 |
| 67. | Blushing Email dated 2018-06-27 | N/A | Hearsay, Lack of Foundation, Lack of | FED. R. EVID. 801(c) and |

| | | | Authentication, Incomplete Evidence, Lack of Personal Knowledge | 802, 805, 901(a), 1001-1004. 602 |
|---|---|---|---|---|
| 68. | Blushing Email dated 2018-11-06 | N/A | Hearsay, Lack of Foundation, Lack of Authentication, Incomplete Evidence, Lack of Personal Knowledge | FED. R. EVID. 801(c) and 802, 805, 901(a), 1001-1004. 602 |
| 69. | Blushing Email dated 2018-11-20 | N/A | Hearsay, Lack of Foundation, Lack of Authentication, Incomplete Evidence, Lack of Personal Knowledge | FED. R. EVID. 801(c) and 802, 805, 901(a), 1001-1004. 602 |
| 70. | Blushing Email dated 2018-12-18 | N/A | Hearsay, Lack of Foundation, Lack of Authentication, Incomplete Evidence, Lack of Personal Knowledge | FED. R. EVID. 801(c) and 802, 805, 901(a), 1001-1004. 602 |
| 71. | Blushing Email dated 2019-01-04 | N/A | Hearsay, Lack of Foundation, Lack of Authentication, Incomplete Evidence, Lack of Personal Knowledge | FED. R. EVID. 801(c) and 802, 805, 901(a), 1001-1004. 602 |
| 72. | Blushing Email dated 2019-07-15 | N/A | Hearsay, Lack | FED. R. |

| | | | of Foundation, Lack of Authentication, Incomplete Evidence, Lack of Personal Knowledge | EVID. 801(c) and 802, 805, 901(a), 1001-1004. 602 |
|---|---|---|---|---|
| 73. | Defendant's Responses to Plaintiff's Second Set of Discovery Requests (No response from Defendant) | N/A | Hearsay, Lack of Foundation, Lack of Authentication, Incomplete Evidence, Lack of Personal Knowledge | FED. R. EVID. 801(c) and 802, 805, 901(a), 1001-1004. 602 |
| 74. | Defendant's Responses to Plaintiff's Third Set of Discovery Requests, including documents produced pages 1-15 (Not bates labeled). | N/A | Hearsay, Lack of Foundation, Lack of Authentication, Incomplete Evidence, Lack of Personal Knowledge | FED. R. EVID. 801(c) and 802, 805, 901(a), 1001-1004. 602 |
| 75. | Documents Produced by Rachelle Soto a/k/a Addison Cain Pursuant to Subpoena | SOTO-000001, SOTO-000004, SOTO-000023, SOTO-000025, SOTO-000039, SOTO-000040, SOTO-000041, SOTO-000066, SOTO- | Hearsay, Lack of Foundation, Lack of Authentication, Incomplete Evidence, Lack of Personal Knowledge | FED. R. EVID. 801(c) and 802, 805, 901(a), 1001-1004. 602 |

| | | | | |
|---|---|---|---|---|
| | | 000067, SOTO-000099, SOTO-000101, SOTO-000103, SOTO-000107, SOTO-000119, SOTO-000122, SOTO-000151, SOTO-000179, SOTO-000207, SOTO-000234, SOTO-000261, SOTO-000287, SOTO-000313, SOTO-000338, SOTO-000363, SOTO-000389, SOTO-000414, SOTO-000439, SOTO-000463, SOTO-000487, SOTO-000510, | | |

| | | SOTO-000511, SOTO-000533, SOTO-000548, SOTO-000552, SOTO-000555, SOTO-000557, SOTO-000559, SOTO-000561, SOTO-000563, SOTO-000565, SOTO-000571, SOTO-000572, SOTO-000600, SOTO-000627, SOTO-000654, SOTO-000681, SOTO-000707, SOTO-000706, SOTO-000765, SOTO-000791, SOTO-000816, SOTO- | | |
|---|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| | | 000841, SOTO-000866, SOTO-000891, SOTO-000915, SOTO-000938, SOTO-000959, SOTO-000969, SOTO-000978, SOTO-000985, SOTO-000990, SOTO-000994, SOTO-000998, SOTO-001001, SOTO-001004, SOTO-001006, SOTO-001007, SOTO-001089, SOTO-001090, SOTO-001096, SOTO-001097, SOTO-001099, SOTO-001100, | | |

| | | SOTO-001101, SOTO-001103, SOTO-001105, SOTO-001112, SOTO-001128, SOTO-001129, SOTO-001130, SOTO-001143, SOTO-001145, SOTO-001146, SOTO-001147, SOTO-001150, SOTO-001151, SOTO-001152, SOTO-001154, SOTO-001155, SOTO-001157, SOTO-001159, SOTO-001165, SOTO-001166, SOTO-001170, SOTO- | | |

| | | 001171, SOTO-001175, SOTO-001183, SOTO-001186, SOTO-001188, SOTO-001189. | | |
|---|---|---|---|---|
| 76. | All documents relied upon by Plaintiff's Expert, including the subject books published by Plaintiff and Defendant. | | Hearsay, Lack of Foundation, Lack of Authentication, Incomplete Evidence, Lack of Personal Knowledge | FED. R. EVID. 801(c) and 802, 805, 901(a), 1001-1004. 602, FED. R. EVID. 702 |
| 77. | All documents review by Plaintiff's corporate representatives, including the subject books published by Plaintiff and Defendant. | | Hearsay, Lack of Foundation, Lack of Authentication, Incomplete Evidence, Lack of Personal Knowledge | FED. R. EVID. 801(c) and 802, 805, 901(a), 1001-1004. 602, FED. R. EVID. 702 |
| 78. | All exhibits listed by Defendant to which Plaintiff does not object. | | N/A. Plaintiff has objected to Defendant's Exhibit and the parties have reached no stipulations. | |
| 79. | Demonstrative exhibits, including but not limited to models, diagrams, videos, photographs, summaries, timelines and graphs. | | Untimely. These have not been provided to Defendant. | |
| 80. | Timeline of False DMCA filings and other actions taken against Plaintiff | | Untimely. These have not | |

| | | | been provided to Defendant. | |
|---|---|---|---|---|
| 81. | Summary of the Subject Works published by Plaintiff and Defendant | | Untimely. These have not been provided to Defendant. Hearsay, Lack of Foundation, Lack of Authentication, Incomplete Evidence, Lack of Personal Knowledge | FED. R. EVID. 801(c) and 802, 805, 901(a), 1001-1004. 602, FED. R. EVID. 702 |
| 82. | Summary of Plaintiff's Damages | | Hearsay, Lack of Foundation, Lack of Authentication, Incomplete Evidence | Untimely. These have not been provided to Defendant. FED. R. EVID. 801(c) and 802, 805, 901(a), 1001-1004. 602, FED. R. EVID. 702 |
| 83. | All documents produced and to be produced during discovery in this case to which Plaintiff does not object. | | Hearsay, Lack of Foundation, Lack of Authentication, Incomplete Evidence | Untimely. These have not been provided to Defendant. |
| 84. | All pleadings and responses to written discovery to which Plaintiff does not object. | | Hearsay. | FED. R. EVID. 801(c) and 802, 805, 901(a), 1001-1004. 602, FED. R. EVID. 702 |

| 85. | All affidavits attached to, referenced in, or incorporated with any pleading filed by any party in this matter to which Plaintiff does not object. | | Hearsay, Lack of Foundation, Lack of Authentication, Incomplete Evidence, Lack of Personal Knowledge | FED. R. EVID. 801(c) and 802, 805, 901(a), 1001-1004. 602, FED. R. EVID. 702 |
|---|---|---|---|---|
| 86. | All documents created, to be created, relied upon, or referred to by Plaintiff's Expert witnesses. | | Hearsay, Lack of Foundation, Lack of Authentication, Incomplete Evidence | FED. R. EVID. 801(c) and 802, 805, 901(a), 1001-1004. 602, FED. R. EVID. 702 |
| 87. | Curriculum Vitae for Plaintiff's Expert. | | Hearsay. Irrelevant. | FED. R. EVID. 801(c) and 802, 805, 901(a), 1001-1004. 602, FED. R. EVID. 702 |
| 88. | Documents produced by Defendant in response to discovery to which Plaintiff does not object. | | Hearsay, Lack of Foundation, Lack of Authentication, Incomplete Evidence, Lack of Personal Knowledge | FED. R. EVID. 801(c) and 802, 805, 901(a), 1001-1004. 602, FED. R. EVID. 702 |
| 89. | Documents produced by Plaintiff in response to discovery to which Plaintiff does not object. | | Hearsay, Lack of Foundation, Lack of Authentication, Incomplete Evidence, Lack of Personal | FED. R. EVID. 801(c) and 802, 805, 901(a), 1001-1004. 602, FED. |

| | | | Knowledge | R. EVID. 702 |
|---|---|---|---|---|
| 90. | Documents ordered produced by the Court pursuant to Plaintiff's motion to compel, if any, prior to trial and to which Plaintiff do not object. | | Hearsay, Lack of Foundation, Lack of Authentication, Incomplete Evidence, Lack of Personal Knowledge, Lack of Personal Knowledge | FED. R. EVID. 801(c) and 802, 805, 901(a), 1001-1004. 602, FED. R. EVID. 702 |

      B.   <u>Defendant</u>:

Defendant previously submitted a 32-page pleading specifically outlining all its objections to the Plaintiff's witness and exhibit list. The Court has not ruled on these yet, and the objections are outstanding. The Defendant strenuously objects to the inclusion of any exhibit that was not specifically outlined within the Plaintiff's Final Witness and Exhibit List (**Doc. 40**) particularly if that exhibit is a document that was reasonably in Plaintiff's possession or control at the time of the filing of Doc. 40.

| No. | Title/Description | Bates No. | Objection | Rule |
|---|---|---|---|---|
| 1. | Comparison Chart | | Relevance; Unfair Prejudice; Confusion of the issues; Hearsay; Authentication; Misleading the Jury; Waste of Time; Needles Cumulative Evidence; Improper Basis: Not Based Upon Reliable Facts, Data, Principals, or Methods and Spoliation and refusal to produce underlying | 401, 402, 403, 702, 801, 802, 901. |

| | | evidence and creator as outlined in Plaintiff's motion for sanctions. | |
|---|---|---|---|

(Premarked for trial and exchanged as required under LCvR 39.4(a))

7.   <u>WITNESSES</u>:  The following exclusionary language **MUST** be included:

Unlisted witnesses in chief will not be permitted to testify unless, by order of the court, the final pretrial order is amended to include them.

A.   <u>Plaintiff</u>:

| **Name** | **Address** | **Proposed Testimony** |
|---|---|---|
| Anne Wills, or other Corporate Representative of ABCD Graphics and Design, Inc., d/b/a Blushing Books Publishing | c/o Becky Briggs The Law Office of Becky Briggs, LLC P.O. Box 9470 Pueblo, CO 81008 | The witness may testify regarding the claims, issues and defenses in Plaintiff's Amended Complaint and Defendant's Answer including, but not limited to, the filing of false DMCA take-down notices, fraud, defamatory statements, and tortious interference with Plaintiff's contractual and business relations. |
| Rachelle Soto a/k/a Addison Cain through Deposition Designations. | c/o Shawn M. Dellegar Crowe & Dunlevy Kennedy Building 321 South Boston Ave., Suite 500 Tulsa, OK 74103 | Deposed. |
| Kristina Busse, Ph.D., Corporate Representative of Quill Ink Books Limited | c/o Gideon A. Lincecum Holladay & Chilton, PLLC 204 N. Robinson, Ste. 1550 Oklahoma City, OK 73102 | The witness may testify regarding the claims, issues, and defenses in Plaintiff's Amended Complaint and Defendant's Answer including, but not limited to, the filing of false DMCA take-down notices, defamatory statements, and |

| | | |
|---|---|---|
| | | tortious interference with Plaintiff's contractual and business relations. |
| Payne Harrison, Corporate Representative of Quill Ink Books Limited | c/o Gideon A. Lincecum Holladay & Chilton, PLLC 204 N. Robinson, Ste. 1550 Oklahoma City, OK 73102 | The witness may testify regarding the claims, issues, and defenses in Plaintiff's Amended Complaint and Defendant's Answer including, but not limited to, Plaintiff's sales history and damages. |
| Kristina Busse, Ph.D., Plaintiff's Expert Witness | c/o Gideon A. Lincecum Holladay & Chilton, PLLC 204 N. Robinson, Ste. 1550 Oklahoma City, OK 73102 | The witness may testify regarding the claims, issues and defenses in Plaintiff's Amended Complaint and Defendant's Answer in her capacity as an expert witness regarding fan fiction, fan culture, and other literary issues relevant to Plaintiff's lawsuit. |
| Tara Robinett, or other representative of Draft2Digial, LLC | c/o Zachary A.P. Oubre McAfee & Taft Tenth Floor Two Leadership Square 211 N. Robinson Oklahoma City, OK 73102 | The witness may testify regarding the claims, issues, and defenses in Plaintiff's Amended Complaint and Defendant's Answer including, but not limited to, receipt of Defendant's false DMCA take-down notices. |
| All witnesses listed by Defendant, not objected to by Plaintiff. | | |
| Any witness identified during depositions of this matter, not objected to by Plaintiff. | | |
| Any witness identified during the remainder of discovery, not objected to by Plaintiff. | | |
| Any witness necessary for Plaintiff's rebuttal or impeachment. | | |

B.      Defendant:

| Name | Address | Proposed Testimony |
|------|---------|--------------------|
| Anne Wills, CEO of ABCD Graphics and Design, Inc., d/b/a Blushing Books Publishing | c/o Becky Briggs The Law Office of Becky Briggs, LLC P.O. Box 9470 Pueblo, CO 81008 | Personal knowledge of Both Book One of Alpha's Claim (Born to be Bound) and Book One of Myth of Omega (Crave to Claim), including similar plat structures and story beats. Personal knowledge of sequence of filing DMCA notices by ABCD Graphics and Design. Testimony regarding ebook publication of the Alpha's Claim series, including but not limited to reasonable revenue calculations, percentage comparisons between vendors, and sales trends. Personal knowledge of use of social media regarding this matter. Communication with author Addison Cain. |
| Allison Travis, Production Manager of ABCD Graphics and Design, Inc., d/b/a Blushing Books Publishing | c/o Becky Briggs The Law Office of Becky Briggs, LLC P.O. Box 9470 Pueblo, CO 81008 | This witness can testify on the following topics concerning the case between ABCD Graphics & Design DBA Blushing Books, Zoey Ellis and Addison Cain: a. Emails and conversations between Briggs, Addison and Bethany Burke concerning DMCA take down notices, asking Defendant to file the DMCA Notices, and updates on the process of this. Revenue percentages that are typical of books posted for sale on Amazon, |

| | | iBooks, Barnes and Noble, Kobo, and other digital vendors. Behavior of ABCE Graphics and Design's owner, Anne Wills, towards other authors and competing entities. Behavior of ABCE Graphics and Design's owner, Anne Wills, concerning social media related to this controversy. |
| --- | --- | --- |

*[Plaintiff's Response: Plaintiff objects to these witnesses being allowed to testify on the ground of spoliation of and refusal to produce emails as outlined in Plaintiff's motion to compel and request for sanctions.]*

8.      <u>ESTIMATED TRIAL TIME</u>: (3 days total)

    A.      Plaintiff's Case:      1-2 days.

    B.      Defendant's Case:   1 days

9.      <u>BIFURCATION REQUESTED</u>:

Plaintiff:      Yes ☐        No ☒

Defendant:   Yes ☒        No ☐

10.     <u>POSSIBILITY OF SETTLEMENT</u>:

Good ☐        Fair ☐        Poor ☒

All parties approve this report and understand and agree that this report supersedes all pleadings, shall govern the conduct of the trial, and shall not be amended except by order of the Court.

s/ *Gideon A Lincecum*
_____
Gideon A. Lincecum, OBA No. 19674
James W. Dobbs, OBA No. 14995
Dylan D. Erwin, OBA No. 31987
HOLLADAY & CHILTON, PLLC
204 North Robinson, Suite 1550
Oklahoma City, OK 73102
Telephone:  (405) 236-2343
Facsimile:   (405) 236-2349
Email:  glincecum@holladaychilton.com
            jdobbs@holladaychilton.com
            derwin@holladaychilton.com

**ATTORNEYS FOR PLAINTIFF**


s/ *Becky Briggs*
_____
Becky Briggs
THE LAW OFFICE OF BECKY BRIGGS, LLC
315 Colorado Ave
Pueblo, CO 81103
Telephone:  (719) 924-9954
Facsimile:   (970) 826-7050
Email:  BeckyBriggsLaw@gmail.com

**ATTORNEY FOR DEFENDANT**